MARY ANN L. WYMORE (State Bar No. 126516)
mlw@greensfelder.com
ERWIN O. SWITZER (Pro Hac Vice)
eos@greensfelder.com
KEVIN F. HORMUTH (Pro Hac Vice)
kfh@greensfelder.com
J. ANDREW WALKUP (Pro Hac Vice)
aw@greensfelder.com
GREENSFELDER, HEMKER & GALE, P.C.
10 South Broadway, Suite 2000
St. Louis, Missouri  63102-1774
Telephone:  (314) 241-9090
Facsimile:  (314) 345-5499

MICHAEL C. TU (State Bar No. 186793)
mtu@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California  90017
Telephone:  213-629-2020
Facsimile:   213-612-2499

Attorneys for Defendant
Protus IP Solutions, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| j2 GLOBAL COMMUNICATIONS, INC.,<br><br>             Plaintiff,<br><br>    v.<br><br>PROTUS IP SOLUTIONS, INC., et al.,<br><br>             Defendants. | Case No.  CV 06-0566-DPP (AJWx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT PROTUS IP SOLUTIONS, INC.'S MOTION FOR AN ORDER TO SHOW CAUSE WHY J2 AND ITS COUNSEL SHOULD NOT BE HELD IN CONTEMPT OF COURT**<br><br>Hearing Date: January 28, 2008<br>Hearing Time: 10:00 a.m.<br>690, Royball Building<br>The Hon. Andrew J. Wistrich<br><br>Discovery Cut-Off: July 14, 2008<br>PreTrial Conference: October 20, 2008<br>Trial Beginning Date: October 28, 2008 |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................i

TABLE OF AUTHORITIES ....................................................................................ii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

POINTS AND AUTHORITIES ............................................................................... 6

    I.      LEGAL STANDARD........................................................................ 6

    II.     j2 VIOLATED THE P.O. BY SHOWING AEO DOCUMENTS TO ITS CONSULTANT, MARC NORMAND, WHO IS A FORMER PROTUS EMPLOYEE. ..................................................... 10

        A.    j2's Counsel Cannot Explain Why Sharing AEO Documents With Mr. Normand Did Not Violate The P.O....... 10

        B.    j2's Violation Of The P.O. Was Intentional. ............................ 13

        C.    j2 And Its Counsel's Retention Of Mr. Normand As A Paid Consultant Was Improper.................................................. 14

    III.    j2 VIOLATED THE P.O. AND THE COURT'S OCTOBER 22, 2007 ORDER TO FILE CERTAIN DOCUMENTS UNDER SEAL................................................................................................ 17

CONCLUSION...................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**

American Prot. Ins. Co. v. MGM Grand Hotel-Los Vegas, Inc., Nos. CV-LV-82-26-HDM, et al., 1986 WL 57464 (D. Nev. Mar. 11, 1986).....................17

B-C Housing P'ship, L.P. v. Apollo Ltd. P'ship, Nos. A096780, et al., 2002 WL 31628763 (Cal. Ct. App. Nov. 21, 2002)................................16

Del Campo v. Am. Corrective Counseling Servs., Inc., No. C-01-21151 JW (PVT), 2007 WL 1848660 (N.D. Cal. June 27, 2007)...................................7

Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983) ....................................7

Falstaff Brewing Corp. v. Phillip Morris, Inc., 89 F.R.D. 133, 135 (N.D. Cal. 1981)...........................................................................................9

General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986).........7

Gifford v. Heckler, 741 F.2d 263, 266 (9th Cir. 1984) ............................................6

Gordon v. Landau, 49 Cal. 2d 690, 694 (1958).....................................................15

Hi-Tek Bags, Ltd. v. Bobtron Int'l, Inc., 144 F.R.D. 379, 383 (C.D. Cal. 1992)...................................................................................................7, 8

In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361, 1365 (9th Cir. 1987)......................................................................................................7

In re Data Gen. Corp. Antitrust Litig., MDL Doc. No. 369 (MHP), 1986 U.S. Dist. LEXIS 21923 (N. D. Cal. Aug. 1, 1986)...............................14

In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993) ............................................................................7

In re EXDS, Inc., No. C0500787 PVT, 2005 WL 2043020 (N.D. Cal. 2005) .......15

Loral Corp. v. Moyes, 174 Cal. App. 3d 268, 276 (1985) .....................................15

MMR/Wallace Power & Indus., Inc. v. Thames Assocs., 764 F. Supp. 712 (D. Conn. 1991)........................................................................16

Perry v. O'Donnell, 759 F.2d 702, 705 (9th Cir. 1985) ...........................................7

Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006)...6, 7

Rentclub, Inc. v. Transamerica Rental Fin. Corp., 811 F. Supp. 651 (M.D. Fla. 1992)........................................................................................16

The Beam Sys., Inc. v. Checkpoint Sys., Inc., No. CV 95-4069-RMT
        (AJWx), 1997 WL 423113, at *2 (C.D. Cal. July 16, 1997) ......................... 9

United States v. Ayers, 166 F.3d 991, 996 (9th Cir. 1999) ...................................... 7

United States v. United Mine Workers of Am., 330 U.S. 258, 290 n.56
        (1947) ................................................................................................ 7, 18

**STATUTES**

18 U.S.C. § 401 ........................................................................................................ 6

**RULES**

Fed. R. Civ. P. 26 ..................................................................................................... 8

Fed. R. Civ. P. 37 ..................................................................................................... 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **INTRODUCTION**

This motion relates to: (1) j2's inexcusable disclosure of confidential information to a former Protus employee; (2) j2's solicitation of confidential information from a former Protus employee after j2 was informed that such employee was bound by confidentiality agreements with Protus; and (3) j2's public dissemination of such unlawfully disclosed information, including the public filing of a document that was ordered to be sealed.

