1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10

11  J2 GLOBAL COMMUNICATIONS,      )  Case No. CV 06-00566 DDP (AJWx)
    INC.,                          )
12                                 )  **ORDER GRANTING IN PART AND**
                       Plaintiff,  )  **DENYING IN PART DEFENDANT'S**
13                                 )  **MOTION FOR SUMMARY JUDGMENT (NON-**
        v.                         )  **CONSTITUTIONAL GROUNDS), AND**
14                                 )  **DENYING DEFENDANT'S MOTION FOR**
    PROTUS IP SOLUTIONS; JOSEPH    )  **SUMMARY JUDGMENT (CONSTITUTIONAL**
15  NOUR; SIMON NEHME; AND         )  **GROUNDS)**
    THOMAS J. MARTIN,              )
16                                 )  [Motion filed on October 1, 2007]
                       Defendants. )
17  _____   )

18

19        This matter comes before the Court on Defendant Protus IP

20  Solutions, Inc., et al.'s ("Protus") motions for summary judgment

21  on non-constitutional and constitutional grounds.  After reviewing

22  the papers submitted by the parties with respect to the motion for

23  summary judgment on non-constitutional grounds, the Court grants

24  the motion in part and denies the motion in part.  After reviewing

25  the papers submitted by the parties with respect to the motion for

26  summary judgment on constitutional grounds, and the brief of the

27  United States as intervenor, the Court denies the motion.

28  ///

## I.    BACKGROUND

In this case, j2 Global Communications, Inc. ("j2") brings a lawsuit against Protus that alleges violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and for state law claims.  j2 and Protus both offer fax-related services to clients, including broadcast transmissions of faxes and conversion of faxes to files that can be accessed by clients on e-mail.  In this action, j2 has produced to Protus, through counsel, 8,000 faxes that it alleges were unsolicited advertisements received on its computer fax servers, and that were sent by Protus to j2 and j2 customers.

Protus brings two concurrent motions for summary judgment, one raising non-constitutional grounds and the other raising constitutional grounds.  The non-constitutional motion for summary judgment primarily raises questions regarding statutory interpretation of the TCPA.  The constitutional motion for summary judgment challenges the TCPA under the Due Process Clause of the Fifth Amendment, the Eighth Amendment, the First Amendment, and for vagueness.

## II.   LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Summary judgment cannot be granted where a genuine dispute exists as to any material fact.  Fed. R. Civ. P. 56(c).  A "material" fact

1  is one which might affect the outcome of the case under the
2  applicable law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
3  (1986).  A dispute about a material fact is genuine if a reasonable
4  jury could return a verdict for the non-moving party.  <u>Id.</u>

5     In deciding a motion for summary judgment, the evidence is
6  viewed in the light most favorable to the non-moving party, and all
7  justifiable inferences are to be drawn in its favor.  <u>Id.</u> at 255.
8  Moreover, "credibility determinations, the weighing of the
9  evidence, and the drawing of legitimate inferences from the facts
10 are jury functions, not those of a judge [when] he is ruling on a
11 motion for summary judgment."  <u>Id.</u>

12

13 **III.  PROTUS'S MOTION FOR SUMMARY JUDGMENT ON NON-CONSTITUTIONAL**
14    **CLAIMS**
15    A.   <u>Whether the Protus Faxes Were Sent to a "Telephone</u>
16         <u>Facsimile Machine"</u>.
17    The TCPA prohibits sending unsolicited faxes to a "telephone
18 facsimile machine," defined in the statute as "equipment which has
19 the capacity (A) to transcribe text or images, or both from paper
20 into an electronic signal and to transmit that signal over a
21 regular telephone line, or (B) to transcribe text or images (or
22 both) from an electronic signal received over a regular telephone
23 line onto paper."  47 U.S.C. § 227(a)(3).  Protus argues that the
24 TCPA does not prohibit sending unsolicited faxes through fax
25 servers, that are then transmitted to a computer, because those
26 devices are not "telephone facsimile machine[s]," as defined in the
27 statute.  Therefore, Protus maintains that j2's TCPA claims are not
28 actionable.

1    j2 responds that its equipment falls within the TCPA's

2    definition of "telephone facsimile machine."  In a July 2003 Report

3    & Order ("Order"), the FCC determined that "faxes sent to personal

4    computers equipped with, or attached to, modems and to <u>computerized</u>

5    <u>fax servers</u> are subject to the T.C.P.A.'s prohibition on

6    unsolicited faxes. . . ."  68 Fed. Reg. at 44,170, ¶ 143 (emphasis

7    added).  j2 does not, however, merely contest Protus's construction

8    of the TCPA.  First and foremost, j2 offers several reasons that

9    this Court does not have jurisdiction to consider Protus' arguments

10   regarding the definition of "telephone facsimile machine," insofar

11   as Protus implicitly challenges the FCC Order.

12       The Court turns to the threshold question of its

13   jurisdiction.[1]  47 U.S.C. § 402(a) states in relevant part that

14   "any proceeding to enjoin, set aside, annul, or suspend any order

15   of the Commission under this chapter . . . shall be brought as

16   provided by and in the manner prescribed in [the Hobbs Act]."  The

17   Hobbs Act provides that "the court of appeals . . . has exclusive

18   jurisdiction to enjoin, set aside, suspend . . . or determine the

19   validity of . . . all final orders of the [FCC] made reviewable by

20   section 402(a) of title 47."  28 U.S.C. § 2342.  "Together, [§§

21   402(a) and 2342] vest the courts of appeals with exclusive

22   jurisdiction to review the validity of FCC rulings."  <u>Wilson v.</u>

23   <u>A.H. Belo Corp.</u>, 87 F.3d 393, 396-97 (9th Cir. 1996); <u>see</u> <u>also</u> <u>FCC</u>

24   <u>v. ITT World Communications</u>, 466 U.S. 463, 468-69 (1984).

25

26

27   _____

       [1]A district court has jurisdiction to determine its own
28   subject matter jurisdiction.  <u>United States v. United Mine Workers</u>,
     330 U.S. 258, 292 n.57 (1947).

