FILED

1    TODD E. WHITMAN (State Bar # 173878)

2    ALLEN MATKINS LECK GAMBLE & MALLORY LLP
1901 Avenue of the Stars

2006 JAN 30 PM 4: 04

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

3    Suite 1800
Los Angeles, CA 90067

BY___

4    Phone: (310) 788-2448
Fax: (310) 788-2410

5    Email: twhitman@allenmatkins.com

6

7    JOHN C. BROWN (State Bar # 195804)
REDENBACHER & BROWN, LLP

8    388 Market Street, Suite 500
San Francisco, California 94111

9    Phone: (415) 409-8600
Fax: (415) 409-0600

10   Email: jbrown@redbrownlaw.com

11   Attorneys for Plaintiff, j2 GLOBAL COMMUNICATIONS, INC.

12

13   UNITED STATES DISTRICT COURT

14   CENTRAL DISTRICT OF CALIFORNIA

15

16   J2 GLOBAL COMMUNICATIONS, INC., a Delaware corporation,

Case No. CV06-0566 JS (MANx)

17            Plaintiff,

18            vs.

COMPLAINT FOR:
(1) VIOLATION OF FEDERAL TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. § 227)

19   Protus IP SOLUTIONS;
JOSEPH NOUR;

20   SIMON NEHME; and,
THOMAS J. MARTIN.

(2) VIOLATION OF FEDERAL TELEPHONE CONSUMER PROTECTION ACT (47 C.F.R. § 68.318(d))

21            Defendants.

(3) TRESPASS TO CHATTELS
(4) UNFAIR BUSINESS PRACTICE (Cal. B&P Code § 17200 et seq.)

22

23                             (DEMAND FOR JURY TRIAL)

24

25

26

27

28

Jara Declaration - Exh A
Page 4

1

Plaintiff j2 GLOBAL COMMUNICATIONS, INC. alleges:

<u>JURISDICTION AND VENUE</u>

1.      This action is filed in this Court because this Court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship and the amount in controversy is greater than $75,000.

2.      This Court has general and specific personal jurisdiction over defendants, because defendants have engaged in substantial, continuous and systematic activities within California, and the claims in this action arise out of defendants' forum-related activities.

3.      As further set out below, defendants purposefully directed their activities towards forum residents.

4.      Further, defendants regularly conduct business or contract or arrange to provide business and/or goods and/or services in this district.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the events and/or omissions on which the claims are based occurred in this Court's district.

<u>PARTIES</u>

6.      Plaintiff j2 GLOBAL COMMUNICATIONS, INC. ("j2") is a Delaware for-profit corporation with its principal place of business in Los Angeles, California.  j2's "eFax" service allows its customers to receive and send faxes through j2's servers and over j2's lines from anywhere that email can be accessed, and j2 does indeed send and receive millions of faxes every day.

7.      J2 is informed and believes, and on that basis alleges, that defendant PROTUS IP SOLUTIONS is a corporation organized and existing under the laws of Ontario, Canada. Protus' business is the sending of faxes and the provision of equipment for it and its clients to send as many as several million faxes every day.  Upon information and belief, millions of these faxes are "junk faxes," or unsolicited advertisements for commercial products or services.  Upon information and belief, Protus is one of the largest,

1  if not the largest, sender of junk faxes in the United States.  Protus does regular business in

2  California, although it is not authorized to do business in California.

3      8.  J2 is informed and believes, and on that basis alleges, that Defendant

4  JOSEPH NOUR is an adult individual resident of Ontario, Canada and the Chief Executive

5  Officer of Protus.

6      9.  J2 is informed and believes, and on that basis alleges, that Defendant SIMON

7  NEHME is an adult individual resident of Ontario, Canada and the Chief Technology

8  Officer of Protus.

9      10.  J2 is informed and believes, and on that basis alleges, that Defendant

10  THOMAS MARTIN is an adult individual resident of Ontario, Canada and the Chief

11  Financial Officer of Protus.

12  <u>GENERAL ALLEGATIONS</u>

13      11.  As set forth below, defendants have devised an elaborate scheme that is a

