1  MARY ANN L. WYMORE (State Bar No. 126516)
   mlw@greensfelder.com
2  ERWIN O. SWITZER (Pro Hac Vice)
   eos@greensfelder.com
3  KEVIN F. HORMUTH (Pro Hac Vice)
   kfh@greensfelder.com
4  J. ANDREW WALKUP (Pro Hac Vice)
   aw@greensfelder.com
5  GREENSFELDER, HEMKER & GALE, P.C.
   10 South Broadway, Suite 2000
6  St. Louis, Missouri 63102-1774
   Telephone: (314) 241-9090
7  Facsimile: (314) 345-5499

8  MICHAEL C. TU (State Bar No. 186793)
   mtu@orrick.com
9  ORRICK, HERRINGTON & SUTCLIFFE LLP
   777 South Figueroa Street, Suite 3200
10 Los Angeles, California 90017
   Telephone: 213-629-2020
11 Facsimile: 213-612-2499

12 Attorneys for Defendant
   Protus IP Solutions, Inc.
13

14                    UNITED STATES DISTRICT COURT
15                   CENTRAL DISTRICT OF CALIFORNIA
16                          WESTERN DIVISION

17 j2 GLOBAL COMMUNICATIONS,        Case No. CV 06-0566-DPP (AJWx)
18 INC.,
                                    **PROTUS IP SOLUTIONS, INC.'S
19           Plaintiff,             OPPOSITION TO J2 GLOBAL
                                    COMMUNICATIONS, INC.'S
20      v.                          MOTION TO MODIFY THE
                                    SCHEDULING ORDER AND AMEND
21 PROTUS IP SOLUTIONS, INC., et    ITS COMPLAINT**
   al.,
22                                  Hearing Date: December 15, 2008
             Defendants.            Hearing Time: 10:00 a.m.
23                                  Courtroom: 3, Spring Street Courthouse
                                    The Hon. Dean D. Pregerson
24
                                    Discovery Cut-Off: June 8, 2009
25                                  Pretrial Conference:   Sept 21, 2009
                                    Trial Beginning Date: Sept 29, 2009
26

27

28

---
PROTUS' OPPOSITION TO J2'S MOTION TO MODIFY THE SCHEDULING ORDER AND AMEND ITS COMPLAINT
CV 06-0566-DPP (AJWx)

## INTRODUCTION

j2 Global Communications, Inc.'s ("j2") Motion to 1) Modify The Scheduling Order For The Limited Purpose Of Amending The Complaint To Allege Liability Under Newly Discovered Grounds; And 2) Amend The Complaint ("Motion") should be denied. j2 has been dilatory in bringing this Motion and its proposed new cause of action. j2 waited to bring its motion more than one year after the deadline for parties to amend their pleadings had expired, approximately seven months before the close of discovery, and less than a year before trial. The only explanation j2 has tendered for this delay was that it did not know it could bring its proposed cause of action until a state court in Missouri issued an Order in the case of MSG Jewelers, Inc., v. C&C Quality Printing, Inc., which only addressed the regulations promulgated under the TCPA – 47 C.F.R. §64.1200 (a)(3)(iv) – but did not address the other basis for liability under j2's newly proposed cause of action – 47 U.S.C. §227 (b)(2)(D).

When examined in light of the facts of the case, such an explanation does not justify such a delay and appears to be disingenuous. j2's own attorney, Max Margulis, filed the MSG Jewelers case prior to the expiration of the scheduling order deadline for j2 to bring this new cause of action, and prepared the summary judgment pleadings that lead to the order in MSG Jewelers more than 5 months before j2 brought this Motion. Moreover, the TCPA language relied on by j2 was amended in 2005, well before j2 filed this lawsuit. And, as j2 itself admits, there was no case law that addressed this issue or would have lead j2 to believe that it was prevented from bringing its proposed cause of action at the outset of the case or well before the expiration of the Court's September 12, 2007 deadline for the parties to amend the pleadings. Indeed, the MSG Jewlers case that lead j2 to conclude it could bring this cause of action is not binding on this Court, only addresses one of the two basis for liability in j2's new cause of action, and leaves the validity of j2's new cause of action as an issue of first impression for this Court and the Ninth Circuit.

Finally, there are several legal issues with j2's newly proposed cause of action that would require Protus, j2, and this Court to go through another round of a motion to dismiss and a motion to reconsider certain constitutional issues that were already raised by Protus in its previous motion for partial summary judgment. This would be a significant burden and prejudice to Protus as it is preparing for the close of discovery in seven months and the trial that is less than a year away.

Accordingly, j2 has not meet the good cause standard for amending the scheduling order under Fed. R. Civ. P. 16(b) and the Court should deny j2's Motion.

