1  MARY ANN L. WYMORE (State Bar No. 126516)
   mlw@greensfelder.com
2  ERWIN O. SWITZER (*Pro Hac Vice*)
   eos@greensfelder.com
3  KEVIN F. HORMUTH (*Pro Hac Vice*)
   kfh@greensfelder.com
4  J. ANDREW WALKUP (*Pro Hac Vice*)
   aw@greensfelder.com
5  GREENSFELDER, HEMKER & GALE, P.C.
   10 South Broadway, Suite 2000
6  St. Louis, Missouri 63102-1774
   Tel: (314) 241-9090/Fax: (314) 345-5499
7
   MICHAEL C. TU (State Bar No. 186793)
8  mtu@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
9  777 South Figueroa Street, Suite 3200
   Los Angeles, California 90017
10 Tel: (213) 629-2020/Fax: (213) 612-2499

11 Attorneys for Defendant/Counter-Claimant Protus IP Solutions, Inc.

12

13 MICHAEL BRUCE ABELSON (State Bar No. 130739)
   mabelson@abelsonherron.com
14 ELIZABETH E. ATLEE (State Bar No. 167262)
   eatlee@abelsonherron.com
15 LESLIE A. PEREIRA (State Bar No. 180222)
   lpereira@abelsonherron.com
16 ABELSON | HERRON LLP
   333 S. Grand Ave., Suite 1550
17 Los Angeles, California 90071
   Tel: (213) 402-1900/Fax: (213) 402-1901

18 Attorneys for Plaintiff/Counter-Defendants j2 Global Communications, Inc.

19
                    UNITED STATES DISTRICT COURT
20                  CENTRAL DISTRICT OF CALIFORNIA

21

22 j2 GLOBAL COMMUNICATIONS,        )  Case No. CV06–0566 DPP (AJWx)
   INC.,                            )
23                                  )
                       Plaintiff,   )  JOINT BRIEF IN SUPPORT OF
24                                  )  THE PARTIES' POSITIONS RE
            v.                      )  PROTECTIVE ORDER ISSUES
25                                  )
   PROTUS IP SOLUTIONS, INC.,       )  Discovery Cut-off: Nov. 9, 2009
26                                  )  Pre-Trial Conference: Feb. 22, 2010
                       Defendant.   )  Trial Date: March 2, 2010
27
28

1

# **TABLE OF CONTENTS**

2

**Page**

3   TABLE OF CONTENTS ................................................................................. i

4   TABLE OF AUTHORITIES............................................................................ ii

5   ISSUE 1 – Paragraph 5.2.3 ............................................................................2

6      j2's Proposed Paragraph 5.2.3 ................................................................2

7      Protus' Proposed Paragraph 5.2.3. .........................................................2

8      j2's Position. ...........................................................................................3

9        (a)   Former Protus Employees............................................................3

10       (b)   Former Counsel of Record for j2..................................................5

11       (c)   Attorneys Prosecuting Lawsuits Against the Other Party ............5

12     Protus' Position.......................................................................................6

13       (a)   Former or Present Employees.......................................................6

14       (b)   Former Attorneys of Record and Attorneys Prosecuting Cases..9

15  ISSUE 2 – Paragraph 5.2.4............................................................................11

16     j2's Proposed Paragraph 5.2.4 ..............................................................11

17     Protus' Proposed Paragraph 5.2.4 .........................................................12

18     j2's Position. .........................................................................................12

19     Protus' Position......................................................................................13

20  ISSUE 3 – Paragraph 5.3.2............................................................................14

21     j2's Proposed Paragraph 5.3.2 ..............................................................14

22     Protus' Proposed Paragraph 5.3.2 .........................................................15

23     j2's Position. .........................................................................................15

24       (a)   Former Protus Employees..........................................................16

25       (b)   Former Counsel of Record for j2................................................16

26       (c)   Attorneys Prosecuting Lawsuits Against the Other Party .........17

27     Protus' Position......................................................................................18

28

1

# **TABLE OF AUTHORITIES**

2

**<u>Cases</u>**                                                                                    **Page(s)**

3  <u>Amer. Prot. Ins. Co. v. MGM Grand Hotel- Las Vegas, Inc.</u>
4     1986 WL 57464 (D. Nev. Mar. 11, 1986)..................................................8

   <u>B-C Housing P'ship, L.P. v. Apollo Ltd. P'ship</u>
5     2002 WL 31628763 (Cal. Ct. App. Nov. 21, 2002)................................7

6  <u>Gray v. First Winthrop Corp.</u>
7     133 F.R.D. 39 (N.D. Cal. 1990) .........................................................3, 15

8  <u>In re Data Gen. Corp. Antitrust Litig.</u>
      1986 U.S. Dist. LEXIS 21923 (N.D. Cal.)...........................................4, 7

9  <u>Jepson, Inc. v. Makita Elec. Works, Ltd.</u>
10    30 F.3d 854 (7th Cir. 1994) ................................................................3, 15

11 <u>MMR/Wallace Power & Indus., Inc. v. Thames Assocs.</u>
      764 F. Supp. 712 (D. Conn. 1991) ...........................................................8

