1

2

3                                                              O

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  J2 GLOBAL COMMUNICATIONS,      )  Case No. CV 06-00566 DDP (AJWx)
    INC., ,                        )
12                                 )  **ORDER DENYING MOTION TO BIFURCATE**
                    Plaintiff,     )
13                                 )  [Motion filed on March 6, 2009]
          v.                       )
14                                 )
    PROTUS IP SOLUTIONS; JOSEPH    )
15  NOUR; SIMON NEHME; AND         )
    THOMAS J. MARTIN ,             )
16                                 )
                    Defendants.    )
17  _____

18

19       Plaintiff and Counterclaim Defendant  j2 Global Communications,

20  Inc. ("j2") and Defendant and Counterclaim Plaintiff Protus IP

21  Solutions ("Protus") are competitors who both provide electronic

22  faxing services.   j2's Complaint alleges that Protus violated the

23  Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 & 47

24  C.F.R. § 68.318, committed trespass to chattels, and engaged in

25  unfair business practices in violation of California Business &

26  Professions Code § 17200.   In its Counterclaim, Protus alleges that

27  j2 violated the TCPA, committed trespass to chattels, and engaged

28  in unfair business practices.   Protus also alleges that j2 violated

1  the Lanham Act, 15 U.S.C. § 1125(a), committed trade libel and

2  defamation, and tortiously interfered with Protus's prospective

3  economic advantage.  Before the Court is j2's Motion to Bifurcate

4  Defamation Counterclaims for Trial and Stay All Related Discovery.

5  Protus opposes this motion.  After reviewing the materials

6  submitted by the parties and hearing oral argument, the Court

7  denies the Motion to Bifurcate and Stay.

8  **I.   BACKGROUND**

9      j2 and Protus are competitors in two aspects of electronic

10 faxing.  Both parties offer a service in which they provide a fax

11 number to customers.  When a fax is sent to that number, the

12 company converts the fax to an imaged document that is forwarded to

13 the customer as an email attachment.  Counterclaim, ¶¶ 4, 8-9;

14 Answer to Counterclaim, ¶¶ 8-9.  Additionally, both parties offer a

15 service to customers sending "broadcast" or "blast" faxes to

16 multiple fax numbers.  Under certain circumstances, a company's or

17 individual's participation in unsolicited faxing may violate

18 federal law, the TCPA.

19     j2 filed this case on January 20, 2006.  j2 alleges that

20 Protus has been knowingly and integrally involved in sending a high

21 volume of junk faxes to j2's customers and over j2's fax lines

22 without either the customers' or j2's consent.  Compl. ¶¶ 11, 13,

23 15.  j2 seeks relief on the basis of four causes of action: (1)

24 violation of the TCPA, 47 U.S.C. § 227; (2) violation of the TCPA,

25 47 C.F.R. § 68.318(d); (3) trespass to chattels; and (4) unfair

26 business practice, California Business & Professions Code § 17200

27 *et seq.*

28

1    With leave from the Court,[1] Protus filed a Counterclaim on

2  September 12, 2007.  The first four causes of action contained in

3  Protus's Counterclaim are similar to j2's claims against Protus.

4  In particular, Protus alleges that j2 was involved its clients'

5  mass, unsolicited faxing to Protus customers.  Countercl., ¶¶ 8-21.

6  Protus alleges that j2 (1) violated the TCPA, 47 U.S.C. § 227; (2)

7  violated the TCPA, 47 C.F.R. § 68.318(d); (3) committed trespass to

8  chattels; and (4) engaged in unfair business practices, Cal. Bus. &

9  Prof. Code § 17200.[2]

10    Protus's Counterclaim also alleges four additional causes of

11  action.  The fifth through eighth counterclaims center on Protus's

12  allegation that j2 has made false and misleading statements

13  regarding Protus, Protus's products or services, and j2's products

14  and services, and that those statements have harmed Protus.

