O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| J2 GLOBAL COMMUNICATIONS, INC., | ) ) | Case No. CV 06-00566 DDP (AJWx) |
| Plaintiff, | ) ) ) | **ORDER TO SHOW CAUSE AND STAYING CASE** |
| v. | ) ) | |
| PROTUS IP SOLUTIONS; ~~JOSEPH NOUR; SIMON NEHME; AND THOMAS J. MARTIN,~~ | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

     The Court has a duty to examine, sua sponte, subject matter jurisdiction and standing.  <u>D'Lil v. Best W. Encina Lodge & Suites</u>, 538 F.3d 1031, 1035 (9th Cir. 2008).  For the reasons set forth below, the Court hereby orders the parties to show cause (1) why this case should not be dismissed for lack of subject matter jurisdiction and (2) why the Court should not reconsider its order denying Defendant's motion for partial summary judgment on Plaintiff's TCPA claim, 47 U.S.C. § 227, on the grounds that Plaintiff lacks standing.

///

///

# I.    BACKGROUND

This is a "junk fax" case filed by j2 Global Communications, Inc. ("j2"), against Protus IP Solutions, ("Protus") pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. j2's "eFax" service allows its customers to receive faxes in the form of an e-mail:

> The fax sender dials a telephone number, to which j2 has subscribed, and programs his or her fax machine to send a fax to the number leased by j2's customer.  Upon receiving an analog fax transmission initiated by the fax sender, one of j2's servers, to which its customer's phone line is routed, answers the fax call and connects the call to a fax card.  The server then digitizes the telephone line's analog signal that came in and creates a digital file that is emailed to the customer.  The email is sent to a customer's email address associated with the particular number to which the fax is sent.

(Compl. ¶ 12.)  Protus and j2 are competitors in the internet fax industry, as both offer fax-to-email conversion and fax broadcasting services.  According to j2, Protus' customers sent thousands of unsolicited fax advertisements over the Protus network that were received by j2's customers via the j2 network. j2 alleges that these unsolicited fax advertisements tied up its lines and upset its customers.  Protus has counterclaimed against j2 on the same theory.

The TCPA makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," with few exceptions.  47 U.S.C. § 227(b)(1)(C).  One such exception is when "the unsolicited advertisement is from a sender with an established business relationship with the recipient . . . ."  Id. §

227(b)(1)(C)(I).  An unsolicited advertisement is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  Id. § 227(a)(5).  The statute provides for an explicit private right of action for an injunction or damages:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State-
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

Id. § 227(b)(3).

On October 1, 2007, Protus moved for partial summary judgment on j2's first claim for relief, arguing that j2 lacked standing to bring a TCPA claim because (1) the TCPA only provides a private right of action to "the recipient" of an unsolicited fax advertisement and (2) j2 is not "the recipient," within the meaning of the TCPA, of any unsolicited fax advertisement sent through Protus' network.  (Def.'s Corrected Mem. of Points and Authorities in Support of Partial MSJ (Non-Constitutional Grounds) ("Mot.") 21:12-22:3, Dkt. No. 167 .)  In opposition, j2 conceded that only one person, "the recipient" of the unsolicited fax, can raise a claim under the

1  TCPA, but argued that "j2 has the sole right to bring T.C.P.A.
2  claims based on faxes received on its fax servers and sent as
3  e-mails to its customers." (Opp'n 24:15-17, 27:1-3, Dkt. No.
4  215.)  j2 has also alleged that, in the alternative, it has
5  standing as an assignee of its customer's claims. (Compl. ¶
6  17.)

7      The Court denied Protus' motion with respect to j2's TCPA
8  claim, holding that because "[t]he private right of action
9  provision [of the TCPA] itself does not expressly limit TCPA
10 claims to the recipient of unsolicited faxes," the statute
11 "confers standing on 'any person or entity' injured by
12 unsolicited fax advertisements," subject only to the standing
13 requirements of Article III. (Order 9:11-12, 10:9-11.)
14 Concluding that j2 had presented evidence that it had suffered
15 an injury in fact based on the strain to its server space and
16 bandwidth, the Court held that j2 had standing to raise a TCPA
17 claim against Protus. (<u>Id.</u> 10:11-17.)

18     In the same Order, the Court also noted that this case is
19 before the Court based on diversity jurisdiction, 28 U.S.C. §
20 1332, and that two recent circuit court opinions had held that
21 district courts may exercise diversity jurisdiction over TCPA
22 claims, notwithstanding its provision that a cause of action
23 must be brought in state court. (<u>Id.</u> 9 n.4.) However,
24 neither party has yet addressed the question whether the Court
25 has subject matter jurisdiction.
26 ///
27 ///
28 ///

## II. DISCUSSION

### A. Subject Matter Jurisdiction

In a TCPA case in which the plaintiff invoked federal question jurisdiction, 28 U.S.C. § 1331, the Ninth Circuit held that "state courts have exclusive jurisdiction over a cause of action created by" the TCPA. Murphey v. Lanier, 204 F.3d 911, 915 (internal quotation marks and citation omitted).

