O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J2 GLOBAL COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PROTUS IP SOLUTIONS; ~~JOSEPH NOUR; SIMON NEHME; AND THOMAS J. MARTIN~~, <br><br> Defendants. | Case No. CV 06-00566 DDP (AJWx) <br><br> **ORDER RE OSC: (1) RECONSIDERING ORDER DENYING PROTUS' MOTION FOR PARTIAL SUMMARY JUDGMENT, (2) GRANTING PROTUS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND (3) DISMISSING PROTUS' TCPA COUNTERCLAIMS** |

**I. BACKGROUND**

This is a "junk fax" case filed by j2 Global Communications, Inc. ("j2"), against Protus IP Solutions, ("Protus") pursuant to the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Protection Act of 2005, codified at 47 U.S.C. § 227.

**A. Statutory Background**

The TCPA was enacted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of

facsimile machines and automatic dialers." S.Rep. No. 102-178, at 1 (1991), reprinted in 1991 U.S.C.C.A.N. 1968.

To that end, the TCPA makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," with few exceptions. 47 U.S.C. § 227(b)(1)(C). An unsolicited advertisement is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." Id. § 227(a)(5).

The statute provides for an explicit private right of action for an injunction or damages:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

Id. § 227(b)(3).

In addition to the private right of action, the TCPA also authorizes state attorneys general to bring civil actions on behalf

2

of their state's residents for an injunction or damages against anyone "engaging in a pattern or practice" of violating the statute. Id. § 227(f).

### B. Procedural Background

Protus and j2 are competitors in the internet fax industry, as both offer fax-to-email conversion and fax broadcasting services. j2's "eFax" and Protus' "myFax" services allow their customers to receive faxes via email. Each company's customers select or are assigned a fax number through which the customer can receive faxes. When a fax is sent to a j2 or Protus customer at her designated fax number, j2 or Protus will intercept the fax, convert it to an electronic image, and forward it to the customer via email. Each company also provides a fax broadcasting service, whereby a customer may send a single fax to multiple fax numbers at once.

According to j2, Protus' customers sent thousands of unsolicited fax advertisements over the Protus network that were received by j2's customers via the j2 network. J2 alleges that these unsolicited fax advertisements tied up its lines and upset its customers. Protus has counterclaimed against j2 on the same theory.

On October 1, 2007, Protus moved for summary adjudication on j2's TCPA claim, arguing that j2 lacked standing to bring a TCPA claim because (1) the TCPA only provides a private right of action to "the recipient" of an unsolicited fax advertisement and (2) j2 is not "the recipient," within the meaning of the TCPA, of any unsolicited fax advertisement sent through the Protus network. In opposition, j2 conceded that only one person, "the recipient" of the unsolicited fax, can state a claim under the TCPA, but argued

that it has the "sole right" to bring TCPA claims "based on faxes received on its fax servers and sent as e-mails to its customers." (Opp'n 24:15-17, 27:1-3, Dkt. No. 215.) J2 has also alleged that, in the alternative, it has standing as an assignee of its customer's claims. (Compl. ¶ 17.)

The Court denied Protus' motion with respect to j2's TCPA claim, holding that because "[t]he private right of action provision [of the TCPA] itself does not expressly limit TCPA claims to the recipient of unsolicited faxes," the statute "confers standing on 'any person or entity' injured by unsolicited fax advertisements," subject only to the standing requirements of Article III. (Order 9:11-12, 10:9-11.) Concluding that j2 had presented evidence that it had suffered an injury in fact based on the strain to its server space and bandwidth, the Court held that j2 had standing to raise a TCPA claim against Protus. (Id. 10:11-17.)

On April 20, 2010, the Court issued an Order to Show Cause, ordering the parties to file briefs addressing whether the Court has diversity jurisdiction and, if so, whether it should reconsider its order denying Protus' motion for summary judgment on j2's TCPA claim. The parties filed opening briefs on April 30, 2010, and reply briefs on May 14, 2010.