In a matter of weeks, j2 violated at least two separate Court Orders. First, the parties' Stipulation And Order Regarding Confidential Information ("Protective Order" or "P.O.") expressly prohibits the disclosure of information designated "Confidential – Attorney's Eyes Only" ("AEO") to a consultant who is "a former or present employee of . . . any of the parties to this action."  (P.O., ¶ 5.3.2., attached as Exhibit A to the Declaration of Erwin O. Switzer ("Switzer Dec.")).  On November 1, 2007, j2's counsel, John Brown, sent counsel for Protus a declaration of Marc Normand, a former Protus employee, in which Mr. Normand admits to receiving documents designated by Protus as AEO.  (Switzer Dec., ¶¶ 5, 11).  On November 6, 2007, counsel for Protus received a declaration of Mr. Brown confirming that "Mr. Normand has worked as a consultant to j2's counsel since June 2007, well before he saw the 'AEO' documents."  (Switzer Dec., ¶ 13).  Protus has also learned that on May 7, 2007, Mr. Normand signed a written Consultancy Agreement with j2 agreeing to provide paid consulting services to j2.  The disclosure of AEO documents to a former Protus employee acting as a consultant to j2 is a clear violation of the P.O.

Also, on October 22, 2007, this Court specifically ordered that the Joint Stipulation Re: Protus IP Solutions, Inc.'s Motion To Remove j2 Global Communications, Inc.'s "Confidential-Attorney's Eyes Only" Designation From j2's Faxes At Issue And Customer Complaint Form be filed under seal because it contained information designated as confidential under the P.O.  When Protus

filed this Joint Stipulation with the Court, it clearly marked on the front page of the document "**FILED UNDER SEAL**."  In complete disregard for this Order and Protus' confidentiality designation, j2 publicly filed this same document as an attachment to the Declaration of John C. Brown In Support Of Oppositions To Motions For Partial Summary Judgment.

In a December 15, 2007 Order, the Honorable Dean P. Pregerson found that j2 violated the P.O. by: (1) allowing Mr. Normand to review AEO documents; and (2) publicly filing the Joint Stipulation.

In light of these violations, Protus seeks an order to show cause why j2 should not be held in contempt of court.

## BACKGROUND

Mr. Normand was terminated by Protus on February 23, 2007.  (Declaration of Thomas J. Martin ("Martin Decl."), at ¶ 3, attached as Exhibit B to the Switzer Dec.).   During the course of his employment, Mr. Normand signed four confidentiality agreements requiring that he keep Protus' commercial and proprietary information confidential (collectively, "Confidentiality Agreements").   (Exs. A-D to the Martin Decl., attached as Exhibit B to the Switzer Dec.).  j2 and its counsel were aware of such Confidentiality Agreements at least as early as May 1, 2007, when j2 took the deposition of Protus' Chief Financial Officer Thomas J. Martin, who testified:

> Q.  Can you name any other employees who left Protus this year?
>
> A.  No, I can't recall.
>
> Q.  How about going back to December of last year?  You named some guy named Marc earlier.
>
> A.  Marc Normand.
>
> Q.  Right.  Anybody else?
>
> A.  Sorry, I am drawing a blank on this one.

1        Q.   Do any of these persons -- I don't want you to give

2        confidential employee information if this calls for it -- have non-

3        disclosure agreements?

4        A.  Yes.

5        Q.  Do all of those persons have non-disclosure agreements?

6        A.  Yes.

7        Q.  How do you know that?

8        A.  We all signed restricted covenants when we were hired and

9        all employees sign confidentiality agreements.

10 (Switzer Dec., ¶ 4).

11      It appears from this line of questioning that j2 was seeking former Protus

12 employees to assist j2 in this litigation, and despite learning that all employees have

13 confidentiality agreements, j2 officially retained as a paid consultant, less than one

14 week later, the one former employee who was specifically identified during this line

15 of questioning – Marc Normand.

16      On May 7, 2007, Mr. Normand and j2 executed a "Consultancy Agreement,"

17 in which Mr. Normand agreed "to perform ***consulting services*** for j2 through its

18 counsel."   (Consultancy Agreement, at ¶ 1, attached as Exhibit Q to the Switzer

19 Dec.) (emphasis added).   Mr. Normand agreed to "advis[e] j2 on information

20 related to the pending litigation" and to "consistently and at all times diligently and

21 conscientiously use [his] best efforts to further the interests of j2 and its affiliates."