1    The Hobbs Act vests exclusive jurisdiction in the court of
2    appeals for "final orders" of an agency.  28 U.S.C. § 2342. The FCC
3    Order at issue here was clearly a "final order."  First, the FCC
4    Order became "final" on the date of public notice, July 25, 2003.[2]
5    Second, the FCC Order qualifies as an "order" for purposes of the
6    Hobbs Act.  See id. at 44,170, ¶¶ 143-44.  FCC orders are "final
7    orders" reviewable by the courts of appeals under the Hobbs Act "if
8    they impose an obligation, deny a right, or fix some legal
9    relationship as a consummation of the administrative process."  See
10   U.S. West Communications, Inc. v. Hamilton, 224 F.3d 1049, 1054
11   (9th Cir. 2000) (quoting Sierra Club v. United States Nuclear
12   Regulatory Commission, 862 F.2d 222, 225 (9th Cir. 1988).)  By
13   declaring that fax servers are "telephone facsimile machine[s]"
14   under the TCPA, the FCC's rulemaking decision was a final order
15   that determined rights and obligations.
16       Generally, to invoke exclusive jurisdiction, an aggrieved
17   party, within 60 days, must "fil[e] a petition for review of the
18   F.C.C.'s final order in a court of appeals naming the United States
19   as a party."  U.S. West Communications, Inc. v. MFS Intelenet,
20   Inc., 193 F.3d 1112, 1120 (9th Cir. 1999) (citing 28 U.S.C. §§
21   2342, 2344).  A "party aggrieved" is one who participated in the
22   agency proceeding below.  Sierra Club v. U.S. Nuclear Regulatory
23   Comm'n, 825 F.2d 1356, 1360 (9th Cir. 1987).  Protus argues that
24   the jurisdictional requirements of the Hobbs Act are inapplicable
25   in this case because Protus was not a party to the FCC rulemaking
26
27       [2]47 C.F.R. § 1.103(b) (FCC action becomes final on date of
28   public notice).  The Final Rule was published in the Federal
     Register.  68 Fed. Reg. 44,144.

1    process.  However, this argument was rejected by the Ninth Circuit

2    in Wilson, 87 F.3d at 400.  There, the Ninth Circuit affirmed a

3    district court's dismissal of the claims of several political

4    candidates where a FCC ruling had determined the issue in that

5    case.  Id. at 400.  In response to the very argument raised by

6    Protus here, the Ninth Circuit declared that the FCC ruling was

7    "binding on the [c]andidates even though they were not parties to

8    the FCC proceedings."  Id. at 398.  As was the case in Wilson, the

9    Hobbs Act applies here.[3]

10        A district court will lack jurisdiction to review a final

11   agency order under the Hobbs Act when the claim requires

12   determination of the validity of the FCC's action.  Wilson, 87 F.3d

13   at 399-400 (finding that the district court lacked jurisdiction

14   where claims necessarily would require a determination whether to

15   "enjoin, set aside, or suspend" the FCC's ruling).  In this case,

16   Protus raises the same issue decided by the FCC: whether fax

17   servers are included within the TCPA's definition of a "telephone

18   facsimile machine."  To address this question, the Court would have

19   to rule on the validity of the FCC's determination that faxes sent

20   to fax servers are sent to a "telephone facsimile machine."  The

21   Court does not have jurisdiction to "'enjoin, set aside, suspend

22

23        [3]The appropriate mechanism for Protus to raise its arguments
24   would have involved a FCC petition, followed by a Hobbs Act
     petition to the court of appeals.  47 U.S.C. § 405(a) ("the filing
25   of a petition for reconsideration shall not be a condition
     precedent to judicial review of any such order, decision, report,
26   or action, except where the party seeking such review (1) was not a
     party to the proceedings resulting in such order, decision, report,
27   or action").  Alternatively, Protus could have filed a rulemaking
     petition.  47 C.F.R. § 1.401(a) provides that "any interested
28   person may petition for the issuance, amendment or repeal of a rule
     or regulation" of the FCC.

1   [and] determine the validity of'" the FCC's final order.  See
2   United States v. Dunifer, 219 F.3d 1004, 1007 (quoting Sable
3   Communications of Cal., Inc. v. FCC, 827 F.2d 640, 642-43 (9th Cir.
4   1987) (quoting 28 U.S.C. § 2342.)).

5        Protus contends that it does not directly challenge the FCC
6   Order, or ask that the order be enjoined, set aside, suspended, or
7   invalidated.  This kind of collateral challenge, however, does not
8   avoid the jurisdictional requirements of the Hobbs Act.  See
9   Wilson, 87 F.3d at 399-400.  Because the Court plainly cannot
10  consider whether fax servers are "telephone facsimile machine[s]"
11  without either affirming or denying the FCC ruling, the court of
12  appeals has exclusive jurisdiction under the Hobbs Act.  That
13  Protus raises its argument as a defense does not change the
14  jurisdictional analysis.  Dunifer, 219 F.3d at 1007 ("[These]
15  jurisdictional limitations apply as much to affirmative defenses as
16  to offensive claims.")

17       Accordingly, in this action, the Court does not have
18  jurisdiction to invalidate the FCC order, and applies the FCC order
19  "as it is written."  See Hamilton, 224 F.3d at 1055 (9th Cir.
20  2000).  A fax server is a "telephone facsimile machine" under the
21  TCPA, and unsolicited faxes sent to a fax server are thereby
22  actionable.

23       B.   Whether j2 has the Right to Bring a TCPA Claim as
24            "Recipient" of Faxes

25       Protus argues that the TCPA allows only "the recipient" of an
26  unsolicited fax to bring a claim against the sender.  47 U.S.C.
27  227(b)(1) (2005).  Protus then points to statements in j2's
28  customer agreement and privacy policy that j2 is a "passive

7

conduit" for faxes directed to j2 customers.  (Walkup Declaration, Ex. M & Ex. N.)  Protus asserts that j2, as a conduit for faxes, cannot be "the recipient" of faxes, and thus has no TCPA claim.

j2 counters with a description of the process by which it receives fax transmissions on its fax servers: once a telephone call is placed, the sending and receiving machines communicate with one another, or "handshake," and if a connection is established, the document is transmitted between the two machines.  After the transmission, the fax servers convert the document into a digital image file that is then sent to j2 customers as an e-mail attachment via the Internet.  j2 argues, on this basis, that it clearly is "the recipient" of faxes.  Furthermore, j2 argues that only it has standing to pursue TCPA claims, as opposed to its customers which do not receive faxes, but rather e-mails that contain images of the fax transmissions received by j2.

The Court notes initially that the TCPA's private right of action provision does not refer to "the recipient" of a fax as the bearer of a TCPA claim.  That provision states in relevant part:

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $ 500 in damages for each such violation, whichever is greater, or

(C) both such actions.

1  47 U.S.C. § 227(b)(3).[4]

2     Furthermore, an "unsolicited advertisement" is defined as that

3  "transmitted to <u>any person</u> without that person's prior express

4  invitation or permission, in writing or otherwise."  47 U.S.C. §

5  227(a)(5) (emphasis added).  The text refers to "the recipient"

6  both when articulating that the statutory prohibition on

7  "unsolicited advertisement[s]" applies to persons "outside the

8  United States if the recipient is within the United States," 47

9  U.S.C. § 227(b)(1), and when articulating exceptions to the

10 prohibition. 47 U.S.C. § 227(b)(1)(C)(i-ii).

11    The private right of action provision itself does not

12 expressly limit TCPA claims to the recipient of unsolicited faxes.