14  subterfuge for their high degree of direct involvement in what is possibly the largest junk

15  fax operation in the United States.  Over the years, in response to legal threats and

16  allegations, defendants have claimed that they are not liable for violations of federal and

17  state laws prohibiting or restricting junk faxes.  Defendants have claimed that they have

18  little direct involvement in the actual sending of the faxes.  Defendants have claimed that

19  their clients program their equipment to send the junk faxes, and that their clients alone are

20  responsible for any legal violations because defendants have no knowledge about the

21  content of the faxes.  Defendants' claims are false.  In fact, defendants are knowingly and

22  integrally involved in sending up to millions of junk faxes to United States' citizens every

23  day.  Indeed, Protus' website states that it "sends hundreds of thousands of faxes at once."

24  j2 brings this action to put an end to defendants' unlawful and unfair practices and for

25  statutory damages.

26      J2'S "eFax" BUSINESS AND ITS RECEIPT OF MASSES OF JUNK FAXES

27      12.  J2's eFax service allows its customers to receive faxes into their email

28  accounts.  J2 owns and maintains "fax servers" that enable multiple desktops to send and

1   receive faxes from the same or shared telephone lines. J2's servers have the capacity to

2   send or receive text or images and to transcribe both text and images from an electronic

3   signal received over a regular telephone line onto paper. The fax sender dials a telephone

4   number, to which j2 has subscribed, and programs his or her fax machine to send a fax to

5   the number leased by j2's customer. Upon receiving an analog fax transmission initiated

6   by the fax sender, one of j2's servers, to which its customer's phone line is routed, answers

7   the fax call and connects the call to a fax card. The server then digitizes the telephone

8   line's analog signal that came in and creates a digital file that is emailed to the customer.

9   The email is sent to a customer's email address associated with the particular number to

10  which the fax is sent. j2's servers and customers are located all over the country, including

11  in Los Angeles County.

12       13.   Every time that a fax signal is received by j2's equipment, it ties up one of

13  j2's lines and uses j2's limited bandwidth over which signals for the transmission of faxes

14  and emails are sent. This costs j2 money in that j2 is forced to purchase additional lines

15  and/or bandwidth to service its customers' needs. J2's customers often end up paying for

16  forwarded calls. Indeed, defendants' junk fax advertising effectively shifts their

17  advertising costs to fax recipients such as j2 and its clients.

18       14.   The junk faxes cause further damage to j2's reputation in that its customers

19  are often led to believe that j2 itself delivers the junk faxes. Numerous customers of j2

20  have complained to it about their receipt of the junk faxes . Further, j2 has fielded

21  complaints from Attorneys General across the country who have complained that j2 is

22  violating the law, when in fact it is defendants who are violating the law.

23       15.   As of 2000, j2 had become aware that its equipment, and ultimately its

24  customers, were regularly receiving masses of junk faxes. Neither it nor its customers had

25  consented to the receipt of these faxes. Neither it nor its customers had business

26  relationships with these fax senders. These unsolicited faxes were costing, and continue to

27  cost, j2 and its costumers money and time.

28       16.   J2 determined that, unless it took some action, it and its customers would

---

COMPLAINT FOR VIOLATION OF T.C.P.A., ET AL.

Jara Declaration - Exh A
Page 7

4

1    continue to incur the expense and time associated with the receipt of the masses of junk

2    faxes.

3         17.    As a result, beginning in or about 2002, j2 began to request from its

4    customers assignments of any claims that they may have based on the receipt of the junk

5    faxes.  Many of j2's customers began to assign to j2 any and all claims that they had for

6    damages against the fax senders based on the junk faxes received from defendants.

7    Although j2 has standing to bring any claims based on junk faxes received on its lines, as to

8    each junk fax with respect to which j2 claims damages in this action, it also has an

9    assignment from one of its customers of any and all rights that he or she may have.