## ARGUMENT

**I.     j2's FAILS TO MEET THE GOOD CAUSE STANDARD UNDER FED. R. CIV. P. 16(b) FOR AN AMENDMENT TO THE SCHEDULING ORDER.**

Once a district court enters a pretrial scheduling order pursuant to Fed. R. Civ. P. 16 establishing a deadline for amending pleadings, as it has done here, Fed. R. Civ. P. 16(b)'s standards for amendments controls. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992); see also Ormco Corp v. Align Technology, Inc. 2008 WL 4501805 *1, *2 (C.D. Cal. Oct. 3, 2008). Fed. R. Civ. P. 16(b) provides that a scheduling order "shall not be modified except by leave of court and upon a showing of good cause." Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. Johnson, 975 F.2d at 609; Ormco Corp., 2008 WL 4501805 at *2. "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should **not** be granted." Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Johnson, 975 F.2d at 609) (emphasis added). In determining whether good cause exists, courts may also consider: (1) the importance of the amendment, (2) potential prejudice to the opposing party, and (3) the explanation for the failure to timely move for leave to amend. Johnson, 975 F.2d at 609; Ormco Corp., 2008 WL 4501805 at *2.

### A. j2's Motion Should Be Denied Because It Was Not Diligent In Bringing Its Proposed Amendment And Has Not Proffered A Valid Explanation For Its Failure To Timely Move For Leave To Amend.

j2 waited until seven months before the close of discovery and over a year after the Court ordered deadline to amend the pleadings to bring this Motion. Such a delay is unjustifiable. Indeed, j2 has failed to proffer a valid explanation for this delay and the facts of the case clearly show that j2 was not diligent in bringing its proposed amendment and could have brought its amendment prior to the expiration of the Court's deadline to amend the pleadings. The only explanation that j2 offers is that it could not bring its amendment until the issue was partially addressed by a Missouri state court in a non-binding order. Such an argument is unavailing and appears to be disingenuous.

There was nothing preventing j2 from bringing its newly proposed cause of action at the outset of this case or seeking to amend its petition well before the expiration of the deadline in the Court's scheduling order. The latest amendment to this language of the TCPA was in 2005, well before the deadline expired. Further, as j2 admits in its Memorandum, the order in MSG Jewelers v. C&C Quality Printing was the first case to address j2's proposed cause of action. (j2's Memorandum, p. 6, Lines 6-8, ("prior to MSG Jewelers, the issue of a private plaintiff's standing to enforce 47 C.F.R. §64.1200(a)(3)(iv) was never explicitly addressed by any federal court."), p. 7, lines 19-21 ("To date, j2 is unaware of any California or Ninth Circuit published decision that has recognized a claim brought by a private plaintiff for violations of 47 U.S.C. §227(b)(2)(D) and 47 C.F.R. §64.1200(a)(3)(iv).")). Logically, this also means that there was no binding authority that would have lead j2 to believe that it could not bring its cause of action. Further, the order in MSG Jewelers only addresses j2's newly proffered cause of action under 47 C.F.R. §64.1200(a)(3)(iv), but it does not address the other component of j2's new cause of action – 47 U.S.C. §227(b)(2)(D). The cause of action under 47 U.S.C. §227(b)(2)(D) is still a novel argument of first impression in this Court. Indeed, because the MSG Jewelers Order is from a Missouri State Court

and is not binding on this Court, the validity of j2's new cause of action under 47 C.F.R. §64.1200(a)(3)(iv) also is still an issue of first impression for this Court.

Moreover, the MSG Jewelers order certainly did not enlighten j2 suddenly as to its proposed new cause of action as j2 claims. Rather, the facts of the case indicate that j2 and its attorneys likely were well aware of the new cause of action prior to the deadline for j2 to amend its pleadings, or shortly thereafter. Indeed, one of j2's attorney's, Max Margulis, was the attorney of record in MSG Jewelers and the attorney who brought the cause of action in that case and prepared the motion for summary judgment that eventually lead to the court's order on which j2 relies in its Motion. (See Amendment No. 1 to the Marc Normand Consultancy Agreement, attached as Exhibit 1 to the Declaration of J. Andrew Walkup ("Walkup Dec")). Indeed, Mr. Margulis filed the MSG Jewelers case on September 7, 2007 – five days before j2's deadline to amend its pleadings pursuant to the Court's Scheduling Order. Mr. Margulis filed his Summary Judgment Motion, which lead to the MSG Jewlers Order relied on by j2, on May 15, 2008 – 5 months before j2 filed its current motion to amend its pleadings. (See MSG Jewelers docket report, attached as Exhibit 2 to the Walkup Dec.). Therefore, it appears that j2 and its attorney knew of the existence of their proposed cause of action prior to the expiration of the September 12, 2007 deadline to amend the pleadings, or shortly thereafter, yet inexplicitly waited almost a year, until discovery is almost complete and trial is less than a year away, to bring this motion.

Such a delay demonstrates anything but diligence and good faith in bringing this motion to amend. Accordingly, j2's motion to amend must be denied.