12 <u>Rentclub, Inc. v. Transamerica Rental Fin. Corp</u>
13    811 F. Supp. 651 (M.D. Fla. 19922007) .............................................. 7-8

14 <u>State ex rel. Ford Motor Co. v. Manners</u>
      239 S.W.3d 583 (Mo. S.Ct. 2007).........................................................10

15

16 **<u>Statutes</u>**                                                                                **Page(s)**

17 Personal Information Protection and Electronic Data Act
      2000, Ch. 5, s. 1-6 S.C. 2000 (Can.) ....................................................11

18

19 **<u>Rules</u>**                                                                                    **Page(s)**

20 Fed. R. Civ. P. 26(c)(1) ............................................................................3, 15

20

21

22

23

24

25

26

27

28

1    COME NOW Plaintiff j2 Global Communications, Inc. and Defendant Protus IP
2    Solutions, Inc., through their respective undersigned counsel, and hereby submit their
3    Joint Brief in Support of the Parties' Positions Regarding Protective Order Issues in
4    connection with their respective proposed protective order terms regarding confidential
5    information. Upon resolution by the Court of the following issues remaining in dispute,
6    the Parties will present to the Court the final version of the revised Protective Order for
7    the Court's approval.[1]

8         The remaining issues in dispute pertain to Paragraphs 5.2.3., 5.2.4. and 5.3.2. of the
9    proposed revised protective order, under Paragraph 5, entitled DISCLOSURE OF
10   DESIGNATED CONFIDENTIAL INFORMATION. Substantively, the issues all relate
11   to the categories of individuals to whom may be disclosed information that has been
12   designated by one of the parties as "Confidential" or "Confidential – Attorneys' Eyes
13   Only."

14

15                          **ISSUE I – Paragraph 5.2.3.**

16   5.2.     Access    to    CONFIDENTIAL    INFORMATION    designated    as
17   "Confidential," and any copies thereof, and any information obtained from inspecting
18   such CONFIDENTIAL INFORMATION and notes made therefrom, shall be limited to
19   the following persons:

20        j2's Proposed Paragraph 5.2.3.:

21             5.2.3. Independent personnel retained or consulted by outside counsel of
22   record in the Action to furnish consulting, investigative, technical or other expert services
23   in the Action or to give expert testimony in the Action.

24        Protus' Proposed Paragraph 5.2.3.:

25             5.2.3. Independent personnel retained or consulted by outside counsel of
26   record in the Action to furnish consulting, investigative, technical or other expert services

27   _____

28   [1] Attached hereto as Exhibit A is the parties' [Draft] Joint Revised Stipulated Order Regarding
     Confidential Information, which sets forth all provisions not in dispute.

1   in the Action or to give expert testimony in the Action.  No personnel described in this
2   paragraph may be a former or present employee of, or have any ownership interest in, any
3   opposing party to the Action.  Furthermore, no former counsel of record in the Action nor
4   any attorney prosecuting lawsuits against the other party shall be deemed independent
5   personnel hereunder.

6

7       j2's Position:

8           In order to properly prosecute this action, j2 must be able to show key documents to
9   consultants it has retained to assist it with the litigation, including documents designated
10  "Confidential."   While both parties' proposals recognize this critical point, Protus'
11  proposal – restricting the disclosure and dissemination of information – is a back-door
12  attempt to impermissibly control *who* j2 retains as a consultant.  As presented, Protus'
13  proposal contains language which effectively limits j2's ability to retain (and fully utilize)
14  the following individuals as retained consultants:  (1) former Protus employees; (2) j2's
15  former counsel of record; and (3) an attorney prosecuting any action against Protus.

16          There is no justification for allowing Protus to control j2's litigation strategy in this
17  way, and certainly no good cause for Protus' restrictive discovery limitation.  See Fed. R.
18  Civ. Proc. 26(c)(1); see also Jepson, Inc. v. Makita Elec. Works, Ltd., 30 F. 3d 854, 858
19  (7th Cir. 1994) (the party seeking the protection bears the burden of showing "good cause"
20  for the issuance of the protective order); Gray v. First Winthrop Corp., 133 F.R.D. 39, 40
21  (N.D.Cal. 1990) (same).  Moreover, there are important and legitimate reasons why j2
22  must be permitted to retain these types of individuals as consultants in the litigation, and
23  fully elicit their advice, if it chooses to do so.

24      (a)      Former Protus Employees
25          There is nothing in the law that categorically prohibits a litigant from retaining his
26  opponent's former employee as a litigation consultant.[2]  Indeed, the practice is routine.

27
28  ---
    [2] Protus cites several cases for the proposition that California state and federal courts "scorn" this
    practice. Not so.  The cases cited by Protus all deal with situations where a litigant hired an opponent's

1   While there are situations where a contractual prohibition precludes a former employee
2   from such engagements, no such situation exists here.

3       Despite this, Protus' proposal seeks to improperly limit j2's ability to fully utilize
4   former Protus employees as consultants by severely restricting information that can be
5   disclosed to them.  Were Protus' position adopted, j2 would be precluded from even
6   showing these individuals internal Protus business documents that Protus has designated
7   confidential.  Given the express purpose of the protective order, there is little reason for
8   this limitation.  The parties agreed to the protective order as a means of protecting their
9   confidential business information from the other party (a competitor) and other third
10  parties (also potential competitors).  Presumably, Protus' former employees have already
11  seen (or had access to) the information that Protus is now insisting they cannot see.  That
12  makes no sense.