15  Countercl., ¶ 24.  According to the Counterclaim, the allegedly

16  defamatory and/or misleading statements generally fall into the

17  following categories: (1) that j2 is a leader in the fight against

18  unsolicited advertising, including junk faxing, and has instituted

19  litigation against junk faxers, (2) that Protus is one of the

20  largest senders of junk faxes in the United States, and (3) that

21  while Protus would send junk faxes to its customers, j2 would not.

22  Protus alleges that these statements occurred through press

23

24    [1]On August 21, 2007, Protus sought leave to file a
   Counterclaim and First Amended Answer and Affirmative Defenses.
25  See Docket Entry Nos. 131-132.  j2 did not file an Opposition to
   this Motion, and the Court granted the Motion on September 12,
26  2007.  See Docket Entry No. 155.

27    [2]In this Order, the Court collectively refers to j2's claims
   and Protus's first through fourth counterclaims as the "junk fax
28  claims."

releases and statements by Protus representatives in online

support.  Id., ¶¶ 25, 49.  In the Fifth Claim for Relief, Protus

alleges that j2 engaged in false advertising as proscribed by the

Lanham Act, 15 U.S.C. § 1125(a).  In the Sixth and Seventh Claims

for Relief, Protus alleges that j2's statements constituted trade

libel and defamation, respectively.  In the Eighth Claim for

Relief, Protus alleges that j2 tortiously interfered with Protus's

prospective economic advantage through its statements.

j2 filed its Answer to the Counterclaim on October 9, 2007.

See Docket Entry No. 174.  In connection with both the Complaint

and the Counterclaim, the parties have heavily litigated discovery

issues in front of Magistrate Judge Wistrich.

j2 filed this Motion on March 6, 2009.  Through it, j2 seeks

to bifurcate the Fifth through Eighth Claims for Relief in Protus's

Counterclaim from a trial on the junk fax claims.  j2 argues that

bifurcation would be beneficial because (1) a trial on the junk fax

claims may resolve Protus's statement-related causes of action; (2)

bifurcation would simplify the issues in an already complex case;

and (3) bifurcation may save the parties money on discovery.

Protus opposes the motion.  Protus argues that efficiency benefits

would be limited to nonexistent, that it will be prejudiced, and

that j2 is engaged in improper tactics.[3]

**II.   DISCUSSION**

j2 moves to bifurcate Protus's fifth through eighth claims for

relief, the claims centered on j2's statements about Protus's and

its own tactics and products.  While the Court does not consider

---

[3]On Friday, March 27, 2009, Protus submitted an *ex parte* application to file a surreply.  The Court denies this motion.

4

1  j2's motion to be meritless, the Court is not convinced that

2  bifurcation of these issues would serve the expeditious

3  administration of justice.

4     **A.   Legal Standard**

5     Pursuant to Federal Rule of Civil Procedure 42(b), a district

6  court has the power to bifurcate a single lawsuit and order a

7  separate trial of particular issues or claims. Specifically, Rule

8  42(b) provides that "[f]or convenience, to avoid prejudice, or to

9  expedite and economize, the court may order a separate trial of one

10 or more separate issues, claims, crossclaims, counterclaims, or

11 third-party claims." Fed. R. Civ. P. 42(b).

12    A district court has "broad discretion" – limited principally

13 by constitutional issues the parties do not raise here – in

14 deciding whether or not to bifurcate a case. Zivkovic v. S. Cal.

15 Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002). Relevant

16 considerations as a court exercises that discretion include

17 convenience, potential prejudice that would result from trying the

18 cases together or apart, judicial economy, the potential to reduce

19 the risk of jury confusion, and the existence of separable issues.