The Ninth Circuit has not yet addressed whether the TCPA divests federal courts of diversity jurisdiction, although several other circuits have concluded that it does not. See, e.g., Gene & Gene LLC v. BioPay LLC, 541 F.3d 318, 324 & n.6 (4th Cir. 2008); US Fax Law Cntr., Inc. v. iHire, Inc., 476 F.3d 1112, 1118 (10th Cir. 2007); Gottlieb v. Carnival Corp., 436 F.3d 335, 342 (2d Cir. 2006) (Sotomayor, J.); Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 450-51 (7th Cir. 2005).

Here, j2 invokes diversity jurisdiction pursuant to 28 U.S.C. § 1332. Because this issue is unsettled in the Ninth Circuit, the Court orders the parties to show cause why this case should not be dismissed for lack of subject matter jurisdiction, specifically addressing whether the TCPA divests the Court of diversity jurisdiction.

### B. Standing

The standing issues regarding j2's TCPA claim were not fully developed during briefing on Protus' partial summary judgment motion. More than two years and nearly one thousand additional docket entries have passed since the Court ruled on Protus' motion, with the parties continuing to engage in the discovery process.

///

1    This much now seems clear: j2 and Protus are competitors in
2  various internet fax businesses, as both offer fax-to-e-mail
3  conversion as well as fax broadcasting services.  So, for example,
4  a Protus customer may send faxes through Protus' network to various
5  end users, any one of whom may have hired j2 to intercept the fax,
6  convert it, and e-mail it to him.  The reverse is equally true: a
7  j2 customer may send faxes through j2's network to various end
8  users, any one of whom may have hired Protus to intercept the fax,
9  convert it, and e-mail it to him.

10    Because each company apparently broadcasts large quantities of
11  faxes, it is likely that each will unknowingly transmit faxes that
12  happen to be "intercepted" by the other on their way to the end
13  user.  As a consequence, if it were true that intermediaries like
14  j2 and Protus both have standing to sue under the TCPA as "the
15  recipient" of unsolicited fax advertisements sent by the other's
16  customers, the Court can envision a never-ending cycle of
17  litigation involving claims and counterclaims under the TCPA, with
18  millions (or even hundreds of millions) of dollars in statutory
19  damages at stake.  That appears to be precisely what has happened
20  in this case.

21    Whether the Telephone <u>Consumer</u> Protection Act was intended to
22  permit such tit-for-tat suits between commercial fax broadcasters
23  is therefore at issue.  In enacting the TCPA, Congress provided for
24  relatively low statutory damages and "did not conceive that a
25  private TCPA claim could meet the amount-in-controversy requirement
26  for diversity jurisdiction," <u>Gottlieb</u>, 436 F.3d at 343, let alone
27  the millions of dollars at stake in this case.  The Court therefore
28  has reservations whether Congress intended to create a statutory

scheme that would enable competitors in the internet fax business to engage in a seemingly endless cycle of high stakes litigation against one another.

The Court may reconsider, sua sponte, its own order denying Protus' motion for partial summary judgment and concludes that it may be appropriate to do so here. <u>United States v. Smith</u>, 389 F.3d 944, 949 (9th Cir. 2004) ("The law of the case doctrine is wholly inapposite to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction.") (internal quotation marks and citation omitted). Therefore, the Court orders j2 to show cause why the Court should not reconsider its order denying partial summary judgment on the TCPA claim on the grounds that j2 lacks standing under the TCPA. More specifically, both parties should address the following questions:

> (1) Is the private right of action provided by the TCPA available only to "the recipient" of an unsolicited fax advertisement?

> (2) Assuming the answer to the first question is yes, is j2 "the recipient," within the meaning of the TCPA, of any unsolicited fax advertisement sent by Protus or Protus' customers?

> (3) In the alternative, assuming j2's customers would have had standing to raise a TCPA claim against Protus, does j2 have standing based on its customers' assignment of those claims to j2? <u>See</u> <u>iHire</u>, 476 F.3d at 1119-20.

7

**III. CONCLUSION**

The Court orders the parties to file cross-briefs, not to exceed twenty-five(25) pages each, by no later than Friday, April 30, 2010, and cross-briefs, not to exceed fifteen (15) pages each, by no later than Friday, May 14, 2010.  A hearing on this Order to Show Cause shall be held at ten o'clock a.m. on Wednesday, May 26, 2010.  All other matters in this case are stayed pending resolution of these issues.

IT IS SO ORDERED.

Dated: April 20, 2010

DEAN D. PREGERSON
United States District Judge