**II. DISCUSSION**

    **A. Diversity Jurisdiction**

The first issue presented by the Order to Show Cause is whether the TCPA divests the Court of diversity jurisdiction. Although the Ninth Circuit has held that federal question jurisdiction does not exist in suits brought pursuant to the TCPA,

4

it has not addressed whether diversity jurisdiction might nonetheless exist. Murphey v. Lanier, 204 F.3d 911, 915 (9th Cir. 2000).

    The diversity statute provides federal courts with original jurisdiction "of all civil actions" so long as the diversity-of-citizenship and amount-in-controversy requirements are satisfied. 28 U.S.C. § 1332. Given "the well-established principle of statutory construction that repeal or amendment by implication is disfavored," the Court should presume that diversity jurisdiction over TCPA claims is not disturbed absent a clear statement of Congress' contrary intent. Gottlieb v. Carnival Corp., 436 F.3d 335, 340 (2d Cir. 2006) (Sotomayor, J.). The TCPA contains no clear statement that Congress intended to divest the federal courts of diversity jurisdiction. Id. at 341 & n.7 (contrasting the TCPA with the Johnson Act, 28 U.S.C. § 1342, and the Tax Injunction Act, 28 U.S.C. § 1341, which both explicitly abrogate diversity jurisdiction). Therefore, "[i]n the absence of some affirmative showing of an intent to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." Colo. River Water Conserv. Dist. v. United States, 424 U.S. 800, 808 (1976) (internal quotation marks and citation omitted).

    The TCPA and the diversity statute are not irreconcilable. US Fax Law Ctr., Inc. v. iHire, Inc., 476 F.3d 1112, 1117 (10th Cir. 2007); Gottlieb, 436 F.3d at 341. To the contrary, reading the statute to eliminate diversity jurisdiction would produce odd results by, for example, permitting "state law claims based on unlawful telephone calls [to] be brought in federal court, while

federal TCPA claims based on those same calls could be heard only in state court." iHire, 476 F.3d at 1117 (internal quotation marks omitted). Furthermore, while "Congress's apparent purpose in divesting federal courts of federal question jurisdiction over TCPA claims was that small claims are best resolved in state courts . . . this purpose has little force in a diversity suit, which by definition involves an amount in controversy exceeding $75,000." Id. (internal citations omitted).

The Court therefore concludes, consistent with every Court of Appeals to have considered the question, that the TCPA does not divest the Courts of diversity jurisdiction.

**B.   Standing**

The second issue presented by the Order to Show Cause is whether j2- which intercepts faxes, reformats them, and forwards them to customers as emails- has standing to sue under the TCPA based on its interception of unsolicited fax advertisements directed to its customers. The Court raised three questions in the Order to Show Cause concerning whether j2 has standing to sue and now addresses each question in turn.

**1.   Is the private right of action provided by the TCPA available only to "the recipient" of an unsolicited fax advertisement?**

The Court raised the above question in its Order to Show Cause because, unlike the requirements for Article III standing, prudential standing requirements "can be modified or abrogated by Congress." Bennett v. Spear, 520 U.S. 154, 162 (1997) (citation omitted). Prudential standing requirements are self-imposed limitations on the federal courts that demand that the plaintiff

6

"(1) assert his own rights, rather than rely on the rights or interests of third parties; (2) allege an injury that is more than a generalized grievance; and (3) allege an interest that is arguably within the zone of interests protected or regulated by the statute or constitutional guarantee in question." Hong Kong Supermarket v. Kizer, 830 F.2d 1078, 1081 (9th Cir. 1987). Because Congress may eliminate prudential standing requirements by providing a broad private right of action, the Court is required to consider whether the TCPA's private right of action provision "negates the zone-of-interests test (or, perhaps more accurately, expands the zone of interests)" such that any person satisfying the Article III standing requirements may bring suit under the TCPA. Bennett, 520 U.S. at 164.

  In their responsive briefs, both parties have stated that only "the recipient" has a cause of action under the TCPA. In other words, the parties appear to agree that the TCPA does not eliminate prudential standing requirements so as to permit any person (even one who is not "the recipient" of an unsolicited fax) to bring suit so long as Article III's standing requirements are satisfied. j2 acknowledges that "[a]lthough the TCPA's private right of action provision does not refer to 'the recipient' of a fax as the bearer of a TCPA claim, the logic of the FCC's rules and subsequent case law suggest that TCPA claims must be limited to either intended or unintended fax recipients." (j2 Opening Br. 12:23-13:4.) For the following reasons, the Court agrees with the parties that the TCPA does not negate prudential standing requirements and that, as a result, only "the recipient" of an unsolicited fax has standing to sue under the statute.