22 (Id. at ¶ 3).  In return, j2 agreed to compensate Mr. Normand for his services as a

23 consultant.  (Id. at ¶ 4).  This Consultancy Agreement was amended on May 12,

24 2007, to reflect that Mr. Normand was retained "solely and exclusively" to serve

25 j2's counsel Redenbacher & Brown, LLP; Allen Matkins Leck Gamble Mallory &

26 Natsis, LLP; and the Law Office of Max Margulis.  (Amendment No. 1 to the

27 Consultancy Agreement, at ¶ 1, attached as Exhibit R to the Switzer Dec.).

28

PROTUS' MEM. OF P & A IN SUPP. OF MOT. FOR AN
ORDER TO SHOW CAUSE WHY J2 AND ITS COUNSEL
SHOULD NOT BE HELD IN CONTEMPT

1    Mr. Normand recently has given three declarations in connection with this
2    litigation and in violation of his Confidentiality Agreements (collectively,
3    "Normand Declarations").  (Switzer Dec., ¶ 5).

4    Not surprisingly, when the first Normand Declaration was submitted in
5    connection with j2's Opposition to Protus' Motion to Remove j2's AEO
6    designations, Protus informed j2 that it was designating the Normand Declaration
7    as AEO.  (Switzer Dec., ¶ 6).  In response, j2 stated that the Normand Declaration
8    "is not 'confidential,'" but did not formally challenge the confidentiality
9    designation as required by the P.O., and on October 17, 2007, the parties filed
10   **under seal** their Joint Stipulation, pursuant to this Court's Order, with the first
11   Normand Declaration attached.  (Switzer Dec., ¶¶ 5, 6).  On October 22, 2007,
12   Protus again reminded j2 by e-mail that Mr. Normand was the subject of
13   confidentiality agreements with Protus.  (Switzer Dec., ¶ 7).  In fact, Protus
14   attached to that e-mail the four Confidentiality Agreements between Mr. Normand
15   and Protus.  (Id.).

16   Two days later, on October 24, 2007, j2 attached a revised version of the
17   Normand Declaration to its opposition to Protus' motions for partial summary
18   judgment ("Revised Normand Declaration").  (Switzer Decl., ¶ 8).  This declaration
19   was not filed under seal.  (Id.).  Although this declaration omitted the names of
20   Protus' customers and redacted the last names of two Protus employees, a
21   substantial amount of confidential and proprietary business information remained in
22   the Revised Normand Declaration.  (Id.; Martin Dec., ¶¶ 9-12, attached as Exhibit B
23   to the Switzer Dec.).  This confidential and proprietary information also was quoted
24   extensively throughout j2's Statement of Genuine Issues and Additional Facts and
25   its Memoranda of Points and Authorities in Opposition to Protus' Motions for
26   Summary Judgment.  (Switzer Dec., ¶ 9).

27   j2 also attached the aforementioned sealed Joint Stipulation as Exhibit 3 to
28   the Declaration of John Brown in Support of Oppositions to Motions for Partial

Summary Judgment, which had been filed under seal by order of this Court.  (Id.).
When Protus informed j2 that it had filed the sealed Joint Stipulation publicly, j2's
counsel denied that the Stipulation was confidential.  While this was not j2's call to
make, there can be no dispute that j2's public filing violated the Court's October
22, 2007 Order, which states: "The Joint Stipulations Regarding Defendant Protus
IP Solutions, Inc.'s Motion to Compel and Motion to Remove AEO Designation,
the Exhibits thereto, the underlying documents, the parties' application and this
Order are to be filed under seal."  (Switzer Dec., ¶ 15).

In fact, Judge Pregerson ruled on December 12, 2007, that j2 violated the
P.O. by publicly filing the Joint Stipulation that had previously been filed under
seal.  (December 12, 2007 Order, attached as Exhibit P to the Switzer Dec.).

Upon reading Mr. Normand's third declaration, Protus was shocked to learn
that j2 has been disclosing "AEO" information to Mr. Normand in direct violation
of the P.O.  (Switzer Dec., ¶ 11).  The P.O. expressly provides, "no such consultant
may be a former or present employee of, or have any ownership interest in, any of
the parties to this action."  (P.O., ¶ 5.3.2, attached as Exhibit A to the Switzer Dec.).

Despite its knowledge of the confidentiality agreements between Mr.
Normand and Protus, j2 has engaged Mr. Normand as a paid consultant in a
calculated scheme to receive unlawfully disclosed information.  In turn, j2 has
provided Mr. Normand with AEO information in violation of the P.O.  As if this
were not enough, j2 has disregarded Protus' designation of the Normand
Declarations as Confidential, and j2 has disregarded the Court Order to file a
stipulation under seal.  To make matters worse, j2's counsel, John Brown, has
admitted:

> I disclosed a copy of the Normand Declaration to my client
> (which disclosure would violate the "AEO" designation that
> Protus requests.)  I also disclosed the Normand Declaration to
> other attorneys who actively fight junk faxing and with whom

1        I occasionally share information regarding Protus.   I also

2        divulged the Normand Declaration to Steve Kirsch, who

3        maintains www.junkfax.org, which is dedicated to stopping

4        junk faxing.

5    (Switzer Dec., ¶ 13) (parenthetical in original).

6        In this same declaration, Mr. Brown revealed for the first time that "Mr.

7    Normand has worked as a consultant to j2's counsel since June 2007."  (Id.).  Upon

8    receiving this crucial admission regarding Mr. Normand's consultant position,

9    Protus pointed out that Section 5.3.2 of the P.O. expressly prohibits the disclosure

10   of AEO information to a consultant who is a current or former employee of Protus.