13 Nevertheless, a person or entity that is the recipient of an

14 unsolicited fax may bring such claims subject to the Article III

15 requirements of standing.  To establish standing to bring a claim,

16 a plaintiff must show three elements: (1) an injury in fact, which

17 is "(a) concrete and particularized, and (b) actual or imminent,

18 not conjectural or hypothetical;" (2) a causal connection between

19 the injury and the challenged conduct; and (3) a likelihood that

20 the injury will be redressed by a favorable decision, i.e., that

21 the prospect of obtaining relief is ""not too speculative." <u>Bras v.</u>

22 <u>Cal. Pub. Util. Comm.</u>, 59 F.3d 869, 872 (9th Cir. 1995) (citing

23

24    [4]This case is before this Court on grounds of diversity
   jurisdiction.  While several courts, including the Ninth Circuit,
25 have held that state courts have exclusive jurisdiction for TCPA
   claims, despite the fact that those claims arise under a federal
26 statute, <u>see, e.g.</u>, <u>Murphey v. Lanier</u>, 204 F.3d 911, 915 (9th Cir.
   2000), two recent circuit court opinions held that district courts
27 may exercise diversity jurisdiction over TCPA claims.  See <u>US Fax</u>
   <u>Law Ctr., Inc. v. Ihire, Inc.</u>, 476 F.3d 1112, 1118 (10th Cir.
28 2007); <u>Gottlieb v. Carnival Corp.</u>, 436 F.3d 335, 338 (2d Cir.
   2006).

1   <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 559 (1992)).

2   "Congress has the power to define injuries and articulate chains of

3   causation that will give rise to a case or controversy where none

4   existed before."  <u>Massachusetts v. EPA</u>, 127 S. Ct. 1438, 1453

5   (2007) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. at 560

6   (Kennedy, J. concurring)).

7        Consistent with the TCPA's private right of action provision,

8   the Court finds that j2's receipt of Protus' faxes on its fax

9   servers establishes its standing to bring a TCPA claim.  The TCPA

10  confers standing on "any person or entity" injured by unsolicited

11  fax advertisements.  j2 alleges Protus' unsolicited faxes required

12  j2 to purchase additional telephone lines to receive faxes, server

13  space to store faxes, Internet bandwidth to email images to

14  customers, and other equipment; to suffer delays in receipt of

15  legitimate faxes; to lose customers due to the receipt of junk-

16  faxes, to receive numerous customer complaints, and to expend

17  employee time and energy responding to complaints.  j2's

18  allegations indicate an injury resulting from Protus' junk-faxing

19  activities.  A TCPA claim redresses this injury by allowing j2 to

20  pursue relief from its injuries.

21       Where Protus is alleged to have sent unsolicited faxes that

22  were received on j2's fax servers, j2 has a TCPA claim.  It is

23  irrelevant that j2 subsequently converts those faxes to e-mails for

24  customers, or that Protus did not know it was sending a fax to j2's

25  fax servers.  The TCPA applies to the act of sending unsolicited

26  faxes, and does not relieve an alleged junk faxer from a claim when

27  it was unknown that the fax would land on a fax server.

28  ///

1  Accordingly, j2 establishes that it has standing to bring its TCPA

2  claim.

3      C.   Whether the TCPA Applied to Foreign Entities Such as

4           Protus for Faxes Sent Before January 1, 2004.

5      j2's complaint alleges that Protus has been sending faxes

6  to its fax servers since 2002.  Protus contends that it cannot be

7  held liable under the TCPA for faxes sent before January 1, 2004;

8  it was only then, Protus argues, that Congressional amendments

9  applying the TCPA's prohibition on unsolicited faxes became

10 effective.  If this is the case, Protus claims that it cannot be

11 liable for unsolicited faxes sent prior to January 1, 2004, because

12 it is a Canadian corporation that conducted its faxing activities

13 from Canada at all times relevant to this action.  j2 counters

14 that, prior to the 2003 amendments, the TCPA's prohibition on

15 unsolicited faxes applied to foreign entities.

16     The Court must resolve whether the TCPA applied to foreign

17 entities prior to the amendments that took effect on January 1,

18 2004.  When interpreting a statute, a court looks first to the

19 text's plain language.  Lamie v. United States Trustee, 540 U.S.

20 526, 534 (2004) ("[W]hen the statute's language is plain, the sole

21 function of courts . . . is to enforce it according to its

22 terms.").

23     The TCPA is part of the Communications Act of 1934.  The

24 Communications Act is applicable to "all interstate and foreign

25 communication . . . which originates and/or is received within the

26 United States. . . ."  47 U. S. C. § 152(a).  The Communications

27 Act envisioned the FCC "as the 'single [g]overnment agency' with

28 'unified jurisdiction' and 'regulatory power over all forms of

electrical communication, whether by telephone, telegraph, cable, or radio." United States v. Southwestern Cable Co., 392 U.S. 157, 168 (1968) (quoting S. Rep. No. 781, 73d Cong., 2d Sess., 1.)  In 1991, when the TCPA was enacted, the statute provided that:

> It shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine.

47 U.S.C. § 227(b)(1)(C) (1991)  In 2003, the TCPA was amended to read:

> It shall be unlawful for any person within the United States or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine.

47 U.S.C. § 227(b)(1)(C) (1991), as amended by 47 U.S.C. § 227(b)(1)(C) (2003).  The amended provision took effect on January 1, 2004.  CAN-SPAM Act, S. Res. 877, § 16, 108th Cong. (2003).

The TCPA, as written in 1991, clearly limited its prohibition on unsolicited faxes to "persons within the United States" that send such faxes.  A statutory term's plain meaning controls interpretation.  United States v. Gonzales, 520 U.S. 1, 8 (1997) ("Where there is no ambiguity in the words, there is no room for construction.  The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words . . . in search of an intention which the words themselves did not suggest.") (internal citation and quotation marks omitted).  The

plain meaning of the terms "within the United States" refers to a defendant's physical presence in the United States.

Nevertheless, where the Communication Act is applicable to "all interstate and foreign communication . . . which originates and/or is received within the United States," 47 U. S. C. § 152(a), the TCPA's previous application solely to "persons within the United States," 47 U.S.C. § 227(b)(1)(C) (1991), must be read in its statutory context.  <u>See</u> <u>Deal v. United States</u>, 508 U.S. 129, 132 (1993) ("[T]he meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.").  47 U.S.C. § 152(a) certainly contemplates the regulation of communications by foreign entities.  In the 1991 version of TCPA's prohibition on unsolicited faxes, however, Congress only applied the prohibition to "persons within the United States."  47 U.S.C. § 227(b)(1)(C) (1991).

In light of the text's plain meaning and several canons of statutory construction, it is reasonable to read the language "persons within the United States" as allowing TCPA claims against defendants that sent faxes while physically present in the United States.  Based upon the canon *expressio unius est exclusio alterius*, the inclusion of this language suggests that Congress intended for the TCPA § 227(b)(1)(C) to have a more limited reach than the broad application to foreign communications articulated in 47 U.S.C. § 152(a).  <u>See</u> <u>Russello v. United States</u>, 464 U.S. 16, 23 (1983)(citation omitted) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

exclusion.")  Whereas 47 U.S.C. § 152(a) provides for general application to "foreign communications," 47 U.S.C. § 227(b)(1)(C) is the more specific term, and until 2004, indicated a narrower application than 47 U.S.C. § 152(a).  Hughey v. United States, 495 U.S. 411, 419 (1990)(under the principle *ejusdem generis*, "a general statutory term should be understood in light of the specific terms that surround it").  As Congress is thought to act intentionally in selecting particular words, reading "persons within the United States" to indicate a geographic limitation on liability avoids rendering those words "superfluous."  See, e.g., Bedroc Ltd. v. United States, 314 F.3d 1080, 1088 (9th Cir. 2002) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks omitted).