10   Further, no customer consented to the receipt of any of the faxes at issue, and no customer

11   had an "established business relationship" with the fax sender.  However, particularly

12   because j2 owns the lines over which the faxes are transmitted, and because it retains the

13   right to bring any legal actions in its customer agreements, j2 has standing independent of

14   its customers' assignments.

15        DEFENDANTS' MASS FAXING AND PROVISION OF FAX NUMBERS AND

16             EQUIPMENT FOR THE SENDING OF JUNK FAXES

17        18.    Protus is a "fax broadcaster," or entity that transmits messages to telephone

18   facsimile machines on behalf of another person or entity for a fee.  47 CFR 64.1200(f)(4).

19        19.    Protus' equipment has the capability of sending out millions of faxes every

20   day.

21        20.    Upon information and belief, a large percentage of the faxes defendants send

22   are junk faxes advertising the products and/or services of Protus' clients.

23        21.    Upon information and belief, defendants send masses of junk faxes for their

24   clients to fax machine numbers that they maintain, and/or defendants send masses of junk

25   faxes to numbers provided to them by their clients, notwithstanding the fact that defendants

26   know or should know that they are sending junk faxes.

27        22.    However, defendants do not send faxes to certain states, including, upon

28   information and belief, Colorado and Tennessee, because, upon information and belief,

1   defendants are concerned about the prospect of being sued for junk faxes in those states.

2   This fact indicates defendants' high degree of involvement in the junk fax-sending scheme.

3       23.   Knowing that federal law, and many United States' state laws, prohibit the

4   transmission of junk faxes, defendants have further devised an elaborate scheme by which

5   they attempt to insulate themselves from legal liability for many of their violations of laws

6   prohibiting the sending of junk faxes.

7       24.   First, potential clients approach defendants regarding their fax sending

8   services.  Often, these potential clients do not have access to fax numbers to which to send

9   their advertisements.

10      25.   Upon information and belief, defendants often provide to their clients these

11  fax numbers, including many numbers in California and other states, from a database of

12  millions of fax numbers they maintain.  In the alternative, defendants routinely refer many

13  of their clients to certain "list providers," with whom they have relationships, which "list

14  providers" sell defendants' prospective clients' lists of numbers of fax machines.

15      26.   Defendants' provision of fax machine numbers through these "list providers"

16  is no more than a subterfuge for their direct involvement with the sending of junk faxes.

17      27.   Although defendants know when faxes are being sent to numbers from the

18  "list providers," and they know that these faxes are junk faxes, they continue to send these

19  faxes.

20      28.   After Protus' clients get the fax numbers, they program Protus' equipment to

21  send the faxes to these numbers, including many numbers in California, with the assistance

22  of defendants.  In the alternative, defendants send the faxes themselves.

23              THE CONTENT OF THE JUNK FAXES

24      29.   Upon information and belief, few, if any, of the junk faxes contain the

25  number of the actual fax machine from which the junk fax has been sent or an

26  identification of any defendants.  This further indicates defendants' involvement, in that

27  most lawful faxes contain this information.

28      30.   In an effort to minimize their chances of being identified and held liable,

6

1   defendants omit their identification information on the junk faxes.

2      31.   Indeed, defendants even block their caller identification information when the

3   junk faxes are sent and/or send faxes in a fashion so that their caller identification is

4   blocked.

5      32.   This exercise of control over the content of the junk faxes and over the

6   method of sending the junk faxes further indicates defendants' high degree of involvement

7   with the sending of the junk faxes.

8   DEFENDANTS' PROVISION OF "REMOVAL" NUMBERS FOR EACH FAX

9      33.   Defendants also edit the content of the faxes by providing to their clients

10  toll-free "removal," or opt-out, numbers for placement in the junk faxes.  These numbers

11  allow fax recipients to call to request that they get no further unsolicited faxes.

12     34.   Defendants provide these numbers to encourage persons to call to have their

13  numbers removed from the databases to which defendants send faxes.