**B.     Granting j2's Motion Would Prejudice Protus And j2's Amendment Is Not Important.**

For the reasons set forth below in section II, Protus believes that j2's proposed cause of action has several legal flaws and is not a valid stand alone cause of action. Therefore, Protus will be prejudiced in that it will need to take time away from concluding discovery in the case and preparing for trial, which is less than a year away,

in order to prepare and file a motion to dismiss to address the flaws in this additional cause of action. j2's new cause of action will also change the landscape of several arguments Protus tendered in its Motion for Summary Judgment on certain constitutional issues, *e.g.*, excessive fines and double recovery. This will require Protus and the Court needlessly to expend time and resources to revisit constitutional issues that have already been partially addressed by this Court – all as the close of discovery and the beginning of trial is fast approaching. Further, because j2's proposed cause of action does not appear to be meritorious, it is not important and should be denied.

Accordingly, j2's amendment fails to meet Fed. R. Civ. P. 16(b)'s heightened good cause standard and must be denied.

## II. j2's NEWLY PROPOSED CAUSE OF ACTION IS NOT A VALID STAND ALONE CAUSE OF ACTION BUT IS RATHER AN ELEMENT OF EITHER J2'S EXISTING TCPA CLAIM OR PROTUS' AFFIRMATIVE DEFENSES.

The Opt-Out notice requirement contained in the TCPA and the regulations promulgated thereunder are merely elements of a plaintiff's cause of action under the TCPA and/or a defendant's affirmative defense. Specifically, the notice requirement would appear to be part of the TCPA elements of "established business relationship" and "express invitation or permission."[1] The conclusion that the opt-in notice is an element of the j2's TCPA claim or Protus' affirmative defense can be evidenced from the plain language and structure of the TCPA and the regulations promulgated thereunder. For example, 47 U.S.C. §227(b)(1)(C) does not "require[] that all unsolicited fax advertisements include a notice meeting the requirements of 47 U.S.C. §227(b)(2)(D)" as j2 asserts. (j2 Memorandum, p. 4, lines 4-5) Rather, by the use of

---

[1] The notice requirement is tied to two elements of the TCPA - the "established business relationship" element and the "express invitation or permission" element. Protus and j2 likely will contest in future motions whether Protus or j2 has the burden of proof on these two elements. For the purpose of this motion, who has fact is irrelevant. The only relevant inquiry is whether the notice requirement is part of these TCPA elements or whether it is a stand alone cause of action.

the term "unless," 47 U.S.C. §227 (b)(1)(C) implies that the notice requirement in 47 U.S.C. §227(b)(2)(D) will serve as an element to either the cause of action or an affirmative defense, not a separate cause of action. Specifically, the section states:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States. . . (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited fax advertisement, **unless**—
>
> > (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
> >
> > (ii) the sender obtained the number of the telephone facsimile machine through [three methods]. . .
> >
> > (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D).

47 U.S.C. (b)(1) (C) (emphasis added). Such a conclusion is further supported by at lease one court that held the "TCPA does not prohibit sending an unsolicited advertisement if the facsimile contains a notice that meets certain requirements and the sender either has an established business relationship with the recipient or the sender obtained the facsimile machine number through a 'directory…to which the recipient voluntarily agreed to make available its facsimile number for public distribution.'" Kavu, Inc. v. Omnipak Corp., 246 F.R.D. 642, 645 (W.D. Wash. 2007).

Similarly, the language of 47 C.F.R. §64.1200(a)(3)(iv), when read together with the language and structure of the TCPA, shows that the notice requirement is really an element of the TCPA cause of action and not a stand alone cause of action. 47 C.F.R. §64.1200(a)(3)(iv) states:

> A facsimile advertisement that is sent to recipient that has provided prior express invitation or permission to the sender

must include an opt-out notice that complies with the requirements in paragraph (a)(3)(iii) of this section.

The TCPA defines the term "unsolicited advertisement" that is used in 47 U.S.C.(b)(1)(C), which is set forth above, as meaning "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without the person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. (a)(5). Therefore, the notice requirement goes to the TCPA element of whether the fax was indeed, unsolicited.

Furthermore, to adopt j2's viewpoint that the opt-in notice requirement of the TCPA gives rise to an independent cause of action, would allow j2 and other TCPA plaintiffs to recover double statutory damages, i.e., $500 to $1,500 for the willful sending of an unsolicited fax advertisement and another $500 to $1,500 for the improper notice requirement. Such double recovery is not anticipated under the TCPA's statutory scheme and could result in recovery of $3,000 in statutory damages per fax, an amount so grossly in excess of any conceivable actual damages that it would render the TCPA's damages provision unconstitutional.

## **CONCLUSION**

For all of the foregoing reasons, Protus respectfully requests that the Court deny j2's motion to modify the scheduling order or amend its complaint.

| | | |
|---|---|---|
| 1 | Dated: December 1, 2008 | Respectfully submitted, |
| 2 | | MARY ANN L. WYMORE |
| 3 | | ERWIN O. SWITZER<br>KEVIN F. HORMUTH |
| 4 | | J. ANDREW WALKUP<br>GREENSFELDER, HEMKER & GALE, P.C. |
| 5 | | MICHAEL C. TU |
| 6 | | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 7 | | |
| 8 | | By   /s/ J. Andrew Walkup   .<br>        J. Andrew Walkup |
| 9 | | Attorneys for Defendant Protus IP Solutions, Inc. |

1094811v1