13      Moreover, retained consultants – whether former Protus employees or not – will be
14  required to sign Attachment A to the Protective Order *before* Confidential information is
15  shared with them.[3]  Thus, the person to whom confidential information is disclosed would
16  need to swear (in writing) that:  (a)  they will abide by the terms of the protective order;
17  and (b) they will not disclose any information to anyone outside the litigation; and (c) they
18  will not use disclosed information for any other purpose.  Such safeguards should suffice
19  to protect Protus' interests.  Indeed, Protus' presentation fails to identify any specific
20  threat posed by the provisions j2 advances here.  Moreover, the very same rules which
21  apply to Protus will be applied to j2.  In this regard, the proposal is both even-handed and
22  balanced.

23

24  former employee(s) in order to improperly obtain the opponent's privileged information or legal
    strategies.  In each case, the former employee had access to the company's "legal thinking" – generally
    through discussions with the company's attorneys or involvement with the company's litigation.  See,
25  e.g., In re Data Gen. Corp. Antitrust Litig., 1986 U.S. Dist. LEXIS 21923 (N.D. Cal.) (defendant not
    permitted to retain plaintiff's former employees as consultants because employees had privileged
26  information through their dealings with the plaintiff's attorneys).  This is the practice that was "scorned"
    by the courts.  And that's not the situation here.
27

28  [3] See Exhibit A, [**Draft**] Joint Revised Stipulated Order Regarding Confidential Information, at
    Attachment A.

1        (b)      Former Counsel of Record for j2

2      Protus' proposal also seeks to preclude j2 from showing information designated as

3 "Confidential" to j2's former counsel of record. **This caveat is completely unacceptable**.

4 Indeed, it is clearly oriented toward hamstringing j2's new counsel of record in their

5 conduct of this action going forward.

6      The fact is, j2's former counsel has already seen most, if not all, of the documents

7 marked "Confidential." In this sense, the (proverbial) "cat" is already out of the bag.

8      More importantly, j2 must be permitted to show "Confidential" documents to j2's

9 former counsel to ensure the continuity of representation and prevent Protus' attorneys

10 from "gaming" j2's new counsel. For example, j2 must have the ability to ask its

11 predecessors about prior discovery agreements, and procedures bearing on the confidential

12 information. To require extensive court orders for such consultation is hopelessly

13 impractical.[4] The reality is j2's former counsel prosecuted this action on behalf of j2 for

14 three years. Most of the parties' written discovery and document productions were done

15 during this time. Former counsel know and understand what was produced and why.

16 Certainly numerous formal and informal agreements were reached by the parties during

17 this period. It will be impossible for j2's new counsel of record to fully represent its client

18 if it does not have the ability to consult with and discuss certain aspects of the litigation

19 with j2's prior counsel. To hold otherwise would materially interfere with j2's

20 prosecution and defense of this action.

21        (c)      Attorneys Prosecuting Lawsuits Against the Other Party

22      Protus' proposal further seeks to limit j2's effectiveness by restricting its ability to

23 retain junk fax experts as consultants. In particular, Protus' proposal would preclude j2

24 from retaining (as a consultant) an attorney who is prosecuting another action against

25 Protus.

26 [4] Protus' suggestion that j2 can request Protus' permission – or Court permission – every time that it
27 needs to consult with j2's prior counsel regarding a "Confidential" document, should be rejected. Not
only does this present a costly and inefficient procedure (with likely briefing as to every occurrence), but

28

1    Again, there is no good cause for such a restriction. While Protus may not like the
2    fact that attorneys typically work together on junk fax cases, the reality is that they do.
3    These other attorneys may, for example, have learned a fax company's particular
4    "headers" and, therefore, be able to assist j2 in identifying the headers on the faxes at issue
5    in this lawsuit. There is nothing wrong with this. In fact, such sharing is downright
6    efficient.

7    The only legitimate objection to allowing j2 to disclose confidential information to
8    attorney/consultants would arise if no restrictions existed on their use of the confidential
9    information. Fortunately, this problem does not exist here. As structured, confidential
10   information cannot be shared with an attorney/consultant until after they have signed
11   Attachment A to the protective order. Once they do that, there is no reason the
12   information cannot be disclosed to these individuals. Mishandling the information risks
13   contempt.

14

15   Protus' Position:

16   Protus' proposed Paragraph 5.2.3. seeks to limit the disclosure of confidential
17   information by prohibiting (a) former or present employees of an opposing party and (b)
18   former counsel of record in this case or any attorney prosecuting lawsuits against the other
19   party, from serving as a consultant or expert in this case.[5]

20   (a)    Former or Present Employees

21   Allowing former or present employees of an opposing party to be retained as
22   experts or consultants is problematic and fraught with ethical concerns.[6] Notwithstanding
23   j2's contention that "nothing in the law categorically prohibits a litigant from retaining an
24   opponent's former employee as a litigation consultant," several California federal and state

25   _____

26   it would unfairly prejudice j2 by forcing it to reveal its legal strategies throughout the litigation by constantly alerting Protus to the documents j2 locates and considers significant.
27   [5] The parties do not dispute that "independent personnel" should be defined as those persons "retained or consulted by outside counsel of record in this case to furnish consulting, investigative, technical or other expert services or testimony."
28   [6] Every current and former Protus employee is a party to a confidentiality agreement.