20 William A. Schwarzer et al., Federal Civil Procedure Before Trial

21 § 16:160.4 (2008) (listing considerations); Bates v. United Parcel

22 Service, 204 F.R.D. 440, 448 (N.D. Cal. 2001)(citing Schwarzer et

23 al. and listing considerations); De Anda v. City of Long Beach, 7

24 F.3d 1418, 1421 (9th Cir. 1993) (holding that district court abused

25 its discretion in bifurcating trial such that plaintiff was

26 prevented from putting on case). Because bifurcation rests in

27 principles of judicial economy, additional considerations include

28 (1) whether evidence offered in the proposed phases will overlap,

1    see <u>Hangarter v. Provident Life & Acc. Ins. Co.</u>, 373 F.3d 998, 1021

2    (9th Cir. 2004), and (2) whether bifurcation will "permit deferral

3    of costly and possibly unnecessary proceedings pending resolution

4    of potentially dispositive preliminary issues," <u>Jinro America, Inc.</u>

5    <u>v. Secure Investments, Inc.</u>, 266 F.3d 993, 998 (9th Cir. 2001).

6         The usual course is that all claims in a case – even if

7    founded on different causes of action – are tried together, as such

8    an approach is generally considered the most efficient for the

9    court and the parties.  9A Charles Alan Wright & Arthur R. Miller,

10   Fed. Prac. & Proc. Civ. 3d § 2388.  The party requesting

11   bifurcation has the burden to show that "bifurcation will promote

12   judicial economy and avoid inconvenience or prejudice to the

13   parties."  <u>Spectra-Physics Lasers, Inc. v. Uniphase Corp.</u>, 144

14   F.R.D. 99, 101 (N.D. Cal. 1992).  Overall, "[i]t is the interest of

15   efficient judicial administration that is to be controlling."  9A

16   Wright & Miller at § 2388.

17        **B.   Bifurcation of the Fifth through Eighth Counterclaim**

18             **Claims for Relief**

19        As mentioned above, j2 seeks bifurcation into two phases: a

20   trial on the junk fax claims, and a trial on the fifth through

21   eighth counterclaims.  A trial on the junk fax claims will

22   determine whether Protus and j2 are "junk faxers."  The resolution

23   of the TCPA-related claims will require a jury to decide whether j2

24   or Protus was integrally involved in the sending of junk faxes by

25   considering relevant fax technology and business practices of the

26   companies, and how many junk faxes were sent.  The fifth through

27   eighth counterclaims, on the other hand, generally will require

28   proof that the allegedly defamatory or misleading statements about

6

Protus and j2 were in fact false or misleading, public/commercial,
and privileged, and that those statements caused harm to Protus.

The Court is not persuaded that bifurcation is appropriate in
this case. Starting from the general rule that usually the most
expeditious way to resolve a case is to try all issues in one
trial, the Court finds that the circumstances do not warrant
departure from that default rule.

1.  Efficiency Concerns

Viewed holistically, the junk fax claims and the fifth through
eighth counterclaims involve related, though not in all ways
overlapping, facts. Whether j2 and/or Protus are junk faxers,
issues that are central to the junk fax claims, are also central to
the fifth through eighth counterclaims. As a result, at least some
evidence will be relevant to both sets of claims. j2's claims and
Protus's counterclaims all concern, as a general matter, the
tactics and involvement of the parties in sending out spam faxes.
The elements of junk fax claims and the fifth through eighth
counterclaims perhaps contain only one *directly overlapping* issue –
whether j2 and Protus are junk faxers; however, some attendant
issues, such as the activities of the two companies and how they
run their businesses, will be relevant for a jury to understand as
it considers both sets of claims. Thus, there is some likelihood
that, if the court were to bifurcate the claims, the parties would
need to present evidence in the second trial that had also been
presented in the first trial.[4] Even if some facts were established

---

[4] While some of that evidence may be established through prior
testimony or jury instruction (and therefore witnesses may not need
to testify twice), it is preferable for a trier of fact to hear
(continued...)

1  conclusively in the first trial, a second jury would be required to

2  learn the same (or substantially related) information as that

3  considered by the first jury.  Having one trier of fact likely will

4  avoid duplicative time and effort, and will serve the jury's

5  understanding by giving the jury fuller context.