First, the private right of action provision of the TCPA- which states that "[a] person or entity may, if otherwise permitted by the laws or rules of a court of a State, bring in an appropriate court of that State . . . an action based on a violation of this subsection," 47 U.S.C. § 227(b)(3)- is significantly narrower than the citizen-suit provision of the Endangered Species Act ("ESA") discussed in Bennett. 520 U.S. 164 (noting that the ESA's citizen-suit provision, which states that "'any person may commence a civil suit,'" is "an authorization of remarkable breadth when compared with the language Congress ordinarily uses"). Unlike the ESA- whose plain language evinces Congress' intent "to permit enforcement by everyman," id. at 166- the TCPA contains a relatively low cap on statutory damages, precludes federal question jurisdiction, and hinges the availability of the private right of action on the law of the state in which the plaintiff brings suit. 47 U.S.C. § 227(b)(3); see also Murphey, 204 F.3d at 914.

Second, in contrast to the ESA provision found to expand the zone-of-interests in Bennett, the TCPA does not apply to an "overall subject matter" like the environment "in which it is common to think all persons have an interest . . . ." Id. at 165. To the contrary, given that the private-right-of-action provision precludes federal question jurisdiction and that "it is likely that Congress did not conceive that a private TCPA claim could meet the amount-in-controversy requirement for diversity jurisdiction," it would be strange to infer that Congress intended to abrogate prudential standing considerations that are self-imposed by the federal courts.

Finally, while the Court in <u>Bennett</u> noted that its "readiness to take the term 'any person' at face value" was "greatly augmented" by the fact that "the obvious purpose of the particular provision in question is to encourage enforcement by so-called 'private attorneys general,'" that is most certainly <u>not</u> the purpose of the private right of action provision in the TCPA. <u>Id.</u> Rather, the TCPA provides for enforcement by State attorneys general rather than by private attorneys general, as demonstrated by the provision vesting federal courts with "exclusive jurisdiction" over an action brought "by the attorney general of a State, or an official or agency designated by the State" brought "on behalf of its residents to enjoin such [unlawful] calls, . . . to recover for actual monetary loss or receive $500 in damages for each violation, or both such actions." 47 U.S.C. § 227(f)(1)-(2).

Therefore, the Court agrees with the parties that the TCPA's private right of action provision does not expand the zone of interests so as to be coterminous with Article III standing. Rather, it merely grants "the recipient" of an unsolicited fax advertisement standing to bring suit.

**2. Is j2 "the recipient," within the meaning of the TCPA, of any unsolicited fax advertisement sent by Protus or Protus' customers?**

In light of the conclusion above, j2 unquestionably has standing if it is "the recipient" of unsolicited fax advertisements sent through Protus' network. In order to determine whether an unknown intermediary like j2 can be "the recipient" of an unsolicited fax advertisement, the Court must construe the meaning of the phrase "the recipient" as used throughout the TCPA.

9

The Court employs the "usual methodology in statutory construction," starting with "the plain language of the statute." Greenwood v. CompuCredit Corp., - - - F.3d - - -, 2010 WL 3222415, No. 09-15906 (9th Cir. Aug. 17, 2010). The Court must "examine not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy." Id. (internal quotation marks and citation omitted). It is a "well-established principle of statutory construction that the same words or phrases are presumed to have the same meaning when used in different parts of a statute." Prieto-Romero v. Clark, 534 F.3d 1053, 1061 n.7 (9th Cir. 2008) (internal quotation marks and citation omitted). "This presumption may be rebutted if the same words or phrases are used 'in such dissimilar connections as to warrant the conclusion that they were employed in the different parts of the act with different intent.'" Chugach Natives, Inc. v. Doyon, Ltd., 588 F.2d 723, 725 (9th Cir. 1978) (quoting Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 87 (1934)). Furthermore, "[i]t is a cardinal canon of statutory construction that statutes should be interpreted harmoniously with their dominant legislative purpose." United States v. Nader, 542 F.3d 713, 720 (9th Cir. 2008) (citation and parentheses omitted). To that end, the Court should 'avoid, if possible a [statutory[ interpretation that would produce 'an absurd and unjust result which Congress could not have intended.'" United States v. Middleton, 231 F.3d 1207, 1210 (9th Cir. 2000) (quoting Clinton v. City of New York, 524 U.S. 417, 429 (1998)).