11   (P.O., ¶ 5.3.2., attached as Exhibit A to the Switzer Dec.).

12       Apparently realizing this clear violation of the P.O., Mr. Brown then insisted

13   in a declaration dated November 12, 2007, that Mr. Normand is acting as "support

14   personnel" to "outside counsel" and an "outside vendor."  (Switzer Dec., ¶ 14).  Mr.

15   Brown also now stated that "[a]dmittedly, I did not closely evaluate this issue," (see

16   id.), and that "I have done numerous things that would indeed invite contempt

17   charges against me were my interpretation of the P.O. wrong."  (Id.).

18       On December 12, 2007, Judge Pregerson ruled that j2 also violated the P.O.

19   by allowing Mr. Normand to review AEO documents in making his Declaration.

20   (December 12, 2007 Order, attached as Exhibit P to the Switzer Dec.).

21       **POINTS AND AUTHORITIES**

22   **I.**   **LEGAL STANDARD.**

23       A federal court "has wide latitude" in determining whether to hold a party

24   in civil contempt.  Gifford v. Heckler, 741 F.2d 263, 266 (9th Cir. 1984).  Civil

25   contempt consists of a party's disobedience of a specific and definite court order

26   by failure to take all reasonable steps within the party's power to comply.   18

27   U.S.C. § 401; Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1130 (9th

28   Cir. 2006); In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d

693, 695 (9th Cir. 1993); <u>Hi-Tek Bags, Ltd. v. Bobtron Int'l, Inc.</u>, 144 F.R.D. 379, 383 (C.D. Cal. 1992) (citing <u>Perry v. O'Donnell</u>, 759 F.2d 702, 705 (9th Cir. 1985)). ***The court is not required to find that a party or other person willfully or intentionally failed to comply with an order; there is no "good faith" exception to the requirement of obedience to a court order.*** <u>Reno</u>, 452 F.3d at 1130; <u>In re Dual-Deck</u>, 10 F.3d at 695; see also <u>In re Crystal Palace Gambling Hall, Inc.</u>, 817 F.2d 1361, 1365 (9th Cir. 1987) (stating that "the contempt need not be willful" and that a "good faith exception to the requirement of obedience to a court order has no basis in law"); <u>General Signal Corp. v. Donallco, Inc.</u>, 787 F.2d 1376, 1379 (9th Cir. 1986) ("Failure to comply need not be intentional"); <u>Donovan v. Mazzola</u>, 716 F.2d 1226, 1240 (9th Cir. 1983) ("Intent is not an issue in civil contempt proceedings.").

Similarly, contempt cannot be avoided by a party by arguing that a court order was in error or by arguing that later de-designation of documents excuses the improper use of those documents in violation of a protective order.  <u>See United States v. United Mine Workers of Am.</u>, 330 U.S. 258, 290 n.56 (1947) (noting that the primary purpose for the court's contempt powers to is to ensure that parties do not anoint themselves with the power to adjudge the validity of order to which they are subject); <u>United States v. Ayers</u>, 166 F.3d 991, 996 (9th Cir. 1999) (holding that contempt cannot be avoided by arguing that a court order was in error); <u>Del Campo v. Am. Corrective Counseling Servs., Inc.</u>, No. C-01-21151 JW (PVT), 2007 WL 1848660 (N.D. Cal. June 27, 2007) (rejecting plaintiff's argument that later de-designation of documents retroactively excuses the improper use of the documents while still designated as confidential).

Rather, a "*prima facie* showing of civil contempt is established by clear and convincing evidence showing that a party had notice of the terms of the court's order and violated that order." <u>Hi-Tek Bags</u>, 144 F.R.D. at 383.

Federal Rule of Civil Procedure 37 provides that if a party fails to obey an order entered under Rule 26(f),[1] the court may make such orders in regard to the violation that are just, including:

- an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

- an order rendering a judgment by default against the disobedient party;

- an order striking the disobedient party's pleadings or dismissing the action or proceeding or any part thereof;

- an order requiring the disobedient party or the attorney advising the party or both to pay reasonable expenses, including attorneys' fees, and/or

- an order treating as a contempt of court the failure to obey any orders. Fed. R. Civ. P. 37(b)(2)(B)-(D).

A terminating sanction dismissing a party's case is appropriate under the court's contempt powers where a party violates the terms of a protective order, even where the party's violation was unintentional. See Hi-Tek Bags, 144 F.R.D. at 383. As this very Court has recognized, violations of a protective order must be treated as an extremely serious matter and warrant sanctions:

> The Court considers [violations of a protective order] an extremely serious matter. Not only does it jeopardize the confidentiality of sensitive commercial and financial information obtained by plaintiffs from [defendant during discovery]. It calls into question the integrity of the discovery

---

[1] Rule 26(f) addresses the development of a discovery plan and references "any other orders that should be entered by the court under Rule 26(c)," the rule addressing protective orders. Fed. R. Civ. P. 26(f)(6).