The presumption against the extraterritoriality of federal statutes is further support for this reading.  Federal statutes do not ordinarily apply outside our borders unless a clear Congressional intent of extraterritorial application is evident. See, e.g., EEOC v. Arabian American Oil Co., 499 U.S. 244, 248, 113 L. Ed. 2d 274, 111 S. Ct. 1227 (1991) (citing Foley Bros., Inc. v. Filardo, 336 U.S. 281, 285 (1949)).  Courts "must resolve restrictively any doubts concerning the extraterritorial application of a statute." Arc Ecology v. United States Dep't of the Air Force, 411 F.3d 1092, 1097 (9th Cir. 2005) (internal citations omitted).  The TCPA, as written in 1991, did not exhibit a clear expression of Congressional intent to apply its prohibition

14

on unsolicited faxes to foreign entities.[5]  That Congress amended
the statute to apply to "any person outside the United States if
the recipient is within the United States," in addition to "any
person within the United States," suggests Congress did not
consider the statute applicable to foreign entities prior to those
amendments.  It also shows Congressional intent to extend the
TCPA's prohibition on unsolicited faxes to foreign entities, where
such a clear statement is normally required for extraterritorial
application.  See Arabian American Oil Co., 499 U.S. at 248 (1991).

j2 offers an alternative argument that Protus should be deemed
a "person within the United States" under the statute because its
faxing activity, directed at the United States, established
sufficient "minimum contacts" to subject Protus to personal
jurisdiction in the United States.  This argument conflates the
difference between a defendant subject to personal jurisdiction and
a defendant subject to liability based upon the substantive
elements of a statutory claim.  The purpose of the "minimum
contacts" test is to subject an absent defendant, that directs its
activities at a forum, to personal jurisdiction.  See World-Wide
Volkswagon Corp. V. Woodson, 444 U.S. 286, 297 (1987).  The

_____

[5]j2 suggests that 47 U.S.C. § 152(b) allows for
extraterritorial application of TCPA's prohibition on unsolicited
faxes.  47 U.S.C. § 152(b) is titled "Exceptions to Federal
Communications Commission jurisdiction."  It provides in relevant
part: "Except as provided in sections 223 through 227 [the TCPA is
section 227] . . . nothing in this chapter shall be construed to
apply or to give the Commission jurisdiction with respect to
[several exceptions not relevant here]. . . ."  47 U.S.C. § 152(b).
The exceptions in 47 U.S.C. § 152(b) are not relevant here because
that subsection clearly states that they do not apply to the TCPA,
which is section 227.  Thus, 47 U.S.C. § 152(b) is irrelevant to
interpretation of 47 U.S.C. § 227(b)(1), or its relationship with
47 U.S.C. § 152(a).

1   "minimum contacts" test is thus distinct from the TCPA's previous

2   substantive requirement of physical presence in the United States

3   for a defendant to be subject to liability.   In this case, Protus

4   is subject to personal jurisdiction for faxing activities prior to

5   January 1, 2004, but Congress did not make the junk faxing activity

6   of a foreign entity actionable under the TCPA until January 1,

7   2004.[6]

8        Until January 1, 2004, therefore, the Court finds that the

9   TCPA's prohibition on unsolicited faxes was limited to persons

10  physically present in the United States.   Congress originally

11  limited the TCPA's prohibition on unsolicited faxes to "persons

12  within the United States," and later removed that limitation by

13  amending the statute for the prohibition to apply to foreign

14  entities.[7]   Insofar as Protus sent faxes from outside the United

15  States, Protus may only be held liable for TCPA violations

16  occurring after January 1, 2004.   However, j2 is entitled to pursue

17  discovery regarding whether Protus sent any pre-2004 faxes from

18  within the United States, as such conduct is actionable under the

19  TCPA.

20  _____

21       [6]The Court recognizes that j2 bases its argument on a FCC
    opinion that adopted this personal jurisdiction interpretation of
22  the TCPA.   See In the Matter of 21st Century Fax(es) Ltd., 2002 WL
    27541 (F.C.C. Jan. 11, 2002) (No. F.C.C. 02-2, EB-00  The FCC
23  opinion, however, is not controlling.   In 21st Century, the FCC
    made a forfeiture order.   The Ninth Circuit has held that 47 U.S.C.
24  § 504(a) vests exclusive jurisdiction for review of a forfeiture
    order in district courts.   Dougan v. FCC, 21 F.3d 1488, 1490-91
25  (9th Cir. 1994).   Therefore, the Court is entitled to review a FCC
    decision contained in a forfeiture order, or adopt a ruling
26  contrary to such an order.   For the reasons described, the Court is
    not persuaded by the FCC opinion's analysis.

27       [7]j2 does not point to legislative history that indicates a
28  contrary legislative intent to the Court's interpretation, nor does
    the Court find the legislative history to suggest otherwise.

D.   <u>Whether Protus is Entitled to Summary Judgment on J2's Claim Under 47 C.F.R. 68.318(d)</u>.

    1.   <u>Does 47 C.F.R. 68.318(d) Apply to Foreign Entities Such as Protus</u>?

Due to its ruling below on the lack of a private right of action under 47 C.F.R. § 68.318(d), the Court does not address this question.

    2.   <u>Does 47 C.F.R. § 68.318(d) Provide a Private Right of Action</u>?

Count Two of j2's complaint brings a claim under 47 C.F.R. § 68.318(d), which sets forth technical requirements for faxing activity, including that a person must mark on fax transmissions the date and time of the transmission, identify the person or entity sending the message, and that person's or entity's telephone number. The requirements in the regulations reiterate nearly identical language contained in the TCPA. <u>Compare</u> 47 C.F.R. § 68.318(d) <u>with</u> 47 U.S.C. § 227(d)(2). The FCC adopted this regulation pursuant to its authority under 47 U.S.C. § 227(d)(2) ("The [FCC] shall revise the regulations setting technical and procedural standards for telephone facsimile machines. . . ."); <u>see also</u> FCC Report & Order, 68 Fed. Reg. 44,144, 44,170.