14     35.   Knowing that they are more likely to incur liability for doing so, defendants

15  will not send faxes for their clients to the "removed" numbers.  This fact further indicates

16  defendants' involvement in the junk-fax sending scheme.

17  THE INDIVIDUAL DEFENDANTS' ACTIVE PARTICIPATION IN THE JUNK FAX

18                         SENDING SCHEME

19     36.   Each one of the individual defendants has, or had during the time he was

20  employed by Protus, a high degree of involvement with all functions of Protus.

21     37.   Each one of the individual defendants oversees, or oversaw during the time

22  that he was employed by Protus, all functions of Protus.

23     38.   Each one of the individual defendants has, or had during the time he was

24  employed by Protus, a high degree of involvement with the transmission of faxes by

25  Protus' equipment.

26     39.   Each one of the individual defendants oversees, or oversaw during the time

27  that he was employed by Protus, Protus' fax transmission operations.

28     40.   Each one of the individual defendants has, or had during the time he was

COMPLAINT FOR VIOLATION OF T.C.P.A., ET AL.          Jara Declaration  -  Exh A
                                                      Page 10

1   employed by Protus, a high degree of involvement with the sending of junk faxes.

2   Each one of the individual defendants knows, or knew during the time he was employed by

3   Protus, that Protus' machines sent many junk faxes. However, these individual defendants

4   failed to stop the transmission of junk faxes despite having the ability and authority to do

5   so.

6   DEFENDANTS' LEGAL TROUBLES AND AVOIDANCE OF INJUNCTION TO DATE

7       41.   Since their inception, defendants have been well aware of federal and state

8   laws, including the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, that

9   prohibit the sending of junk faxes.

10      42.   For several years, defendants have had specific notice that Protus' machines

11  have been sending out faxes that violate the TCPA. However, defendants take virtually no

12  steps to stop transmissions of these illegal faxes by their machines.

13                          FIRST CLAIM FOR RELIEF

14  (Violation of Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 Against All

15                                  Defendants)

16      43.   J2 realleges and incorporates herein paragraphs 1 through 42, inclusive.

17      44.   Beginning before or about 2000, defendants engaged in a campaign to market

18  and sell products and/or services in Los Angeles County and in other counties in the State

19  of California and most other states in the United States.

20      45.   Specifically, defendants sent faxes containing advertisements of the

21  commercial availability or quality of property, goods, and/or services, without the

22  recipients' prior express invitation or permission, to fax machines all over the country,

23  including in Los Angeles County.

24      46.   Defendants have sent, and continue to send, upon information and belief,

25  millions of such faxes to j2 in Los Angeles County and across the country. Upon

26  information and belief, defendants have sent large numbers, if not millions, of the above-

27  referenced types of faxes during every month since 2002.

28      47.   The federal TCPA provides that "[i]t shall be unlawful for any person within

1   the United States or any person outside the United States if the recipient is within the

2   United States to use any telephone fax machine, computer, or other device to send an

3   unsolicited advertisement to a telephone fax machine." 47 U.S.C. § 227(b)(1)(C).  As used

4   in 47 U.S.C. § 227, "[t]he term 'unsolicited advertisement' means any material advertising

5   the commercial availability or quality of any property, goods, or services which is

6   transmitted to any person without that person's prior express invitation or permission."  47

7   U.S.C. § 227(a)(4).

8        48.    The TCPA further provides a private right of action, allowing one to bring an

9   action based on a violation of the TCPA subsection prohibiting the transmission of the

10  types of faxes that are the subject of this litigation.  The TCPA provides that one may seek

11  an injunction and "actual monetary loss from such a violation, or to receive $500 in

12  damages for each such violation, whichever is greater."

13       49.    The TCPA also provides for treble damages.  "If the court finds that the

14  defendant willfully or knowingly violated this subsection . . . the court may, in its

15  discretion, increase the amount of the award to an amount equal to not more than three

16  times [the $500 damages amount]." 47 U.S.C. §227(b)(1)(3).