1    courts have scorned this practice.  For example, in <u>In re Data Gen. Corp. Antitrust Litig.</u>,
2    MDL Doc. No. 369 (MHP), 1986 U.S. Dist. LEXIS 21923 (N. D. Cal. Aug. 1, 1986),
3    defendant sought to retain plaintiff's former employees as experts.   The court held that:

> The knowledge these witnesses have of matters protected by the
> attorney-client privilege, trade secret agreements and possibly
> work-product privilege is so intermingled with knowledge that
> may be unprotected that the court cannot be assured [defendant]
> or the former employees will be able to segregate out only those
> matters that may be disclosed.  **The danger of disclosure of**
> **protected information is substantial.** There is no sure way of
> guarding against disclosure if the employees are permitted to
> work for defendant on this litigation . . . **No matter how well-**
> **intentioned counsel and the witnesses may be, the potential**
> **for abuse and mischief is great.  The court declines to put its**
> **stamp of approval on the arrangement proposed.**

16   1986 U.S. Dist. LEXIS 21923, at *9-10 (emphasis added).

17         By way of further example, in <u>B-C Housing P'ship, L.P. v. Apollo Ltd. P'ship</u>, Nos.
18   A096780, et al., 2002 WL 31628763 (Cal. Ct. App. Nov. 21, 2002), the court disqualified
19   plaintiff's attorneys and two experts plaintiff retained to testify in that action.   The
20   disqualification order was premised on the experts' asserted access to defendant's
21   confidential information.  Specifically, plaintiff made a former employee into its own
22   expert witness and offered to pay him a fee for actively assisting in the prosecution of the
23   case.  The court recognized that:

> [This] type of relationship poses a much greater risk that the
> former employer's confidential information will be
> compromised than an unsolicited 'cold call' seeking a former
> employee's voluntary cooperation. By retaining and paying the
> expert, counsel enlists him as part of the litigation team, and

1                           gives the expert a powerful incentive to place all of his

2                           knowledge at his clients' disposal.

3 Id. at *4; see also Rentclub, Inc. v. Transamerica Rental Fin. Corp., 811 F. Supp. 651

4 (M.D. Fla. 1992) (stating that an appearance of impropriety arises not only from an

5 inference that an attorney induced another to breach of confidence, but also from an

6 innuendo that a so-called trial consultant is actually a fact witness); MMR/Wallace Power

7 & Indus., Inc. v. Thames Assocs., 764 F. Supp. 712 (D. Conn. 1991) (disqualifying

8 defense attorney and his firm who retained a former employee of the plaintiff as a paid

9 consultant); American Prot. Ins. Co. v. MGM Grand Hotel-Las Vegas, Inc., Nos. CV-LV-

10 82-26-HDM, et al., 1986 WL 57464 (D. Nev. Mar. 11, 1986) (condemning an attorney's

11 retention of an opposing party's former employee as a paid trial consultant).

12       The "potential for abuse and mischief," "risk," and "appearance of impropriety"

13 referenced in the above cases already has surfaced in this case in connection with j2's

14 retention of Protus' former employee, Mark Normand. This is but one of the subjects of

15 Protus' pending Motion for an Order to Show Cause, which has been extensively briefed.

16 (See CF/ECM Nos. 331 and 332). In light of the case law against the practice of retaining

17 current and former employees of an opposing party as an expert or consultant, j2's

18 resistance to a protective order which espouses these principals should be critically

19 examined as an attempt to ameliorate existing protective order violations. The law and the

20 inherent ethical concerns in retaining current or former employees of an opposing party as

21 an expert or consultant support Protus' proposed exclusion. Therefore, this Court should

22 adopt Protus' proposed Paragraph 5.2.3.

23       These risks to Protus are unnecessary. The parties have agreed to proposed

24 Paragraph 5.6., which provides: "Nothing herein shall prohibit a party, or its counsel,

25 from disclosing a document that contains CONFIDENTIAL INFORMATION, whether

26 designated 'Confidential' or 'Confidential Attorneys' Eyes Only,' to the person whom the

27 document identifies as an author, addressee, or recipient of such document." (See Exhibit

28

1  A, **[Draft]** Joint Revised Stipulated Order Regarding Confidential Information, at
2  Paragraph 5.6.)

3        (b)      Former Attorneys of Record and Attorneys Prosecuting Cases

4        Protus' proposed Paragraph 5.2.3. (and Paragraph 5.3.2.)[7] also seeks to exclude
5  former counsel of record in this case, and any other attorney prosecuting lawsuits against
6  the other party, from serving as experts or consultants in this case. Notably, this approach
7  does not prevent j2 from conferring with such attorneys - it simply prevents the sharing of
8  Protus' confidential information when doing so. Nor does this approach prevent j2 from
9  retaining additional counsel *of record*. Should there be circumstances justifying the need
10 to share information beyond the constraints of Protus' proposed Paragraph 5.2.3. (and
11 Paragraph 5.3.2.), the parties already have agreed to Paragraphs 5.2.6. and 5.3.5., which
12 allows access to confidential information with the prior written consent of the designating
13 party or upon prior order of the Court.