6      The Court is not convinced that an initial trial on the junk

7  fax claims will greatly serve the efficient administration of

8  justice in other ways.  The heart of j2's bifurcation motion is its

9  argument that a trial on only the junk fax claims may render moot a

10 trial Protus's false advertising, defamation, trade libel, and

11 intentional interference claims.  See Webb v. Hyman, 861 F. Supp.

12 1094, 1119 (D.D.C. 1994) (quoting 9A Wright & Miller at § 2388).

13 According to j2, whether Protus violated the TCPA may be

14 dispositive to the fifth through eighth counterclaims because, j2

15 argues, each of those counterclaims includes a requirement that

16 j2's statements about Protus be false.  See Southland Sod Farms v.

17 Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997) (listing the

18 elements of a Lanham Act false advertising claim as including "(1)

19 a false statement of fact by the defendant in a commercial

20 advertisement about its own or another's product"); Hejmadi v.

21 AMFAC, Inc., 202 Cal. App. 3d 525 (1998) (truth is an absolute

22 defense to defamation claims).  Bifurcation is common in cases

23 where the resolution of one issue may completely resolve a later

24 issue, particularly where the case is otherwise complex.  If j2

25 established in a first phase of trial that Protus was a sender of

26 junk faxes, it is likely that such a determination would eliminate

27 ───────────────────

28   [4](...continued)
   evidence first hand, where practicable.

8

at least part of Protus's fifth through eighth counterclaims, and it may encourage the settlement of the entirety of those claims. It appears to the Court, however, that such a finding would not completely resolve them: the allegedly defamatory statements do not *only* state that Protus was a sender of junk faxes, <u>see, e.g.</u>, Countercl., ¶¶ 29 & 31, and the Lanham Act claims allege false statements about j2's products and services in addition to Protus's, <u>see, e.g.</u>, Countercl., ¶ 38.[5]  Additionally, even if the Court were persuaded that a finding that Protus was a junk faxer would establish a complete defense to the fifth through eighth counterclaims, that potential benefit must be considered in light of the potentially extended litigation and expenditure of resources that would result should j2 not make its showing.

j2 emphasizes that the fifth through eighth claims will require additional evidence and may present complicated choice of law issues.  The Court is not persuaded that these potential complications outweigh the benefits of resolving this case all at once.  The Court is regularly asked to decide substantive motions in an attempt to narrow and clarify the issues in a case. Additionally, different statutes routinely require proof on different elements, and yet the general rule is that a single trial is the preferred way to resolve a case.  j2 notes that on the basis

---

[5]To the extent j2 suggests that Protus's fifth and eighth counterclaims have no legal merit if based only on j2's statements about itself or on certain types of statements, <u>see</u> Pl.'s Reply at 7-8, the Court notes that this motion for bifurcation does not address the merits of those claims, issues which would properly be considered on a dispositive motion.  To the extent j2 accuses Protus of re-casting the nature of its counterclaims, the Court notes that Protus's characterization is consistent with the actual allegations in the Counterclaim, which, of course, control.

1    of Protus's disclosures and j2's discovery responses, j2 has

2    identified over one hundred potential witnesses, many of whom

3    reside in India.  The Court finds it doubtful that the parties will

4    find each of these individuals necessary or useful to the case, and

5    notes that the parties can work together to narrow the issues and

6    limit expenses.  More importantly, the fact that additional

7    evidence will be required is not particularly persuasive where the

8    Court is not convinced that the resolution of the first set of

9    claims will preclude the necessity of the second trial: a stay in

10   discovery may merely delay the expenditure of resources until the

11   future, when the events at issue in the case will be temporally

12   remote.