///
///

The TCPA makes it unlawful "for any person within the United States, or any person outside the United States if *the recipient* is within the United States," 47 U.S.C. § 227(b)(1) (emphasis added):

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the *called party*) using any automatic telephone dialing system or an artificial or prerecorded voice–
>
> > (i) to any emergency telephone line . . . ;
> >
> > (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or
> >
> > (iii) to any telephone number assigned to . . . any service for which *the called party* is charged for the call;
>
> (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the *called party* . . . ;
>
> (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless–
>
> > (i) the unsolicited advertisement is from a sender with an established business relationship with *the recipient*;
> >
> > (ii) the sender obtained the number of the telephone facsimile machine through–
> >
> > > (I) the voluntary communication of such number, within the context of such established business relationship, from *the recipient* of the unsolicited advertisement, or
> > >
> > > (II) a directory, advertisement, or site on the Internet to which *the recipient* voluntarily agreed to make available *its facsimile number* for public distribution;
>
> . . .

47 U.S.C. § 227(b)(1)(A)-(C) (emphasis added).

The phrase "the recipient" is thus used in three contexts: (1) in the prefatory clause stating that the conduct outlined in the following subsections is unlawful "for any person within the United

States, or any person outside the United States if the recipient is within the United States," id. § 227(b)(1); (2) in the subsection outlining the Established Business Relationship ("EBR") exception to the prohibition on unsolicited fax advertisements, id. § 227(b)(1)(C)(I); and (3) in the "opt-out" provision, which directs the FCC to establish rules allowing "the recipient to transmit . . . a request to the sender" not to send any future unsolicited fax advertisements, id. § 227(b)(1)(D)(iv)(I). Assuming that the phrase "the recipient" has the same meaning in each of these three contexts, it seems clear that j2 is not "the recipient" of faxes directed to its customers.

The phrase "the recipient" as used in the prefatory clause encompasses one who receives an unwanted phone call, i.e., the "called party," as well as one who receives an unsolicited fax advertisement, as defined by the subsections that follow. See id. § 227(b)(1). For example, it is only unlawful for a "person outside the United States" to call "a residential telephone line using an artificial or prerecorded voice . . . without the prior express consent of the called party" if "the recipient is within the United States." Id. § 227(b)(1)(B) (emphases added). j2's insistence that it is "the recipient" simply because its servers qualify as "telephone facsimile machines," makes little sense in light of the fact that the phrase "the recipient" is synonymous with the "called party" who is subject to an unlawful telephone call, and as to whom the existence or non-existence of a fax machine is irrelevant. Furthermore, j2's argument would mean that a foreign sender or caller could be liable under the TCPA for a phone call or fax directed to someone outside of the United States

12

because, unbeknownst to her, the fax is intercepted by j2 within the United States, an absurd result.

"The recipient" next appears in the provision setting forth the EBR exception, which applies if, among other things, the sender of the fax (1) has "an established business relationship with <u>the recipient</u>," and (2) obtained the fax number through "the voluntary communication . . . from <u>the recipient</u> of the unsolicited advertisement, or . . . a directory, advertisement, or site on the Internet to which <u>the recipient</u> voluntarily agreed to make available its facsimile number for public distribution." <u>Id.</u> § 227(b)(1)(C)(i)-(iii). j2 argues that "only one person can have a claim for each T.C.P.A. violation, and a recipient of an <u>email</u> cannot bring a claim under the T.C.P.A.," meaning that j2 is "the recipient" of an unsolicited fax, but its customer who is forwarded the fax advertisements as an e-mail is not. If, as j2 argues, it is "the recipient" of every fax directed to its customers, then every fax advertisement would be "unsolicited" because the sender would never know that an intermediary like j2 has been hired to intercept the fax, let alone whether that unknown entity had consented to receive such faxes. Thus, under j2's theory, a fax advertisement passing through j2's network would be "unsolicited" even if the addressee expressly requested that the sender transmit the fax.