1
2
3
4
5
6
7
8
9
10
11
12

> process conducted under protective orders.  In thousands of
> actions throughout the federal court system, millions of
> documents have been and are being produced in reliance on the
> binding force of protective orders.  Those orders have become a
> standard feature of most commercial litigation, obviating the
> need for costly and time-consuming proceedings on discovery
> objections.  As a result, a tendency may have developed to take
> them for granted and to treat compliance with them cavalierly.
> An appropriate sanction must therefore be imposed, "not merely
> to penalize those whose conduct may be deemed to warrant such
> sanction, but to deter those who might be tempted to such
> conduct in the absence of such a deterrent."

13
14
15
16
17

The Beam Sys., Inc. v. Checkpoint Sys., Inc., No. CV 95-4069-RMT (AJWx),
1997 WL 423113, at *2 (C.D. Cal. July 16, 1997) (Wistrich, J.) (quoting Falstaff
Brewing Corp. v. Phillip Morris, Inc., 89 F.R.D. 133, 135 (N.D. Cal. 1981),
affirmed in part and reversed in part on other grounds, 702 F.2d 770 (9th Cir.
1983)).

18
19
20
21
22
23
24
25
26

> Because of the important interests at stake, it is essential that
> protective orders be respected.  Carelessness in complying with
> protective orders, or willful violation of protective orders,
> impairs their usefulness and interferes with the ability of courts
> to effectively manage the litigation . . .  Accordingly, violations
> of protective orders issued to safeguard the confidentiality of
> trade secrets and other confidential information cannot and must
> not be tolerated.  Not surprisingly, ***the sanctions that can be
> imposed for violating a protective order may be severe.***

27
28

The Beam Sys., Inc. v. Checkpoint Sys., Inc., No. CV 95-4068-RMT (AJWx),
1997 WL 364081, at *2 (C.D. Cal. Feb. 6, 1997) (Wistrich, J.) (emphasis added).

As explained above and in more detail below, Protus has clearly demonstrated that j2 and its counsel knew of the terms of the P.O. and this Court's October 22, 2007 Order to file specific documents under seal, yet inexcusably violated these Orders.  Because these violations and j2's improper relationship with Mr. Normand are so intertwined, the Court must view j2's conduct in its entirety in order to fashion the appropriate relief.

## II.    j2 VIOLATED THE P.O. BY SHOWING AEO DOCUMENTS TO ITS CONSULTANT, MARC NORMAND, WHO IS A FORMER PROTUS EMPLOYEE.

As Judge Pregerson found, j2 violated the P.O. by showing AEO documents to Mr. Normand in making his Declaration.

Mr. Normand's Declarations reveal that he reviewed certain documents produced by Protus in this litigation.  (Switzer Dec, ¶ 11).  The referenced documents contain information related to Protus' customers and were designated as "Confidential – Attorney's Eyes Only" ("AEO") pursuant to the P.O. by marking each document "Confidential-Attorney's Eyes Only" directly above the Bates-number. (Id.).   j2 and its counsel violated Section 5.3 of the P.O. by sharing this information with Mr. Normand.

### A.    j2's Counsel Cannot Explain Why Sharing AEO Documents With Mr. Normand Did Not Violate The P.O.

In response to receiving Mr. Normand's Declaration stating that he was shown AEO information, Protus' counsel, Mr. Switzer, sent an e-mail requesting that Mr. Brown provide an explanation for why sharing the AEO documents with Mr. Normand was not a violation of the P.O.  (Id.).  Mr. Brown responded that he was relying on Section 5.3 of the P.O. (Id.).  But Mr. Normand does not fit within any category of individuals who are allowed to review AEO information under Section 5.3 of the P.O.  Specifically, Section 5.3 states:

PROTUS' MEM. OF P & A IN SUPP. OF MOT. FOR AN
ORDER TO SHOW CAUSE WHY J2 AND ITS COUNSEL
SHOULD NOT BE HELD IN CONTEMPT

5.3.  Access to confidential information designated Confidential – Attorney's Eyes Only shall be limited to the following persons:

5.3.1.  ***Outside counsel of record for the parties and their support personnel.  If any outside vendors (e.g., copy services) are used as support personnel for counsel of record of the parties, they shall comply with the requirements of Paragraph 5.7***.

5.3.2.  Pursuant to Paragraph 5.7, consultants requested by the parties' counsel to furnish expert or litigation support services in this litigation.  ***No such consultant may be a former or present employee of, or have any ownership interest in, any of the parties to this action.***

5.3.3.  Pursuant to Paragraph 4.1, deponents at their deposition . . .

5.3.4  The Court and Jury

(P.O., ¶ 5.3, attached as Exhibit A to the Switzer Dec.) (emphasis added).

Because Mr. Normand, a former Protus employee, did not appear to fit within any of the categories in Section 5.3, Protus' counsel sent an e-mail requesting that Mr. Brown clarify his position regarding Section 5.3.  (Switzer Dec., ¶ 11).  Mr. Brown did not respond to that e-mail.  (Id.)  In fact, when the parties met and conferred on November 2, 2007 regarding j2's Ex Parte Application For An Order Allowing Submission Of Declaration of Marc Normand In Support of Its Motion For Reconsideration Of Request For Appointment Of A Neutral And Special Master, Mr. Brown refused to state which part of Section 5.3 he contended applied to Mr. Normand.  (Id.).