Protus argues that neither 47 C.F.R. § 68.318(d) nor 47 U.S.C. § 227(d) authorize a private right of action for violations of the TCPA's technical requirements. The Court agrees. On the issue of implied rights of action, the Supreme Court has declared that "private rights of action to enforce federal law must be created by Congress." <u>Alexander v. Sandoval</u>, 532 U.S. 275, 286-87 (2001). The TCPA provides a private right of action, seeking an injunction

and / or monetary damages, for violations of its prohibition on
unsolicited faxes, or violations of accompanying regulations.   47
U.S.C. § 227(b)(3).   The TCPA expressly limits the private rights
of action provision in 47 U.S.C. § 227(b)(3) to "violation[s] of
this subsection."   In 47 U.S.C. § 227(d) and 47 C.F.R. § 68.318(d),
on the other hand, the TCPA does contain language that provides a
private right of action for technical violations.   The Court,
therefore, finds that Congress did not intend a private right of
action for enforcement of the TCPA's technical requirements.   See
j2 Global Communications, Inc. V. Vision Lab Telecommunications,
Inc., et al., No. 05-6348, at *8-10 (C.D. Cal. May 9, 2006)
(finding no private right of action under 47 C.F.R. 68. 318(d));
see also Boydston v. Asset Acceptance, LLC, 496 F. Supp. 2d 1101,
1110 (N.D. Cal. 2007); Klein v. Vision Lab Telecommunications,
Inc., 399 F. Supp. 2d 528, 538-40 (S.D.N.Y. 2005).

        j2 notes that Protus raised this argument in an earlier motion
to dismiss, and that the Order of this Court denied Protus' motion
to dismiss.   j2 argues that the "law of the case" requires
rejection of this argument here.   However, j2's invocation of the
"law of the case" doctrine is misplaced.   "Under the 'law of the
case' doctrine, a court is ordinarily precluded from reexamining an
issue previously decided by the same court, or a higher court, in
the same case."   Richardson v. United States, 841 F.2d 993, 996
(9th Cir. 1988) (citations omitted).   However, the doctrine is "not
an inexorable command." United States v. Smith, 389 F.3d 944, 949
(9th Cir. 2004) (quoting Hanna Boys Center v. Miller, 853 F.2d 682,
686 (9th Cir. 1988)).   As long as the district court retains
jurisdiction, "[a]ll rulings of a trial court are subject to

1  revision before entry of judgment." <u>Id.</u> (quoting <u>City of Los</u>

2  <u>Angeles v. Santa Monica BayKeeper</u>, 254 F.3d 882, 888 (9th Cir.

3  2001)).

4      Initially, the Court notes that the Order denying Protus'

5  motion to dismiss, made by Judge Walter, did not discuss the issue

6  of a private right of action under 47 C.F.R. § 68.318(d) (<u>See</u> Order

7  Denying Protus' Motion to Dismiss, April 26, 2006.) Accordingly,

8  it appears the "law of the case" doctrine is inapplicable. Even

9  so, the doctrine does not preclude the Court from determining that

10 47 C.F.R. § 68.318(d) does not provide a private right of action,

11 as "[a]ll rulings of a trial court are subject to revision before

12 entry of judgment." <u>Smith</u>, 389 F.3d at 949.

13

14 **IV.  PROTUS'S MOTION FOR SUMMARY JUDGMENT ON CONSTITUTIONAL CLAIMS**

15     Protus raises several constitutional challenges to the TCPA.

16 First, Protus challenges statutory damages under the TCPA as a

17 violation of the Due Process Clause of the Fifth Amendment, and a

18 violation the Eighth Amendment prohibition on excessive fines.

19 Second, Protus argues that the TCPA violates the First Amendment's

20 protection for commercial speech. Third, Protus raises vagueness

21 challenges to several aspects of the TCPA.

22     A.   <u>Due Process and Eight Amendment Challenge to TCPA's</u>

23          <u>Statutory Damages</u>

24     The TCPA provides that a person or entity that brings suit for

25 TCPA violations may "recover for actual monetary loss from such a

26 violation, or to receive $500 in damages for each such violation,

27 whichever is greater." 47 U.S.C. § 227(b)(3)(B). For a

28 defendant's knowing or willful TCPA violations, the TCPA further

1    provides that "the court may, in its discretion, increase the

2    amount of the award to an amount equal to not more than three times

3    the amount" otherwise available, or $1,500.   Id.   Protus argues

4    that the TCPA's provision for monetary damages violates the Due

5    Process Clause of the Fifth Amendment, and violates the Excessive

6    Fines Clause of the Eighth Amendment.

7              1.   The Due Process Clause

8         The Supreme Court has considered the constitutional limits of

9    punitive damages several times in the past decade.   State Farm

10   Mutual Automobile Insurance Company v. Campbell, 538 U.S. 408

11   (2003); Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532

12   U.S. 424 (2001); BMW of North America, Inc. v. Gore, 517 U.S.

13   559(1996).   In Campbell, the Court declared that "the Due Process

14   Clause of the Fourteenth Amendment prohibits the imposition of

15   grossly excessive or arbitrary punishments on a tortfeasor."

16   Campbell, 538 U.S. at 416.

17        On the policy for this rule, the Court explained that

18   "elementary notions of fairness enshrined in our constitutional

19   jurisprudence dictate that a person receive fair notice not only of

20   the conduct that will subject him to punishment, but also of the

21   severity of the penalty that a State may impose."   Id. at 417

22   (citations omitted).   The Court further stressed the heightened

23   danger of due process violations when juries with wide discretion

24   are charged with imposing punitive damage awards.   Id. at 417-18.

25   Based on these concerns, the Court has provided three guideposts

26   for reviewing whether punitive damages are grossly excessive:

27        (1) the degree of reprehensibility of the defendant's

28        misconduct; (2) the disparity between the actual or potential

20

1    harm suffered by the plaintiff and the punitive damages award;

2    and (3) the difference between the punitive damages awarded by

3    the jury and the civil penalties authorized or imposed in

4    comparable cases.

5    Id. at 418 (citing Gore, 517 U.S. at 575).

6        Relying on Campbell and other cases regarding the

7    constitutionality of punitive damages, Protus argues that the TCPA

8    violates the Due Process Clause because unsolicited faxing is not

9    reprehensible conduct, that the ratio between actual harm and

10   statutory damages exceeds the "single-digit ratio between punitive

11   and compensatory damages" which the Court in Campbell indicated was

12   constitutionally permissible, and that no comparable difference

13   exists in other enforcement schemes.

14       The Court questions the applicability of Campbell as

15   controlling authority on the constitutionality of a statutory

16   damages award.  Most importantly, the due process concerns with

17   respect to punitive damage awards are not the same when a defendant

18   is faced with the possibility of statutory damages.  Unlike

19   punitive damage awards that are within a jury's discretion, the

20   TCPA's provision for statutory damages specifies a precise amount

21   per violation, giving defendants fair notice of the extent of

22   possible damage awards.  See Account Outsourcing, LLC v. Verizon

23   Wireless Personal Communications, 329 F. Supp. 2d 789 (M.D. La.

24   2004) (adopting similar analysis).