17       50.    J2 is informed and believes that, with respect to each violation, each

18  defendant had actual notice of participation, or a high degree of involvement, in a plan to

19  violate the TCPA by, as further specified above, knowing that the transmitted faxes were

20  unlawful advertisements, by participating in preparing their content, by providing or

21  obtaining the fax telephone number of j2 or other recipients, by knowing that j2 or other

22  recipients had not authorized the faxes' transmission by prior express invitation or

23  permission, and/or by failing to stop the sending of the junk faxes after receiving actual

24  notice of their transmission.

25       51.    The above-referenced actions and violations by the defendants of 47 U.S.C.

26  §227 were willful and/or knowing and, as a result, j2 is entitled to treble damages for each

27  of the unsolicited fax advertisements sent by defendants to j2 and to its customers.

28  Specifically, j2 claims damages of $1500 for the sending by defendants of each and every

COMPLAINT FOR VIOLATION OF T.C.P.A., ET AL.

1   fax sent by defendants to it between January 31, 2002 and the date of trial.

2       52.   J2 is informed and believes, and on that basis alleges, that the acts and

3   practices described above are continuing.  On this basis, j2 seeks to enjoin defendants from

4   continuing to engage in the foregoing practices and prays for the issuance of a preliminary

5   and permanent injunction for such purpose.

6       53.   Further, by prosecution of this action, j2 expects to enforce an important right

7   affecting the public interest and thereby confer a significant benefit on the general public or

8   a large class of persons.  The necessity and financial burden of private enforcement, or of

9   enforcement by one public entity against another public entity, are such as to make the

10  award appropriate, and the attorneys' fees should not in the interest of justice be paid out of

11  the recovery, if any.  For those reasons, j2 will request an award of attorneys' fees under

12  C.C.P. §1021.5 and/or based on the fact that j2 will have conferred a substantial benefit on

13  a large number of people.

14                    SECOND CLAIM FOR RELIEF

15  (Violation of Federal Telephone Consumer Protection Act, 47 C.F.R. § 68.318(d) Against

16                         All Defendants)

17      54.   J2 realleges and incorporates herein paragraphs 1 through 53, inclusive.

18      55.   The Federal Communications Commission implemented federal regulations

19  pursuant to Congressional authority granted under the TCPA  Specifically, the FCC

20  implemented 47 C.F.R. §68.318(d) regarding identification requirements.  This regulation

21  provides that

22      It shall be unlawful for any person within the United States to use a computer or
        other electronic device to send any message via a telephone facsimile machine
23      unless such person clearly marks, in a margin at the top or bottom of each
        transmitted page of the message or on the first page of the transmission, the date and
24      time it is sent and an identification of the business, other entity, or individual
        sending the message and the telephone number of the sending machine or of such
25      business, other entity, or individual. If a facsimile broadcaster demonstrates a high
        degree of involvement in the sender's facsimile messages, such as supplying the
26      numbers to which a message is sent, that broadcaster's name, under which it is
        registered to conduct business with the State Corporation Commission (or
27      comparable regulatory authority), must be identified on the facsimile, along with the

28

sender's name.

56.    Few, if any, of the faxes that are the subject of this litigation included an accurate "identification of the business, other entity, or individual sending the message."

57.    None of the faxes that are the subject of this litigation included "the telephone number of the sending machine or of such business, other entity, or individual."

58.    None of the faxes that are the subject of this litigation included an identification of the "broadcaster's name, under which it is registered to conduct business with the State Corporation Commission."

59.    Defendants willfully and/or knowingly failed and refused to comply with these requirements.

60.    J2 seeks damages based on defendants' violation of this section pursuant to 47 U.S.C. §227(b), which allows one to bring an action for $500.00 for each one of the above-referenced violations.  It also authorizes a fax recipient to seek treble damages for the violations based on willful and knowing violations, which damages j2 also seeks.

61.    J2 is informed and believes, and on that basis alleges, that the acts and practices described above are continuing.  On this basis, j2 seeks to enjoin defendants from continuing to engage in the foregoing practices and prays for the issuance of a permanent injunction for such purpose.