14       The wisdom of excluding former counsel of record and other attorneys adverse to a
15 party without prior written consent or court order is best supported by Protus' Motion and
16 Memorandum in Support of an Order to Show Cause, Protus' Supplemental Memorandum
17 in Support of an Order to Show Cause, and Protus' Response to j2's Motion to Withdraw
18 John C. Brown as Co-Counsel of Record, all of which Protus adopts and incorporates fully
19 herein be reference. (See CM/ECF Nos. 331, 332, 580, and 540, respectively.) Repeating
20 all of Protus' concerns here would serve no useful purpose, but serious issues remain
21 pending related to how j2's former counsel of record have handled and continue to handle
22 Protus' confidential information, including former counsel of record's continuing
23 representation of j2 in collateral lawsuits brought against Protus' customers after Protus
24 produced its customer files in this case on an "Attorneys' Eyes Only" basis.

25

26 [7] Protus' proposed Paragraph 5.2.3. relates to information designated as "Confidential." Protus'
   Paragraph 5.3.2. relates to information designated as "Confidential – Attorneys' Eyes Only." The
27 dispute related to the exclusion of former counsel of record and adverse attorneys is the same for both
   paragraphs. Therefore, in the interests of efficiency, Protus will parenthetically refer to Paragraph 5.3.2.
28 in this section rather than re-state it in connection with Issue 3 pertaining to Paragraph 5.3.2. below.

1    Additionally, the Court should note that when j2 moved to withdraw John C. Brown

2  ("Brown") as its co-counsel of record, it claimed that its decision to withdraw Brown was

3  in response to the alleged serious violations of the current Protective Order (CM/ECF No.

4  48) as detailed in Protus' still-pending Motion and Memorandum for an Order To Show

5  Cause (CM/ECF Nos. 331 and 332.).[8]  In fact, j2 informed the Court that "it is in j2's best

6  interests, and in the interests of justice, that Brown withdraw."  j2 further claimed that

7  Brown's withdrawal "will alleviate any remaining concerns regarding j2's intention to

8  fully comply with the terms of the Protective Order."  (See Motion to Withdraw John C.

9  Brown as Counsel of Record for j2 Global Communications, Inc., CM/ECF No. 493.)  j2's

10  position when it sought to remove Brown is entirely inconsistent with its current position

11  that it should be allowed to share confidential and attorneys' eyes only information with

12  former counsel of record.[9]

13    The exclusion of attorneys prosecuting lawsuits against the other party also is

14  intended to limit the sharing of confidential information.  This case should not be used as a

15  depository of confidential information for adverse attorneys to access freely.   "The

16  discovery process is primarily designed to facilitate an orderly and efficient resolution of

17  *individual lawsuits, not to provide a national database*."  State ex rel. Ford Motor Co. v.

18  Manners, 239 S.W.3d 583, 589 (Mo.S.Ct. 2007) (emphasis added).

19    j2 essentially advocates a national database approach by not agreeing to carve out

20  adverse attorneys from the definition of "independent personnel," and Protus' concern

21  about creating a national database is not hypothetical, but very real.  j2 already has

22  engaged in the practice of sharing information about Protus with a network of TCPA

23  attorneys and well as **www.junkfax.org**, which, among other things, provides contact

24  _____

25  [8] As expressed by j2's Director of Legal Affairs, Leila Brown, "I am hopeful that Brown's withdrawal from this action will, at a minimum, demonstrate to Protus and the Court that j2 takes their concerns regarding any alleged violation of the Protective Order very seriously."  (Declaration of Leila Brown in

26  Support of Withdrawal Motion, ¶ 5, CM/ECF No. 495.)

27  [9] As set forth in Protus' Supplemental Memorandum in Support of an Order to Show Cause (CM/ECF No. 580, Brown continues to possess Protus' confidential information in violation of the existing protective order. j2's attempt to include former counsel of record as "independent personnel" can only

28  be construed as an attempt to skirt that violation.

1  information for this network. (See CM/ECF No. 247, Declaration of John C. Brown dated

2  November 6, 2007, ¶¶ 27, 37, and 40).

3  Additionally, prohibiting sharing will allow for easier tracking of the sources

4  receiving confidential information and attorneys' eyes only information and will result in

5  no prejudice. If an attorney prosecuting a lawsuit against either of the parties seeks to

6  obtain confidential information produced in this case, he or she simply can request it in the

7  other action, affording the parties the opportunity to make an independent determinations

8  of relevancy, to protect personal privacy implications (e.g., PIPEDA)[10], and to designate

9  and produce the requested information pursuant to the terms of a protective order in the

10  other action.

11  Finally, as mentioned above, Protus' proposed limitation on adverse attorneys does

12  not prevent j2 from conferring with such attorneys—it simply prevents the sharing of

13  Protus' confidential information when doing so. Should there be circumstances justifying

14  the need to share information beyond the constraints of Protus' proposed Paragraph 5.2.3.