13                2.   Risk of Confusion

14        j2 also argues that bifurcation will reduce the risk of jury

15   confusion.  While bifurcation may inherently decrease the risks of

16   jury confusion by limiting the number of issues for the jury to

17   decide, the Court does not consider the risk of jury confusion to

18   be significantly enhanced by the presence of defamation-related

19   issues.  Indeed, j2's argument rests less on the complexity of

20   defamation and more on the complexity of the junk fax claims.

21   Essentially, j2 argues that the issues before the jury will already

22   be complex; accordingly, j2 argues, ensuring that fewer issues are

23   before the jury will help avoid confusion.  The additional issues

24   raised by the defamation and false advertising arguments – the

25   publication of statements and how they were used – do not present

26   issues that are particularly likely to confuse.  Although damages

27   determinations likely will have some complexity, the substantive

28   factual issues raised by the fifth through eighth counterclaims

1    will not present a wholly separate set of questions: rather, issues

2    having to do with the nature of the companies and their businesses

3    will be presented in both trials.[6]  Jurors are often tasked with

4    the job of making difficult determinations, and numerous tools

5    exist to assist them in performing those duties, including the

6    organized presentation of skillful advocates.  Cf. Boston

7    Scientific Corp. v. Johnson & Johnson, 2006 WL 3455009, *4 (N.D.

8    Cal. November 29, 2006) (Illston, J.).

9              3.   Prejudice

10   Moreover, j2's only argument that it will be prejudiced by a

11   single trial is unsupported.  j2 suggests that the trial of

12   Protus's counterclaims may result in "delay" of j2's affirmative

13   claims.  See Pl.'s Mem. at 17:21-18:3.  The basis for this

14   suggestion is unclear to the Court: j2 emphasizes that it will be

15   ready to proceed to trial on all issues in March 2010, see Pl.'s

16   Reply at 13:12-14:6, and j2 did not oppose Protus's motion for

17   leave to file its Counterclaim.  j2 has identified no prejudice

18   that will result from trying the cases in the same trial.  That

19   is, it has not argued that introducing evidence as to the false

20   advertising, defamation, trade libel, and intentional interference

21   claims at the same time the jury is considering the junk fax claims

22   would be unduly prejudicial to it, particularly when a jury is

23   guided by appropriate instructions.  Rather, j2 argues that

24   bifurcating the issues will *not* be prejudicial to Protus.  This

25

26         [6]In fact, to the extent the information about faxing

27   technology and business practices are particularly complicated, see
     Pl.'s Mem. at 17, the complicated nature of these issues reinforces

28   that it would be more efficient for only one jury to be required to
     learn them.

1  consideration does not counsel in favor of bifurcation, in light of

2  the other circumstances.

3  **III. CONCLUSION**

4      The Court recognizes that bifurcation might have potential

5  benefits: it would allow a smaller number of issues to be presented

6  to the jury and a ruling in j2's favor on its junk fax claims would

7  likely either encourage resolution of Protus's fifth through eighth

8  counterclaims, or resolve some of them.  The Court does not hold

9  that bifurcation if these claims would unduly prejudice Protus;

10 indeed, these claims need not have been asserted in this action.

11 After considering the relevant circumstances and issues, however,

12 the Court declines to bifurcate.  With efficiency as the central

13 consideration, it makes better sense to try these claims together.

14 Both of the proposed phases of trial will involve related issues,

15 though not completely overlapping evidence.  Additionally, while

16 trial on the junk faxing claims may go a significant way toward

17 encouraging settlement on the fifth through eighth counterclaims

18 should j2 succeed on its claims that Protus is a junk faxer, the

19 Court is not convinced that it would fully moot Protus's claims, a

20 conclusion which mitigates the strength of j2's efficiency

21 arguments.  Many of the potential benefits are inherent in *every*

22 potential bifurcation; bifurcation, however, is not usual course.

23 The Court therefore denies the motion to bifurcate, and denies the

24 Motion to Stay related discovery as moot.

25 IT IS SO ORDERED.

26

27 Dated: March 31, 2009

28                                  DEAN D. PREGERSON
                                   United States District Judge