Apparently realizing the absurdity of this position, j2 argued in opposition to Protus' summary judgment motion that "j2 does not consider a fax to be unsolicited if a j2 customer has solicited it." (j2 Opp'n to MSJ 30:10-13.) Contrary to j2's argument, the TCPA makes clear that "the recipient" with standing to sue and "the

recipient" whose consent is relevant under the EBR exception are one and the same. Any other reading would produce absurd results: A j2 customer who is subject to the annoyance of receiving junk faxes would not have standing to sue (because, as j2 argues, she has received only an email and not a fax), but could nonetheless be subject to the additional burden of being deposed or called to testify concerning whether it solicited the fax at issue in support of j2's effort to collect statutory damages. However, "[t]he TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls," specifically, to complaints that "such calls are a 'nuisance and an invasion of privacy.'" <u>Satterfield v. Simon & Schuster, Inc.</u>, 569 F.3d 946, 954 (9th Cir. 2009). Congress's intent was not to subject the inconvenienced consumers who are bombarded with junk faxes to the significantly more onerous inconvenience of being called to testify in support of <u>someone else's</u> claim for damages.

    The final context in which "the recipient" is mentioned in the TCPA is in the opt-out provision, which directs the FCC to establish rules allowing "the recipient to transmit such a request to the sender," 47 U.S.C. § 227(b)(1)(D)(iv)(I), the request being one "not to send any future unsolicited advertisements to a telephone facsimile machine or machines." <u>Id.</u> § 227(b)(1)(D)(iv)(II). It makes no sense that an intermediary like j2, which admittedly "lacks knowledge of the content of the faxes it receives," (Opp'n to MSJ 30:10-12), is nonetheless "the recipient" permitted to "opt out" of receiving faxes that are directed to its customers. And, for the same reasons discussed

above, it cannot be that j2 is "the recipient" with the right to sue, but its customer is "the recipient" subject to the opt-out provision.

Rather than addressing how the phrase "the recipient" is used in the TCPA, j2's briefs focus almost entirely on the fact that the FCC has concluded that "fax servers" may constitute "facsimile machines" within the meaning of the TCPA. Indeed, the FCC has concluded "that faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes." FCC Report & Order, at 14133. However, a facsimile machine does not have standing under the TCPA; rather, "the recipient" has standing, "the recipient" being the person to whom the unlawful phone call or unsolicited fax advertisement is directed. The Court construes this portion of the FCC report to stand for the proposition that if "the recipient" has a fax modem/server rather than a stand-alone fax machine, such a recipient may still bring a TCPA claim. Nowhere in the Report and Order, however, does the FCC construe the phrase "the recipient" to include intermediaries like j2 who intercept, convert, and transmit on their fax servers faxes that are sent to others.

Given the plain language, purpose, and statutory scheme of the TCPA, the Court concludes that "the recipient" of an unsolicited fax is the person to whom the fax is directed and not an unknown intermediary, like j2, who intercepts the transmission.[1]

---

[1] This holding is consistent with the decisions of other federal district courts to have considered the issue. Leyse v. Bank of Am., Nat'l Ass'n, 2010 WL 2382400, at *4, No. 09 Civ.
(continued...)

       **3.    In the alternative, assuming j2's customers would have standing to raise TCPA claims against Protus, does j2 have standing based on its customers' assignments of those claims to j2?**

In the alternative, j2 argues that it has standing because it has been assigned its customer's TCPA claims. Protus argues that there can be no valid assignment of any claim under the TCPA because, among other reasons, the TCPA's statutory damages are unassignable penalties. The Court agrees.

Whether a claim under the TCPA is assignable is determined by California state law, as the private right of action provision "expressly direct[s] that federal courts apply substantive state law to determine which persons or entities may bring TCPA claims in federal court." iHire, 476 F.3d at 1118; see 47 U.S.C. § 227(b)(3) ("A person or entity may, if otherwise permitted by the laws or rules of a court of a State, bring in an appropriate court of that State [a TCPA claim].").