1    During a subsequent meet and confer conference regarding the filing of

2  Protus' Additional Supplemental Memorandum Regarding j2 Global

3  Communications, Inc.'s Motion To Challenge "Confidentiality" Designation of

4  Protus IP Solutions, Inc., Mr. Brown stated that Mr. Normand fell within Section

5  5.3 because he had "signed the P.O." and was "working for a law firm that is

6  working for j2." (Switzer Dec., ¶ 12). On November 6, 2007, Mr. Brown signed

7  a declaration in which he finally disclosed that "Mr. Normand has worked *as a*

8  ***consultant*** to j2's counsel since June 2007, well before he saw the 'AEO'

9  documents." (Switzer Dec., ¶ 13) (emphasis added). The May 7, 2007

10  Consultancy Agreement further shows that Mr. Normand was retained "to

11  perform ***consulting services*** for j2 through its counsel." (Consultancy

12  Agreement, attached as Exhibit Q to the Switzer Dec.) (emphasis added). The

13  P.O., however, specifically excludes former employees from those consultants

14  with whom AEO material can be shared. (P.O., ¶ 5.3.2, attached as Exhibit A to

15  the Switzer Dec.). Therefore, by sharing these AEO documents with Mr.

16  Normand, a former Protus employee, j2 and its counsel have violated the P.O.

17  Indeed, Judge Pregerson found that j2 violated the P.O. in his December 12, 2007

18  Order.

19    In a subsequent declaration dated November 12, 2007, Mr. Brown now

20  insists  Mr. Normand to be "support personnel" and an "outside vendor" to

21  "outside counsel of record." (Switzer Dec., ¶ 14). This explanation strains

22  credulity and is contrary to Mr. Brown's previous declarations and is belied by

23  the Consultancy Agreement. Support personnel to outside counsel of record

24  means paralegals, secretaries, librarians, and information technology specialists.

25  It does not encompass former employees of a competitor retained specifically to

26  assist in the prosecution of a lawsuit. Outside vendors, according to the P.O.,

27  means people like copy services. Mr. Normand certainly does not fall within

28  these provisions of the P.O.

**B.     j2's Violation Of The P.O. Was Intentional.**

While it is clear that this Court is completely within its powers to hold j2 and its counsel in contempt even if such a violation was merely inadvertent, sanctions are especially warranted in situations such as these in which the violations demonstrate a blatant disregard for a party's confidential information and this Court's order.   j2's counsel has admitted that the sharing was not inadvertent.   Mr. Brown stated the following or words very close to the following:

> I've been sensitized and aware of this issue before I showed the documents to [Mr. Normand].  If you think I've done something wrong, hold me in contempt, go for it.

(Switzer Dec., ¶ 11).  j2 and its counsel were clearly aware that the information reviewed by Mr. Normand was marked AEO and considered highly confidential by Protus prior to its disclosure to Mr. Normand.  Several times during October, 2007, the parties met and conferred regarding j2's motion to de-designate the very information shown to Mr. Normand.   During these meet and confer conferences, Protus expressly stated its views as to why this information was properly designated as AEO, *e.g.,* it contained information pertaining to Protus' customers, etc.   Then on October 16, 2007, j2 filed the Joint Stipulation Regarding Plaintiff J2 Global Communications, Inc.'s Motion To Challenge "Confidentiality" Designations of Protus IP Solutions, Inc., in opposition to which Protus further outlined why the information pertaining to its customers is properly designated as AEO under the P.O.

Further, and perhaps most telling of j2 and its counsel's disregard for the P.O. entered by the Court, is that j2 has expressly recognized that information regarding a parties' customers is extremely sensitive and that such information requires the highest protection under the P.O.  Specifically, in opposing Protus' motion to de-designate information pertaining to j2's customers, j2 recognized

1    that "there could not be information that is more deserving of an 'AEO'

2    designation than the list of customers of a party's competitor."  (Joint Stip. Re

3    Protus' Motion to Remove AEO Designations, p. 15, lines 19-21).  Yet, despite

4    being fully aware of the sanctity of a parties' customer information, j2's counsel

5    handed over AEO documents pertaining to Protus' customers.  Accordingly, this

6    Court should hold a hearing to determine whether j2 and its counsel should be

7    held in contempt.

8           **C.     j2 And Its Counsel's Retention Of Mr. Normand As A Paid**

9                  **Consultant Was Improper.**

10          The P.O. prohibits a party's former or current employee from serving as the

11   opposing party's consultant because such relationships, by their very nature, are

12   problematic and fraught with ethical concerns.  Several California federal and state

13   courts have suggested that this type of relationship alone warrants the

14   disqualification of j2's counsel of record and Mr. Normand.

15          For example, in In re Data Gen. Corp. Antitrust Litig., MDL Doc. No. 369

16   (MHP), 1986 U.S. Dist. LEXIS 21923 (N. D. Cal. Aug. 1, 1986), defendant sought

17   to retain plaintiff's former employees as paid experts.  These employees, however,

18   had executed non-disclosure agreements.  The court stressed that:

19                 Obviously [defendant] is free to hire such experts and

20                 consultants as it sees fit in order to defend the substantial

21                 damage claims made by plaintiffs.  It is not free, however, to

22                 raid plaintiffs' roster of former employees where those

23                 employees, during their tenure, have become privy to matters

24                 protected by the attorney-client or work product privileges or

25                 which are subject to employee agreements protecting

26                 [plaintiff's] trade secrets.