25       Whether the TCPA's statutory damages are nevertheless

26   excessive under Due Process Clause, or whether Protus may be

27   entitled to a remittitur, is an issue that the Court does not

28   decide at this time.  The Court finds that the question of

1  excessive damages will be ripe for adjudication after issuance of a

2  verdict.  See,e.g., Local Union No. 38, Sheet Metal Workers Int'l

3  Ass'n, AFL-CIO v. Pellela, 350 F.3d 73, 89 (2d Cir. 2003).  A due

4  process challenge to excessive damages may be raised post-trial.

5  See, e.g., Zhang v. American Gem Seafoods, 339 F.3d 1020, 1042 (9th

6  Cir. 2003).

7              2.   The Eighth Amendment Prohibition on Excessive

8                   Fines

9       The Eighth Amendment states that "excessive bail shall not be

10 required, nor excessive fines imposed."  This clause restricts the

11 ability of the government "to extract payments, whether in cash or

12 in kind, 'as punishment for some offense.'"  United States v.

13 Bajakajian, 524 U.S. 321, 328 (1998).  However, the Supreme Court

14 has explained that the Eighth Amendment's prohibition on excessive

15 fines "does not constrain an award of money damages in a civil suit

16 when the government neither has prosecuted the action nor has any

17 right to receive a share of damages awarded."  Browning-Ferris

18 Industries of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 264

19 (1989).  In this case, any damages would be awarded to j2, not the

20 government.  Accordingly, Protus' Eighth Amendment claim fails as a

21 matter of law under Browning-Ferris Industries of Vt., Inc., 492

22 U.S. at 264.

23      B.   First Amendment Challenge: Commercial Speech

24      Protus argues that the TCPA is an unconstitutional regulation

25 of commercial speech.  Under the test from Central Hudson Gas &

26 Electric Corp. v. Public Service Commission, 447 U.S. 557, 566

27 (1980), when commercial speech concerns lawful activity and is not

28 misleading, regulation of commercial speech is permissible as long

1   as it (1) serves a substantial government interest; (2) directly
2   and materially advances that interest; and (3) is not more
3   extensive than necessary to serve that interest.  Id.; see also
4   Thompson v. W. States Med. Ctr., 535 U.S. 357 (2002).

5        In Destination Ventures, Ltd. v. FCC, 46 F.3d 54, 57 (9th Cir.
6   1995), the Ninth Circuit held that the TCPA was a constitutional
7   regulation of commercial speech under the Central Hudson test.
8   Id.; see also Missouri ex rel. Nixon v. Am. Blast Fax, Inc., 323
9   F.3d 649, 660 (8th Cir. 2003) (holding the same).  First, it was
10  uncontested in Destination Ventures, Ltd. that the TCPA served the
11  substantial government interest of "preventing the shifting of
12  advertising costs to consumers."  Id. at 56.  Second, the Ninth
13  Circuit found that the TCPA directly advanced this interest:
14  "[b]ecause Congress's goal was to prevent the shifting of
15  advertising costs, limiting its regulation to faxes containing
16  advertising was justified."  The Court reasoned that the
17  prohibition on unsolicited fax advertisements was "evenhanded, in
18  that it allies to commercial solicitation. . . ."  Id.  On the
19  third Central Hudson prong, the Ninth Circuit declared that the
20  TCPA had a reasonable fit with its stated goals, noting that
21  Congress was not required to completely eliminate cost shifting,
22  and ultimately found a reasonable fit between the TCPA and its
23  stated goals.  Id.

24       As this Court sits in the Ninth Circuit, Destination Ventures,
25  Ltd. is binding authority.  See Hart v. Massanari, 266 F.3d 1155,
26  1170 (9th Cir. 2001).  The Court follows the Destination Ventures,
27  Ltd. decision.  The Court also finds the Eighth Circuit's decision
28  in Missouri ex rel. Nixon, 323 F.3d at 654-55, persuasive.  Below,

1  the Court holds that the TCPA is a constitutionally permissible

2  regulation of commercial speech.

3         1.    The TCPA Serves a Substantial Governmental Interest.

4         Although uncontested in Destination Ventures, Ltd., 46 F.3d at

5  56, the Court holds that the TCPA serves a substantial government

6  interest.  Congress enacted the TCPA to prevent the harms

7  associated with unsolicited faxes, especially the shifting of

8  advertising costs.  In doing so, Congress responded to similar

9  legislative efforts in many states.  Congress identified the

10 tangible costs in paper and ink, but also, intangible costs such as

11 business interruption, interference with fax machines and computer

12 networks, and waste of time.  See id. (recounting the legislative

13 history showing that junk fax transmissions is a significant

14 problem).

15        Protus' argument that the TCPA was passed with a lack of

16 empirical evidence, rendering Congress's interest insubstantial, is

17 unavailing.  The government, while having the burden of showing a

18 substantial interest, need only support its asserted interest with

19 something more than "mere speculation or conjecture," and "must

20 demonstrate that the harms it recites are real. . . ."  Edenfield

21 v. Fane, 507 U.S. 761, 770 (1993).[8]  The TCPA was not passed in a

22 vacuum, but in response to a history of state regulation of the

23 pervasive junk-faxing problem.  Congress had before it research on

24 the nature and scope of the problem of unsolicited faxes,

25 _____

26        [8]In Edenfield, cited by Protus, the Supreme Court invalidated
   a state board of accountants' ban on personal solicitation where no
27 studies or anecdotal evidence, only a single affidavit, supported
   the board's asserted interests.  Id. at 770-73.  Nevertheless, the
28 Court found, at the very least, that the Board had asserted
   substantial interests.  Id. at 769-70.

specifically commercial fax advertisements.  Congress also held
numerous hearings that compiled anecdotal accounts of problems
associated with junk faxes.  See Missouri ex rel. Nixon, 323 F.3d
at 6455 (rejecting the same argument made by Protus here).

    This evidence was certainly sufficient to support a
substantial government interest.  The Court does not consider
technological developments to have alleviated the substantiality of
the government's interests.  Cf. Missouri ex rel. Nixon, 323 F.3d
at 6455 (concluding that technological advances had not eliminated
the problem of junk faxes, as of 2001, based on evidence that junk
faxing "interferes with company switchboard operations and burdens
the computer networks of those recipients who route incoming faxes
into electronic mail systems). Therefore, the Court finds that the
TCPA serves a substantial government interest.

                2.   The TCPA Directly and Materially Advances a
                      Substantial Governmental Interest.

    The Ninth Circuit has held that the TCPA directly advances the
interest in preventing the unwanted advertising cost-shifting of
junk faxes.  Destination Ventures, Ltd., 46 F.3d at 56.
Nevertheless, for this prong, Protus first advances arguments
soundly rejected by the Ninth Circuit in Destination Ventures,
Ltd., 46 F.3d at 56, and also the Eighth Circuit in Missouri ex
rel. Nixon, 323 F.3d at 655-58.  Protus argues that the TCPA lacks
a reasonable fit with the asserted interests in prevention of the
shifting of advertising costs and interference with business
operations, by applying solely to commercial speech when
noncommercial speech raises the same concerns.  For this argument,
Protus points to City of Cincinnati v. Discovery Network, Inc., 507

U.S. 410, 425 (1993), where an ordinance was found unconstitutional
for lack of a reasonable fit between the ordinance prohibiting
commercial newsracks and the asserted interest in preventing
aesthetic clutter.