62.    Further, by prosecution of this action, j2 expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and the attorneys' fees should not in the interest of justice be paid out of the recovery, if any.  For those reasons, j2 will request an award of attorneys' fees under C.C.P. §1021.5 and/or based on the fact that j2 will have conferred a substantial benefit on a large number of people.

### THIRD CLAIM FOR RELIEF

(Trespass to Chattels Against All Defendants)

63.    J2 realleges and incorporates herein paragraphs 1 through 62 inclusive.

Jara Declaration  -  Exh A
Page 14

64.   As described above, j2 owns equipment that receives and processes calls to its fax numbers.  Neither j2 nor any customer of it has ever given defendants permission to send faxes of any kind to these servers.

65.   In the process of sending the above-referenced faxes, defendants knowingly initiated the sending of electronic signals and/or facilitated the initiation of such signals from their locations directly to j2's telephone numbers where the calls are received at the servers.  Each server has a finite number of lines, and, as a result, defendants prevented j2 and/or its customers from using lines by sending their faxes, causing a substantial deprivation in the ability of j2 and/or its customers to use its servers.  When defendants sent their faxes, they knew that they would use j2's equipment and telephone numbers as set forth herein and/or they were substantially certain that their actions would use j2's equipment and telephone numbers.

66.   These signals cause the server's lines to be tied up, making it difficult for j2 and/or its customers to receive faxes.  By tying up these lines, defendants effectively seized control of j2's equipment and misappropriated it to their own use, thereby shifting the cost of advertising from themselves to j2 and j2's customers.  Further, each of j2's customers has a quota of maximum facsimiled pages he can receive each month without incurring additional charges or losing his service entirely.  By sending faxes to j2 for routing to its customers, defendants knowingly cause these customers substantial monetary damages and/or loss of property rights and/or loss of contract rights by reducing the number of faxes these customers can receive without exceeding j2's quota and/or causing them to incur additional charges for pages received and/or causing them to lose their service.

67.   J2 and its customers were damaged as a proximate result of defendants' trespass to chattels as set forth herein, including by the actions set forth in paragraphs 65 and 66.

68.   In doing the acts herein alleged, defendants acted with oppression and malice, entitling j2 to an award of punitive damages in an amount to be proven at trial.

WHEREFORE, j2 prays for judgment as set forth below.

## FOURTH CLAIM FOR RELIEF

(California Business & Professions Code §§17200, *et seq.* Against All Defendants)

69.    J2 realleges and incorporates herein paragraphs 1 through 68 inclusive.

70.    As specified above, defendants have a number of unfair and/or fraudulent and/or unlawful business practices attendant with their sending of junk faxes.

71.    Defendants have had and, upon information and belief, continue to have an unfair and/or fraudulent and/or unlawful business practice of failing to adequately advise prospective clients of laws prohibiting and/or restricting the sending of junk faxes in conspicuous, unambiguous terms.

72.    Defendants have had and, upon information and belief, continue to have an unfair and/or fraudulent and/or unlawful business practice of referring prospective clients to a fax number list providers, notwithstanding the fact that defendants know and/or should know that the prospective client plans to deliver unlawful junk faxes to the persons on this list.

73.    Defendants have had and, upon information and belief, continue to have an unfair and/or fraudulent and/or unlawful business practice of transmitting unsolicited facsimile advertisements and/or allowing the transmission of unsolicited facsimile advertisements with their equipment.

74.    Defendants have had and, upon information and belief, continue to have an unfair and/or fraudulent and/or unlawful business practice of transmitting unsolicited facsimile advertisements and/or allowing the transmission of unsolicited facsimile advertisements that do not contain any identification of defendants.

75.    Defendants have had and, upon information and belief, continue to have an unfair and/or fraudulent and/or unlawful business practice of transmitting unsolicited facsimile advertisements and/or allowing the transmission of unsolicited facsimile advertisements that do not contain adequate identification of defendants' clients.