15  and (Paragraph 5.3.2.), the parties already have agreed to Paragraphs 5.2.6. and 5.3.5.,

16  which allows access to confidential information with the prior written consent of the

17  designating party or upon prior order of the Court. Therefore, this Court should adopt

18  Protus' proposed Paragraph 5.2.3. (and Paragraph 5.3.2.).

19

20  **ISSUE 2 – Paragraph 5.2.4.**

21  j2's Proposed Paragraph 5.2.4.:

22  5.2.4. Witnesses, but only to the extent necessary to elicit information

23  relevant to the Action. All such witnesses shall comply with the requirements of

24  Paragraph 5.5.

25

26

27

28  [10] Personal Information Protection and Electronic Documents Act, 2000, Ch. 5, s. 1-6 S.C. 2000 (Can.).

1    Protus' Proposed Paragraph 5.2.4.:

2           5.2.4. Witnesses at deposition and/or at trial, but only to the extent
3    necessary to elicit information relevant to the Action. All such witnesses shall comply
4    with the requirements of Paragraph 5.5.

5

6    j2's Position:

7           In order to properly and fully prosecute this action, j2 must have the ability to show
8    key documents in the litigation to relevant witnesses (expected to consist primarily of
9    former Protus employees), even where those documents have been designated
10   "Confidential" by Protus. Here, Protus' proposal would only allow j2 to show such
11   witnesses "Confidential" information at deposition or trial. In practice, such limitations
12   are too restrictive, and would unfairly limit j2's ability to fully investigate its claims and
13   efficiently prepare its case for trial.[11]

14          To date, j2 has interviewed many former Protus employees, and intends to interview
15   many more. Such witnesses clearly have information relevant to this action. They have
16   first-hand information about Protus and its business practices over the past 6+ years. As
17   such, they are expected to provide critical information regarding Protus' "actual
18   knowledge" of its customers' junk faxing, as well as information regarding Protus' "high
19   degree of involvement" in sending junk faxes. In order to have a full and meaningful
20   dialogue with such former Protus employees, j2 must be able to show them confidential
21   Protus documentation which bears on what Protus has represented are (or were) the
22   company's practices.

23

24

25   [11] Protus claims that its proposal is not too restrictive because the current draft of the protective order
26   permits any witness to be shown documents marked "Confidential" or "AEO" as long as the witness is
     an "author, addressee, or recipient" of the document. The obvious problem with Protus' argument is that
27   it is impossible to know – without showing the document – whether an individual was a recipient of the
     document. More fundamentally, there are situations where j2 will need to question a witness about a
28   document that the witness may not have authored or received. j2's legitimate discovery should not be
     hampered in this way.

1    Permitting j2 to do this only with respect to witnesses at deposition or trial, will
2    effectively force j2 to depose every single witness it wants to interview. Such a process
3    will be grossly inefficient given the costs involved in conducting a deposition.

4    Moreover, Protus' insistence that its own former employees not be shown internal
5    Protus documents marked "Confidential" is curious. At issue here are (former) Protus
6    personnel who had access to confidential information during their employment. They are
7    not being shown something "new." Instead, they are being shown something "old." This,
8    of course, highlights the problem with Protus' position: Inasmuch as the purpose of the
9    protective order is to protect the parties' confidential business information from
10   competitors and other third parties, precluding disclosure to former employees does not
11   protect Protus' interests. Rather, it impairs j2's litigation strategy. Regardless of Protus'
12   motivations, however, there certainly is no "good cause" for refusing to allow j2 to show
13   key documents to relevant witnesses in an effort to develop evidence supporting its claims.

14   Finally – and to be clear – j2 is only seeking to show "Confidential" information to
15   relevant witnesses who have executed the protective order. In doing so, a prelude to
16   disclosure will be that the individual has sworn that they are familiar with the terms of the
17   protective order and will comply with its terms, including the explicit proviso prohibiting
18   disclosure outside of this litigation.

19

20   Protus' Position:

21   Protus' proposed Paragraph 5.2.4. states that the parties should only be allowed to
22   reveal confidential information to witnesses during a deposition or at trial, such that
23   counsel for the parties can appropriately manage the use and disclosure of confidential
24   information. This is not too restrictive, as j2 suggests. As noted above in connection with
25   Issue 1, the parties have agreed to proposed Paragraph 5.6., which provides: "Nothing
26   herein shall prohibit a party, or its counsel, from disclosing a document that contains
27   CONFIDENTIAL INFORMATION, whether designated 'Confidential' or 'Confidential
28   Attorneys' Eyes Only,' to the person whom the document identifies as an author,

1   addressee, or recipient of such document." Therefore, it is entirely reasonable that parties

2   be allowed to discuss confidential information outside of the deposition and trial context

3   with the authors, addressees, and recipients of confidential information, but otherwise

4   restrict the disclosure of confidential information to any other perceived "witness."

5         j2's proposed Paragraph 5.2.4., however, provides no means to protect confidential

6   information from a wide cast of potential witnesses. j2's proposed Paragraph 5.2.4.