Under California law, "[a] cause of action is transferable, that is, assignable, by its owner if it arises out of a legal obligation or a violation of a property right." Amalgamated Transit Union, Local 1756, AFL-CIO v. Super. Ct., 46 Cal.4th 993,

---

[1](...continued)
7654(JGK)(S.D.N.Y. June 14, 2010) ("The uncontroverted evidence shows that DialAmerica, the entity that placed the call on behalf of Bank of America, placed the call to Dutriaux, Leyse's roommate and the telephone subscriber. DialAmerica's records demonstrate that it associated the phone number with Dutriaux, not with Leyse. To the extent that Leyse picked up the phone, he was an unintended and incidental recipient of the call."); Kopff v. World Research Grp., LLC., 568 F. Supp. 2d 39, 42 (D. D.C. 2008) ("While Judy Kopff worked as her husband's assistant, the faxes were addressed to him. The Court concludes that, as a result, Judy Kopff lacks standing to pursue the claims in this case.").

1003 (2009). However, "the right to recover a statutory penalty may not be assigned." Id. See also Peterson v. Ball, 211 Cal. 461, 481 (1931) (holding a statutory penalty is "[o]ne which an individual is allowed to recover against a wrongdoer, as satisfaction for the wrong or injury suffered, and without reference to the actual damage sustained") (internal quotation marks and citation omitted); Eposti v. Rivers Bros., 207 Cal. 570, 573 (1929) (holding that the right to recover "treble [damages] is in the nature of a statutory penalty, and, under the authorities from other jurisdictions, which we hereby approve, is not assignable").

Here, j2 does not seek to recover any actual damages its customers might have sustained as a result of the faxes at issue. Rather, it claims "the right to recover a statutory penalty" that has been assigned by its customers. j2's briefs do not address Amalgamated Transit Union, 46 Cal.4th at 1003, Peterson, 211 Cal. At 481, or Eposti, 207 Cal. at 573, which make clear that the right to recover statutory damages unrelated to actual damages and/or treble damages is not assignable. The Court concludes that these cases are controlling and that, as a result, any claims j2's customers may have pursuant to the TCPA against Protus are not assignable to j2. Therefore, the Court concludes that j2 lacks standing to raise a TCPA claim as an assignee.

**C. Protus' TCPA Counterclaims**

Although Protus has consistently argued that j2 lacks standing under the TCPA, it raised two counterclaims against j2 based on the same theory in the event that the Court held that intermediaries have standing to raise TCPA claims. For the same reasons that j2's

1  TCPA claims are subject to dismissal, so, too, are Protus' first
2  and second counterclaims.
3     "It is generally recognized that a court has the power sua
4  sponte to grant summary judgment to a non-movant when there has
5  been a motion but no cross-motion." Kassbaum v. Steppenwolf
6  Productions, Inc., 236 F.3d 487, 494 (9th Cir. 2000). But, "the
7  propriety of granting summary judgment in favor of a party who did
8  not so move is often a close question." Id. (quotation marks and
9  citation omitted). Where the court concludes that the non-moving
10 party is entitled to judgment as a matter of law, "great care must
11 be exercised to assure that the original movant has had an adequate
12 opportunity to show that there is a genuine issue and that his [or
13 her] opponent is not entitled to judgment as a matter of law." Id.
14 (quotation marks and citation omitted) (alteration in original).
15    The Court concludes that Protus has consistently taken the
16 position that its counterclaims rise and fall with j2's TCPA
17 claims, meaning that if j2 lacks standing under the TCPA, so too
18 does Protus. Therefore, the Court dismisses Protus' first and
19 second counterclaim for relief under the TCPA for lack of standing.
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

18

## IV. CONCLUSION

For the foregoing reasons, the Court (1) reconsiders its order denying Protus' motion for partial summary judgment on Counts I and II, (2) GRANTS Protus' motion for partial summary judgment and (3) DISMISSES Protus' TCPA counterclaims.

IT IS SO ORDERED.


Dated: October 1, 2010

DEAN D. PREGERSON
United States District Judge