27   Id. at *4-5.  The court found that each of the former employees was a party to a

28   written contract by which he had agreed not to divulge trade secret information.

This information "was not confined to scientific or engineering secrets, but specifically provide[d] for 'trade' secrets, which would include marketing information and other non-public information that provides the employer a competitive advantage in the marketplace.  Agreements of this nature are generally enforceable in California."  Id. at *9 (citing Gordon v. Landau, 49 Cal. 2d 690, 694 (1958); Loral Corp. v. Moyes, 174 Cal. App. 3d 268, 276 (1985).  The court held that:

> The knowledge these witnesses have of matters protected by the attorney-client privilege, trade secret agreements and possibly work-product privilege is so intermingled with knowledge that may be unprotected that the court cannot be assured [defendant] or the former employees will be able to segregate out only those matters that may be disclosed.  The danger of disclosure of protected information is substantial.  There is no sure way of guarding against disclosure if the employees are permitted to work for defendant on this litigation . . . No matter how well-intentioned counsel and the witnesses may be, the potential for abuse and mischief is great.  The court declines to put its stamp of approval on the arrangement proposed.

1986 U.S. Dist. LEXIS 21923, at *9-10.

In In re EXDS, Inc., No. C0500787 PVT, 2005 WL 2043020 (N.D. Cal. 2005), the court was faced with a situation in which plaintiff's former employee met with defense counsel and provided copies of documents that she still had in her possession (in electronic form) relating to the subject of the lawsuit.  Unlike this case, there was no evidence that the employee disclosed confidential information to defense counsel.  The court declined to disqualify counsel, but stated that:

> While the court is unaware of any case in which a court *disqualified* counsel based on counsel having obtained non-privileged, but commercially confidential, information from an opposing party's former employees, such a result might be appropriate if the facts supporting a finding that the integrity of the judicial process had been injured.

Id. at *4 n.8 (emphasis in original).

Additionally, in <u>B-C Housing P'ship, L.P. v. Apollo Ltd. P'ship</u>, Nos. A096780, <u>et al.</u>, 2002 WL 31628763 (Cal. Ct. App. Nov. 21, 2002), the court disqualified plaintiff's attorneys and two experts it retained to testify in that action. The disqualification order was premised on the experts' asserted access to defendant's confidential information.   Specifically, plaintiff made a former employee into its own expert witness and offered to pay him a fee for actively assisting in the prosecution of the case.  The court recognized that:

> [This] type of relationship poses a much greater risk that the former employer's confidential information will be compromised than an unsolicited 'cold call' seeking a former employee's voluntary cooperation.  By retaining and paying the expert, counsel enlists him as part of the litigation team, and given the expert a powerful incentive to place all of his knowledge at his clients' disposal.

Id. at *4; <u>see also</u> <u>Rentclub, Inc. v. Transamerica Rental Fin. Corp.</u>, 811 F. Supp. 651 (M.D. Fla. 1992) (stating that an appearance of impropriety arises not only from an inference that an attorney induced another to breach of confidence, but also from an innuendo that a so-called trial consultant is actually a fact witness); <u>MMR/Wallace Power & Indus., Inc. v. Thames Assocs.</u>, 764 F. Supp. 712 (D. Conn. 1991) (disqualifying defense attorney and his firm who retained a former employee of the plaintiff as a paid consultant); <u>American Prot. Ins. Co. v. MGM</u>

1   Grand Hotel-Los Vegas, Inc., Nos. CV-LV-82-26-HDM, et al., 1986 WL 57464 (D.

2   Nev. Mar. 11, 1986) (condemning an attorney's retention as a paid trial consultant

3   of an opposing party's former employee).

4         The concerns raised in these cases are abundantly present in this case.  j2

5   has raided Protus' roster of former employees and hired Mr. Normand, who during

6   his tenure with Protus, signed four Confidentiality Agreements.   Protus has

7   demonstrated that Mr. Normand revealed and will continue to reveal Protus'

8   proprietary information and trade secrets in violation of the Confidentiality

9   Agreements.  Not only that, but there is a legitimate question whether Mr. Brown

10  wrongfully induced Mr. Normand to breach these agreements by offering to

11  compensate him for his consulting services.  j2's disclosure of AEO documents to

12  Mr. Normand supports a finding that the integrity of the judicial process has been

13  injured.

14        The relief sought for j2's improper engagement of Mr. Normand, coupled

15  with the j2's violations of the Court Orders, warrants an order to show cause why

16  j2 and its counsel should not be held in contempt.