Both <u>Destination Ventures, Ltd.</u> and <u>Missouri ex rel. Nixon</u>
distinguished the ordinance in <u>Discovery Network</u> from the TCPA.
That ordinance only regulated commercial newsracks, when it was
apparent that both commercial and noncommercial newsracks were
equally a problem.  <u>Discovery Network</u>, 507 U.S. at 425.
Conversely, the TCPA directly advances the interest in preventing
junk faxes because Congress had compelling evidence that
unsolicited fax advertising made up the bulk of junk faxes.
<u>Destination Ventures, Ltd.</u>, 46 F.3d at 56; <u>Missouri ex rel. Nixon</u>,
323 F.3d at 655-56.

Protus' argument that the TCPA is underinclusive does not
alter this conclusion.  Protus argues that the TCPA is
underinclusive because it does not ban unsolicited telephone
advertising,[9] and permits exemptions to the prohibition on
unsolicited fax advertising.[10]  Protus compares the TCPA to the
underinclusive statutes in <u>Rubin v. Coors Brewing Co.</u>, 514 U.S.
476, 489 (1995), and <u>Greater New Orleans Broadcasting Association
v. United States</u>, 527 U.S. 173, 190 (1999), which the Supreme Court
found did not directly and materially advance the asserted
interests.

_____

[9]Telephone solicitation is subject to less restrictive rules
than is facsimile solicitation, including the 'do not call' list.
47 U.S.C. § 227(c); 47 CFR 64.1200(c)(2).

[10]For example, fax advertisements from non-profit
organizations are exempt from the prohibition.

1     As stated by the Supreme Court in <u>Rubin v. Coors Brewing Co.</u>,
2  514 U.S. 476, 489 (1995), "[t]he underinclusivenes of a commercial
3  speech regulation is relevant only if it renders the regulatory
4  framework so irrational that it fails materially to advance the
5  aims that it was purportedly designed to further." <u>Id.</u>  In <u>Coors</u>,
6  the Supreme Court found that the ordinance was irrational because
7  it restricted labeling of alcohol content on beer, but did not
8  restrict the reporting of that information in advertisements.  514
9  U.S. at 488-89.  In <u>Greater New Orleans</u>, the Supreme Court held
10 that a law banning gambling at private casinos was irrationally
11 underinclusive, where the government supported tribal casino
12 gambling.  527 U.S. at 189-91.

13    The TCPA does not present the same constitutional infirmities
14 as the statutes in those cases.  As found in <u>Missouri ex rel.</u>
15 <u>Nixon</u>, 323 F.3d at 657, the TCPA is consistent in its approach to
16 regulation of the cost shifting of fax advertising, and it was
17 rational to treat fax advertising differently from telephone
18 solicitations.  <u>Id.</u>  As with the established business relationship
19 exception, it was not unreasonable for Congress to provide limited
20 exemptions for non-commercial fax advertising.

21         3.   <u>The TCPA is no More Extensive Than Necessary</u>.

22    This prong of the <u>Central Hudson</u> test is not a least
23 restrictive alternative requirement.  <u>See</u> <u>Thompson</u>, 535 U.S. at
24 368.  A regulation is not more extensive than necessary when "a
25 'fit' between the legislature's ends and the means chosen to
26 accomplish those ends, a fit that is not necessarily perfect, but
27 reasonable. . . ."  <u>Florida Bar v. Went For It, Inc.</u>, 515 U.S. 618,
28 632 (1995) (internal quotations and citations omitted).

1    The TCPA has a reasonable fit to prevent the cost shifting of
2    fax advertising.  <u>Destination Ventures, Ltd.</u>, 46 F.3d at 56.   The
3    TCPA does not prevent solicited fax advertising.   Furthermore,
4    advertisers may use telephone solicitation, direct mail, or in-
5    person solicitation, in accordance with the law.  <u>See Missouri ex</u>
6    <u>rel. Nixon</u>, 323 F.3d at 659 (suggesting these alternative channels
7    of communication).   Advertisers are not prevented from conveying
8    their message to consumers.  <u>See 44 Liquormart, Inc. V. Rhode</u>
9    <u>Island</u>, 517 U.S. 484, 529-30 (1996) (O'Connor, J. concurring) ("If
10   alternative channels permit communication of the restricted speech,
11   the regulation is more likely to be considered reasonable.")

12       Protus' consideration of this prong is a misplaced least
13   restrictive alternatives analysis.   While Congress could have
14   enacted a 'do not fax' list or conformed regulation of fax
15   advertising to telephone advertising regulation, it was not
16   required to do so.   Congress reasonably designed a scheme placing
17   the cost burden of unsolicited advertising on the senders, rather
18   than the consumer.  <u>Missouri ex rel. Nixon</u>, 323 F.3d at 659.   The
19   TCPA does not involve content-based restrictions seeking to
20   insulate the public from advertisers' messages, <u>contra</u> <u>See</u> 44
21   <u>Liquormart, Inc.</u>, 517 U.S. at 489-90, but rather, aims to prevent
22   the negative effects of the mode of communication.  <u>Missouri ex</u>
23   <u>rel. Nixon</u>, 323 F.3d at 659-60.   The TCPA has a reasonable fit to
24   this objective.   Accordingly, the Court holds that the TCPA is a
25   constitutional regulation of commercial speech.

26       C.   <u>Vagueness</u>[11]

27   _____

28       [11]The Court notes that its statutory construction of the terms
                                                   (continued...)

28

1    Protus raises several vagueness challenges.  "A statute may be

2  void for vagueness if it fails to give adequate notice to people of

3  ordinary intelligence concerning the conduct it proscribes."

4  United States v. Gilbert, 813 F.2d 1523, 1530 (9th Cir. 1987).  The

5  premise of for the doctrine is the "basic principle of due process

6  that an enactment is void for vagueness if its prohibitions are not

7  clearly defined."  Grayned v. City of Rockford, 408 U.S. 104, 108

8  (1972).  The U.S. Supreme Court has stated that vague laws fail to

9  "give the person of ordinary intelligence a reasonable opportunity

10  to know what is prohibited, so that he may act accordingly" and

11  create a risk of "arbitrary and discriminatory enforcement" by

12  officials charged with applying the laws.  Id. at 108-109; see also

13  United States v. Harris, 185 F.3d 999, 1004 (9th Cir. 1999).

14    The most important factor for vagueness analysis is whether

15  constitutional rights are at stake.  Vill. of Hoffman Estates v.

16  Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95 (1982).  This

17  is especially so in the context of a First Amendment vagueness

18  challenge.  See, e.g., Gammoh v. City of La Habra, 395 F.3d 1114,

19  1119 (9th Cir. 2005) ("A greater degree of specificity and clarity

20  is required when First Amendment rights are at stake").  When a law

21  regulates commercial speech, however, the overbreadth doctrine does

22  not apply, and any facial vagueness challenge will succeed "only if

23  the enactment is impermissibly vague in all of its applications."