76.    Each of the above patterns and practices amount to unfair and/or fraudulent and/or unlawful business practices within the meaning of California Business and

1    Professions Code §17200 *et seq*.

2          77.    J2 is informed and believes, and on that basis alleges, that beginning at a date

3    unknown, and continuing thereafter up to and including the date and filing of this

4    Complaint, defendants engaged in the acts and practices described above.

5          78.    J2 is presently unaware of all of the unfair and/or fraudulent and/or unlawful

6    business practices that defendants engage in or have engaged in -- apart from j2's

7    experience described herein -- but expects to uncover further evidence of such practices

8    through discovery and will seek to amend this complaint at that time.

9          79.    J2 is informed and believes, and on that basis alleges, that as a direct and

10    legal result of defendants' practices, j2 and others have suffered damages and/or losses, all

11    to the detriment of such parties.  Defendants' practices have further made it more difficult

12    for j2 to compete with others offering services similar to those it offers, including, upon

13    information and belief, with defendants themselves.  As a result of defendants' unfair

14    competition, j2 has suffered competitive injury in fact and has lost money or property.

15          80.    J2 is informed and believes, and on that basis alleges, that the acts and

16    practices described above are continuing.  On this basis, j2 seeks to enjoin defendants from

17    continuing to engage in the foregoing practices and prays for the issuance of a permanent

18    injunction for such purpose.

19          81.    The acts and practices referenced above were, and are, unfair to the general

20    public and/or unlawful.  As a direct and proximate result of defendants' unlawful and/or

21    fraudulent and/or unfair business practices, j2 and many others have been damaged.

22          82.    On this basis, j2 seeks an order requiring disgorgement of monies gained by

23    defendants as a result of their unfair and/or fraudulent and/or unlawful fraudulent practices.

24          83.    Further, by prosecution of this action, j2 expects to enforce an important right

25    affecting the public interest and thereby confer a significant benefit on the general public or

26    a large class of persons.  The necessity and financial burden of private enforcement, or of

27    enforcement by one public entity against another public entity, are such as to make the

28    award appropriate, and the attorneys' fees should not in the interest of justice be paid out of

14

1  the recovery, if any.  For those reasons, j2 will request an award of attorneys' fees under

2  C.C.P. §1021.5 and/or based on the fact that j2 will have conferred a substantial benefit on

3  a large number of people.

4  <u>PRAYER</u>

5  WHEREFORE, plaintiff j2 GLOBAL TELECOMMUNICATIONS, INC. prays for

6  judgment against defendants as follows:

7  1.  On the first cause of action, for general and special damages of greater than

8  $75,000.000, in an amount to be proven at trial, and trebled statutory damages;

9  2.  On the second cause of action, for general and special damages of greater

10 than $75,000.000, in an amount to be proven at trial, and trebled statutory damages;

11 3.  On the third cause of action, for general and special damages of greater than

12 $75,000.000, in an amount to be proven at trial, and punitive damages;

13 4.  On the fourth cause of action, for restitution to j2 of any monies wrongfully

14 obtained from j2 by defendants;

15 5.  On the first, second, and fourth causes of action, for a temporary,

16 preliminary, and permanent injunction;

17 6.  On the first, second, and fourth causes of action, for an award of attorneys'

18 fees;

19 7.  For an award of lawful interest on the damages;

20 8.  For the costs of suit herein; and,

21 9.  For such other relief as the court deems just.

22 Dated:  January 31, 2006            REDENBACHER & BROWN, LLP

23                                     John C. Brown

24                                     By:

25                                     JOHN C. BROWN
                                       Attorneys for Plaintiff
26                                     j2 GLOBAL COMMUNICATIONS,
                                       INC.

27

28

COMPLAINT FOR VIOLATION OF T.C.P.A., ET AL.

Jara Declaration  -  Exh A
Page 18

15

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: January 30, 2006

REDENBACHER & BROWN, LLP

By: _John C. Brown_

JOHN C. BROWN
Attorneys for Plaintiff
j2 GLOBAL COMMUNICATIONS,
INC.