7   advocates that any potential witness, however broadly that may be construed, should be

8   granted unfettered access to confidential information - anytime, anywhere - regardless of

9   whether such "witness" is the author, addressee, or recipient of such confidential

10  information. j2's sweeping approach simply goes too far and would render the entire

11  purpose of a protective order meaningless. For example, under j2's approach, j2 would be

12  allowed to share Protus' confidential information with Steve Kirsch[12], who maintains

13  **www.junkfax.org**, as long as j2 deems him to be a potential witness. The risk inherent in

14  condoning unbridled use and disclosure of confidential information with any "witness" is

15  readily apparent. Therefore, this Court should adopt Protus' proposed Paragraph 5.2.4.

16

17                      **ISSUE 3 – Paragraph 5.3.2.**

18        5.3     Access    to    CONFIDENTIAL    INFORMATION    designated    as

19  "Confidential: Attorneys' Eyes Only," and any copies thereof, and any information

20  obtained from inspecting such CONFIDENTIAL INFORMATION and notes made

21  therefrom, shall be limited to the following persons:

22

23        j2's Proposed Paragraph 5.3.2.:

24             5.3.2. Independent personnel retained or consulted by outside counsel of

25  record in the Action to furnish consulting, investigative, technical or other expert services

26  in the Action or to give expert testimony in the Action.

27

---

28  [12] The subject of sharing information with Mr. Kirsch is further addressed in Protus' Memorandum in
Support of its pending Motion for an Order To Show Cause. (CM/ECF No. 332, p. 6.)

Protus' Proposed Paragraph 5.3.2.:

5.3.2. Independent personnel retained or consulted by outside counsel of record in the Action to furnish consulting, investigative, technical or other expert services in the Action or to give expert testimony in the Action. No personnel described in this paragraph may be a former or present employee of, or have any ownership interest in, any of the parties to the Action. Furthermore, no former counsel of record in the Action nor any attorney prosecuting lawsuits against the other party shall be deemed independent personnel hereunder.

j2's Position:

As a starting point, it is important to note that the faxes at issue in this litigation have been designated "Confidential – Attorneys' Eyes Only" ("AEO"). In order to properly prosecute this action, j2 must be able to show the relevant faxes to consultants it has retained to assist it with the litigation. While both parties' proposals recognize this critical point, Protus' proposal – restricting the disclosure and dissemination of information – is a back-door attempt to impermissibly control *who* j2 retains as a consultant. As presented, Protus' proposal contains language which effectively limits j2's ability to retain (and fully utilize) the following individuals as retained consultants: (1) former Protus employees; (2) j2's former counsel of record; and (3) an attorney prosecuting any action against Protus.

There is no justification for allowing Protus to control j2's litigation strategy in this way, and certainly no good cause for Protus' restrictive discovery limitation. See Fed. R. Civ. Proc. 26(c)(1); see also Jepson, Inc. v. Makita Elec. Works, Ltd., 30 F. 3d 854, 858 (7th Cir. 1994) (the party seeking the protection bears the burden of showing "good cause" for the issuance of the protective order); Gray v. First Winthrop Corp., 133 F.R.D. 39, 40 (N.D.Cal. 1990) (same). Moreover, there are important and legitimate reasons why j2 must be permitted to retain these types of individuals as consultants in the litigation, and fully elicit their advice, if it chooses to do so.

(a)      Former Protus Employees

There is nothing in the law that categorically prohibits a litigant from retaining his opponent's former employee as a litigation consultant. Indeed, the practice is routine. While there are situations where a contractual prohibition precludes a former employee from such engagements, no such situation exists here.

Despite this, Protus' proposal seeks to improperly limit j2's ability to fully utilize former Protus employees as consultants by severely restricting information that can be disclosed to them. Were Protus' position adopted, j2 would be precluded from even showing these individuals the faxes at issue in the litigation. Given the express purpose of the protective order, there is little reason for this limitation. The parties agreed to the protective order as a means of protecting their confidential business information from the other party (a competitor) and other third parties (also potential competitors). Presumably, Protus' former employees have already seen (or had access to) the information that Protus is now insisting they cannot see. That makes no sense.

Moreover, retained consultants – whether former Protus employees or not – will be required to sign Attachment A to the Protective Order *before* any "Confidential – Attorneys' Eyes Only" ("AEO") information is shared with them. Thus, the person to whom AEO information is disclosed would need to swear (in writing) that: (a) they will abide by the terms of the protective order; and (b) they will not disclose any information to anyone outside the litigation; and (c) they will not use disclosed information for any other purpose. Such safeguards should suffice to protect Protus' interests. Indeed, Protus' presentation fails to identify any specific threat posed by the provisions j2 advances here. Moreover, the very same rules which apply to Protus will be applied to j2. In this regard, the proposal is both even-handed and balanced.

(b)      Former Counsel of Record for j2

Protus' proposal also seeks to preclude j2 from showing information designated as AEO to j2's former counsel of record. **This caveat is completely unacceptable**. Indeed,

1    it is clearly oriented toward hamstringing j2's new counsel of record in their conduct of

2    this action going forward.

3       The fact is, j2's former counsel has already seen most, if not all, of the documents

4    marked AEO. In this sense, the (proverbial) "cat" is already out of the bag.