17  **III.   j2 VIOLATED THE P.O. AND THE COURT'S OCTOBER 22, 2007**

18        **ORDER TO FILE CERTAIN DOCUMENTS UNDER SEAL.**

19        As Judge Pregerson found, j2 violated the P.O. by publicly filing the Joint

20  Stipulation that had previously been filed under seal.

21        On October 22, 2007, pursuant to Local Rule 79-5.1, the Court granted the

22  parties' Stipulation and [Proposed] Order For Filing Under Seal Of Documents

23  Regarding Defendant's Motion To Compel And Motion to Remove j2's "AEO"

24  Designation.   In that Stipulation and Order, the parties agreed, and the Court

25  ordered, that because the documents contain information designated as Confidential

26  under the P.O., "[t]he Joint Stipulations Regarding Defendant Protus IP Solutions,

27  Inc.'s Motion to Compel and Motion to Remove AEO Designation, the Exhibits

28  thereto, the underlying documents, the parties' application and this Order are to be

filed under seal."  (October 22, 2007 Order, Exhibit N to the Switzer Dec.).  To eliminate any confusion on this issue, when Protus filed the Joint Stipulation re Protus IP Solutions, Inc.'s Motion to Remove j2 Global Communications, Inc.'s "Confidential – Attorneys' Eyes Only" Designation From j2's Faxes at Issue and Customer Complaint Forms, it clearly marked it on the first page of the document "**FILED UNDER SEAL**."  (Exhibit O to the Switzer Dec.).

Despite this Court's October 22, 2007, Order and Protus' clear demarcation on the first page of the Joint Stipulation as "**FILED UNDER SEAL**," j2 publicly filed the same Joint Stipulation as an attachment to the Declaration of John C. Brown in Support of Oppositions to Motions for Partial Summary Judgment. (Switzer Decl., ¶ 9).  In doing so, j2 violated Local Rule 79-5.2, which specifically provides that no "sealed or confidential records of the Court maintained by the Clerk shall be disclosed except upon written order of the Court."  When Protus informed j2 of this public filing, j2 made no effort to retract the sealed document from the public record.  (Switzer Decl., ¶ 9).  Nor did j2 deny that the Joint Stipulation was filed under seal.  Instead, j2's counsel decided to play judge, and summarily ruled that only the exhibits to the Joint Stipulation were confidential, not the Joint Stipulation itself, even though it quoted or paraphrased from the exhibits.  See United Mine Workers, 330 U.S. at 290 n.56 (noting that the primary purpose for the court's contempt powers to is to ensure that parties do not anoint themselves with the power to adjudge the validity of orders to which they are subject).  j2's counsel also unilaterally determined that the only basis for filing under seal was that the exhibits contained confidential information.  This is not true.  The request to file under seal specifically ordered that both the Joint Stipulation and the exhibits thereto be filed under seal.  (Switzer Decl., ¶ 15).  Indeed, this is exactly what Judge Pregerson concluded in his December 15, 2007 Order.

Additionally, j2 publicly filed the Revised Normand Declaration in connection with its summary judgment opposition, even though it was substantially

1    similar to the Normand Declaration that was designated AEO by Protus and ordered
2    to be filed under seal in the Court's October 22, 2007 Order.  (Exhibit N to the
3    Switzer Decl.; Switzer Dec., ¶ 8).   Given that both declarations disclosed
4    substantially the same information pertaining to Protus, j2 knew, or at least should
5    have known, that the second declaration of Mr. Normand should be filed under seal.
6    Yet, j2 publicly filed the Revised Normand Declaration.  j2 cannot circumvent this
7    Court's Order by filing a second declaration containing the same confidential
8    information.

9         Such a brazen disregard for this Court's October 22, 2007 Order and Protus'
10   confidential information clearly supports a show cause order.

## CONCLUSION

12        For the reasons set forth above, this Court should issue an order to show
13   cause why j2 and its counsel should not be held in contempt because j2: (1)
14   inexcusably disclosed confidential information to a former Protus employee; (2)
15   solicited confidential information from a former Protus employee after j2 was
16   informed that such employee was bound by confidentiality agreements with
17   Protus; and (3) publicly disseminated such unlawfully disclosed information,
18   including the public filing of a document that was ordered to be sealed.  The
19   Court should hold j2 and its counsel in contempt and enter an Order:

20        •    disqualifying j2's counsel;

21        •    prohibiting j2 from introducing into evidence the Normand
22   Declarations and all confidential information of Protus;

23        •    prohibiting Mr. Normand from participating and/or testifying in this
24   case;

25        •    refusing to allow j2 to support any of its claims or oppose any of
26   Protus' affirmative defenses;

27        •    striking j2's Complaint or dismissing this action or counts;

28        •    rendering a judgment by default against j2;

1    •    requiring j2 to pay Protus' reasonable expenses, including  attorney's

2  fees in responding to j2's conduct with respect to Mr. Normand; and/or

3    •    granting any such other and further relief as this Court deems just

4  and proper in this case.

5    Protus further respectfully requests the Court to direct that Protus be

6  allowed to take the deposition of Mr. Normand prior to the show cause hearing.

7

8  Dated:    January 7, 2008          Respectfully submitted,

9                                     MARY ANN L. WYMORE
                                       GREENSFELDER, HEMKER & GALE, P.C.
10
                                       MICHAEL C. TU
11                                     ORRICK, HERRINGTON & SUTCLIFFE LLP

12
                                       By _____
13                                              Mary Ann L. Wymore

14                                     Attorneys for Defendant Protus IP Solutions,
                                                          Inc.
15  1021280

16

17

18

19

20

21

22

23

24

25

26

27

28

PROTUS' MEM. OF P & A IN SUPP. OF MOT. FOR AN
ORDER TO SHOW CAUSE WHY J2 AND ITS COUNSEL
SHOULD NOT BE HELD IN CONTEMPT