24  Vill. of Hoffman Estates, 455 U.S. at 494-95; see also Hotel &

25  Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 971-72

26

27        [11](...continued)

28  "persons within the United States" avoids the need to address the
   vagueness challenge with respect to those terms.

(9th Cir. 2003).  A court's vagueness inquiry is responsive to the "the nature of the enactment," as civil enactments and economic regulation are "subject to a less strict vagueness test" than are criminal laws.  <u>Vill. of Hoffman Estates</u>, 455 U.S. at 498.

As the TCPA permissibly regulates commercial speech and does not apply to non-commercial speech, it must be shown that the law is "vague in all of its applications." <u>Id.</u> at <u>Id.</u> at 495.  The TCPA, as a civil enactment, is subject to a less strict vagueness test" <u>Id.</u> at 498.

### 1.   <u>Protus' Challenge That the TCPA is Vague by Permitting j2 to Bring its TCPA Claim</u>

Protus argues that the TCPA is vague insofar as j2, an intermediary for fax transmissions unknown to Protus, is permitted to bring a claim for receipt of unsolicited faxes on its fax servers.  The Court has already explained that the TCPA, in accordance with its private right of action provision, permits "any person or entity" to bring a TCPA claim for violations of the statute.  <u>See</u> 47 U.S.C. § 227(b)(3).  Such claims are subject to standing and other jurisdictional requirements.  It has been determined that a "telephone fax machine" includes fax servers.  Furthermore, an "unsolicited advertisement" is a fax "transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  47 U.S.C. § 227(a)(5).  Accordingly, the TCPA provides fair notice that "any person or entity" receiving an unsolicited fax on a "telephone facsimile machine," which includes fax servers, has standing to bring a claim.  <u>See</u> 47 U.S.C. § 227.  There is no vagueness here.

1    Contrary to Protus' contentions, the TCPA is not vague in that
2    a recipient of an unsolicited fax that is unknown to the sender is
3    permitted to bring a TCPA claim.  The TCPA's private right of
4    action provision anticipates that the senders of unsolicited faxes
5    regularly do not know to whom their faxes are being sent.  Protus
6    also does not show vagueness by suggesting that the TCPA subjects
7    defendants to multiple lawsuits for a single fax.  The TCPA offers
8    fair notice that a defendant will be subject to suit if it sends an
9    unsolicited fax to a "telephone facsimile machine."

10           2.   Protus' Challenge That the TCPA is Vague Whether an
11                'Intermediary' is a Sender of a Fax

12    Protus next argues that the TCPA is unclear as to who is
13    liable when an advertiser arranges for a fax broadcaster to send
14    faxes on its behalf; in other words, Protus claims that the statute
15    is vague with respect to who sends the faxes.  This argument
16    appears to raise a question of statutory interpretation, rather
17    than a vagueness challenge.  The TCPA's prohibition on unsolicited
18    faxes applies to "any person . . . to use a telephone facsimile
19    machine, computer, or other device to send, to a telephone
20    facsimile machine, an unsolicited advertisement . . ." 47 U.S.C. §
21    227 (b)(1)(C).  A person of ordinary intelligence should know that
22    this prohibition will apply if that person engages in the act of
23    sending.

24    The application of this rule to fax broadcasters is also
25    clear.  The Court disagrees with Protus' assertion that the FCC
26    rules regarding the liability of intermediaries, such as common
27    carriers and fax broadcasters, have not provided clear guidance.
28    The current FCC regulation on intermediary liability provides that

"[a] facsimile broadcaster will be liable [for unsolicited fax advertisements] . . . if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions."  47 C.F.R. § 64.1200(a)(3)(vii).  This regulation has been in effect since August 25, 2003, <u>see</u> FCC Final Rule, 68 Fed. Reg. 44, 144 (July 25, 2003), indicating that fax broadcasters had fair notice of the standards governing their liability, at least since 2003.[12] In its 2003 Order amending the regulations, the FCC articulated the kind of actions by a fax broadcaster that indicate a "high degree of involvement," and that a fax broadcaster will not be liable in the absence of such involvement.  FCC Final Rule, 68 Fed. Reg. 44,144, 44,170.

Given the statutory language and the FCC regulations, the Court finds that fax broadcasters, and other possible defendants, had fair notice of the actions qualifying as sending unsolicited fax advertisements.

       3.   <u>Protus' Challenge That the TCPA's Definition of</u>
<u>"Unsolicited Advertisement" is Vague</u>

Protus' final vagueness challenge is to the TCPA's definition of an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to a person without that person's prior express invitation or permission, in writing or otherwise."

---

[12]The current regulation was an extension of the longstanding application of this rule to common carriers.  <u>See</u> In the Matter of Rules and Regulations Implementing the [TCPA], 7 F.C.C.R. 8752, 8780 (1992) (citing Use of Common Carriers, 2 F.C.C.R. 2819, 2820 (1987))

1  47 U.S.C. 227(a)(2)(5).  Protus contends that the definition does

2  not provide adequate notice of prohibited conduct, due to the

3  elusive distinction between commercial and non-commercial speech.

4  Protus then offers several hypothetical examples of faxes, and

5  differing court opinions on similar facts, that it claims

6  illustrate the definition's lack of clarity.

7       The TCPA's prohibition on "unsolicited advertisement" is

8  clearly limited in application to "commercial" advertising, and

9  provides an administrable standard for courts faced with the

10 hypothetical fact situations posed by Protus.  Vagueness does not

11 result from the need for courts to apply law to facts in cases at

12 the margins.  See Gospel Missions of America v. City of Los

13 Angeles, 419 F.3d 1042, (noting that "uncertainty at a statute's

14 margins will not warrant facial invalidation if it is clear what

15 the statute proscribes in the vast majority of its intended

16 applications").  The Court also does not consider cases cited by

17 Protus to be in conflict or support a vagueness finding.

18 Accordingly, the Court concludes that the TCPA's definition of

19 "unsolicited advertisement" is not constitutionally vague.

20

21 **V.    CONCLUSION**

22      As to Protus' motion for summary judgment on

23 non-constitutional grounds, the Court is GRANTS the motion in part

24 and DENIES the motion in part:

25      1.   A "telephone facsimile machine" includes a computer fax

26           server.

27      2.   j2 has standing to bring its TCPA claim.

28

3.   The terms "persons within the United States" refers to a defendant physically present in the United States.   Until January 1, 2004 when the amended TCPA applied to entities sending faxes from outside the United States, a TCPA claim was actionable only against a defendant sending faxes while physically present in the United States.

4.   47 C.F.R. 68. 318(d) does not provide a private right of action.   Count Two of j2's complaint is dismissed.

As to Protus' motion for summary judgment on constitutional grounds, the Court DENIES the motion.


IT IS SO ORDERED.


Dated: January 14, 2008

_____
DEAN D. PREGERSON
United States District Judge