5       More importantly, j2 must be permitted to show AEO documents to j2's former

6    counsel to ensure the continuity of representation and prevent Protus' attorneys from

7    "gaming" j2's new counsel. For example, j2 must have the ability to ask its predecessors

8    about prior discovery agreements, and procedures bearing on the AEO information. To

9    require extensive court orders for such consultation is hopelessly impractical. The reality

10    is, j2's former counsel prosecuted this action on behalf of j2 for three years. Most of the

11    parties' written discovery and document productions were done during this time. Former

12    counsel know and understand what was produced and why. Certainly numerous formal

13    and informal agreements were reached by the parties during this period. It will be

14    impossible for j2's new counsel of record to fully represent its client if it does not have the

15    ability to consult with and discuss certain aspects of the litigation with j2's prior counsel.

16    To hold otherwise would materially interfere with j2's prosecution and defense of this

17    action.

18       (c)      Attorneys Prosecuting Lawsuits Against the Other Party

19       Protus' proposal further seeks to limit j2's effectiveness by restricting its ability to

20    retain junk fax experts as consultants. In particular, Protus' proposal would preclude j2

21    from retaining (as a consultant) an attorney who is prosecuting another action against

22    Protus.

23       Again, there is no good cause for such a restriction. While Protus may not like the

24    fact that attorneys typically work together on junk fax cases, the reality is that they do.

25    These other attorneys may, for example, have learned a fax company's particular

26    "headers" and, therefore, be able to assist j2 in identifying the headers on the faxes at issue

27    in this lawsuit. There is nothing wrong with this. In fact, such sharing is downright

28    efficient.

1  The only legitimate objection to allowing j2 to disclose confidential information to
2  attorney/consultants would arise if no restrictions existed on their use of the confidential
3  information. Fortunately, this problem does not exist here. As structured, AEO
4  information cannot be shared with an attorney/consultant until after they have signed
5  Attachment A to the protective order. Once they do that, there is no reason the
6  information cannot be disclosed to these individuals. Mishandling the information risks
7  contempt.

8

9      Protus' Position:

10  Protus' proposed Paragraph 5.3.2. would prohibit current or former employees of a
11  party, and persons having an ownership interest in a party, from serving as an independent
12  expert or consultant in this case. For the reasons previously stated in connection with
13  Issue 1(a) pertaining to Paragraph 5.2.3., Paragraph 5.3.2. also should exclude current and
14  former employees of the opposing party. Because Paragraph 5.3.2 relates to information
15  designated as "Confidential – Attorneys' Eyes Only," Protus' proposed Paragraph 5.3.2.
16  also would prohibit any current or former employee of any party, along with persons
17  having an ownership interest in a party, from reviewing "Attorneys' Eyes Only"
18  information under the guise of being declared an expert or consultant. Attorneys' Eyes
19  Only means just that – Attorneys' Eyes Only.

20  The parties have already agreed that CONFIDENTIAL INFORMATION under the
21  protective order may be designated as "Confidential: Attorneys' Eyes Only" only if it is
22  of such a highly sensitive private, financial, commercial, technical or competitive nature
23  that disclosure thereof without the protections of this Order would provide an unfair
24  competitive advantage or create a risk of serious injury that could not be avoided by less
25  restrictive means. See Exhibit A, [**Draft**] Joint Revised Stipulated Order Regarding
26  Confidential Information, at Paragraph 2.4.1. j2's proposal would render the agreed upon
27  "Attorneys' Eyes Only" designation meaningless.

28

1    The only remaining issue with respect to Protus' proposed Paragraph 5.3.2. is

2  whether independent personnel should include former counsel of record and other

3  attorneys prosecuting lawsuits against the other party.  Protus' position in this regard is

4  identical to its position set forth above in connection with Issue 1(b) pertaining to

5  Paragraph 5.2.3., and Protus adopts such argument as if though fully set forth herein.

6    Incredibly, j2 attempts to support its position with its opening statement that "the

7  faxes at issue have been designated "Confidential – Attorneys' Eyes Only.'"  This is ironic

8  given (1) that such designation has been at j2's insistence throughout this lawsuit despite

9  repeated attempts by Protus' counsel to convince j2 that the faxes at issue should not be so

10  strictly designated; and (2) in negotiating the proposed revised protective order with j2's

11  new counsel in recent weeks, j2 has finally changed its position and the parties have

12  already agreed to re-designate the faxes from "Attorneys' Eyes Only" to "Confidential."

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:    March 31, 2009          Respectfully submitted,

ABELSON | HERRON LLP
MICHAEL BRUCE ABELSON
ELIZABETH E. ATLEE
LESLIE A. PEREIRA

By    _Leslie A. Pereira (by nles)_
          Leslie A. Pereira

Attorneys for Plaintiff
j2 Global Communications, Inc.


GREENSFELDER, HEMKER & GALE, P.C.
MARY ANN L. WYMORE
ERWIN O. SWITZER
KEVIN F. HORMUTH
J. ANDREW WALKUP


By    _Mary Ann L. Wymore_
          Mary Ann L. Wymore

Attorneys for Defendant
Protus IP Solutions, Inc.

1122087